SIMPSON & MOORE, LLP
Sean Simpson, Bar #145514
Charles Moore, Bar #180211
121 Broadway, Suite 644
San Diego, California 92101
Telephone: (619) 236-9696
Facsimile: (619) 236-9697

Attorneys for Plaintiff ROSARIO JUAREZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSARIO JUAREZ,<br><br>            Plaintiff,<br><br>v.<br><br><br><br>AUTO ZONE STORES, Inc.; and DOES 1 through 20<br><br>            Defendants.<br>_____ | CASE NUMBER: 08CV417-L (BLM)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1.  **Pregnancy/Sex Discrimination in Violation of Govt. Code §12940(a)**<br>2.  **Pregnancy/sex Harassment, Govt. Code §12940(j)**<br>3.  **Retaliation; Govt. Code §12940(h)**<br>4.  **Failure to Prevent Harassment/discrimination/retaliation; Govt. Code §12940(k)**<br>5.  **Wrongful Termination in Violation of Public Policy**<br>6.  **Failure to Pay Wages (Cal. Labor Code §§203, 1194)**<br>7.  **Failure to Pay Wages (Fair Labor Standards Act, 29 U.s.c. §216)**<br>8.  **Unfair Competition (Bus. & Prof. Code §17200 et Seq.)**<br>9.  **Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW plaintiff, ROSARIO JUAREZ, and for causes of action against defendants and each of them, complains and alleges as follows:

## **PARTIES AND JURISDICTION**

1.     Plaintiff, ROSARIO JUAREZ (hereafter "JUAREZ" or "Plaintiff"), was at all times relevant to this action, a recruit, employee or wrongfully terminated employee of Defendant, AUTOZONE, INC., doing business as AUTOZONE (hereafter "AUTOZONE" or "Defendant"). While employed by AUTOZONE, and at all times relevant to this action, Plaintiff resided in the County of San Diego, State of California.

2.     Defendant AUTO ZONE STORES (hereinafter "AUTO ZONE"), a business entity form unknown, at all times relevant in this complaint was, doing business within the County of San Diego, State of California.  At all relevant times,  is located at 2500 Plaza Boulevard East, National City, CA 91950.  AUTOZONE is in the business of owning and operating a large nationwide chain of retail auto parts stores.  AUTOZONE operates over 400 such stores in California.  AUTOZONE was at all times relevant an employer as defined by Govt. Code §12926(d).

3.     Venue and jurisdiction are proper in this court.  JUAREZ initially filed this action in the downtown branch of the San Diego Superior Court.  Venue was proper for this action by virtue of: (1) Auto Zone Stores, Inc. at all relevant times conducted business on a regular basis in the County of San Diego, California (2) the subject contract establishes that venue is proper in this court; and (3) The acts and/or omissions of the causes of action herein alleged took place in the County of San Diego, California.  Further, the amount in controversy exceeds the $25,000.00 jurisdictional minimum of the Superior Court.  AUTOZONE timely removed this action to this court predicated on diversity jurisdiction under 28 U.S.C. section 1332(a)(1), 1367. Jurisdiction is undisputed. Venue is proper and undisputed based upon 28 U.S.C. section 1441(a).

4.     Plaintiff JUAREZ is unaware of the true names and capacities of the defendants named as DOES 1-20, and therefore sues these defendants as fictitious parties.  Plaintiff will, upon learning the true names and capacities of these DOE defendants, seek leave to amend the complaint so that the true names and capacities of these individuals may be added to the complaint.  At this time, plaintiff JUAREZ states on information and belief that each of the fictitiously named defendants is and/or acted as the agent of the other defendants and is responsible for the occurrences herein alleged, and is liable to plaintiff for the damages proximately caused thereby.

**STATEMENT OF FACTS.**

5.     JUAREZ was hired by AUTO ZONE to work as an hourly wage employee starting on or about December, 2000. Within Autozone all employees are known as Autozoners. JUAREZ was hired as a retail sales person that AUTOZONE calls a Customer Service Representative ("CSR"). These employees are also called "Red shirts" because they all wore red shirts. The shirt color denotes whether AUTOZONE considers an employee to be part of management ("grey shirts") or line level (red shirts).

6.     JUAREZ was promoted to Parts Sales Manager ("PSM") on or about April 2001. Although she continued to be an hourly wage employee, AUTOZONE considered this position as part of management and JUAREZ was told to wear the grey shirts. AUTOZONE required its employees to purchase the uniform shirts. JUAREZ received a pay increase with this promotion.

7.     JUAREZ at all times performed her job satisfactorily and met all reasonable expectations. After being promoted to PSM, JUAREZ became aware that there were very few women store managers at AUTOZONE – of 98 stores in the San Diego region, only 10 had women managers. JUAREZ worked very hard as a PSM and her work was exemplary. She requested to be promoted to store manager. She was recommended for promotion by her then store manager, Mr. Goggins. JUAREZ planned to make a career at AUTOZONE and hoped to eventually become a District Manager.

8.     JUAREZ's efforts to advance within the company were frustrated by a "glass ceiling" that prevented women from advancing within the company. AUTOZONE's "glass ceiling" for women employees was perpetuated through an opaque promotion process. The opaque promotion procedure was adopted for the purpose of keeping qualified women from being promoted to store manager positions based on discriminatory animus.

9.     AUTOZONE is an international retailer and operates approximately 4,000 stores across the United States and abroad. Within the United States, AUTOZONE divided management of is stores into five Divisions. The divisions were and are subdivided into Regions, the Regions were and are subdivided again into Districts.

10.     Prior to 1998 AutoZone had few if any stores in California. In 1998 AutoZone

purchased another large auto parts retailer, Chief Auto Parts. Chief had a substantial presence in California and the Chief stores were eventually converted into AutoZone stores.

11.     Plaintiff is informed and believes and thereon alleges that prior to being purchased by AutoZone, Chief had been sued for discriminating against women employees. The basis of the suit was that Chief utilized an opaque hiring process whereby open SM and DM positions were not posted in order to prevent female employees from being able to compete for the promotions. As part of the resolution of the suit, Chief was required to adopt an open hiring program and post open positions so that qualified women could compete for them. This resulted in a number of women being promoted to SM and DM positions. Upon purchasing Chief, AutoZone was required to adopt the open hiring/promotion procedure in the California stores.

12.     The stores in San Diego, California were in the San Diego Region. The Western Division's highest ranking officer was the Vice President of Operations. Plaintiff is informed and believes and thereon alleges that for all relevant periods, the Vice President of Operations for the Western Division was Rick Smith. The Western Division was separated into several Regions (7-9) and the Regions were separated into Districts. Each District had approximately 8-12 stores.

13.     Plaintiff is informed and believes and thereon alleges that in approximately 2001-2002 the requirement that AutoZone use an open hiring/promotion procedure expired. AutoZone management celebrated the expiration day and almost immediately reverted to its prior opaque hiring process and again began discriminating against women in hiring/promotion. AUTOZONE had a "glass ceiling" that prevented women from rising within the store operations part of the company.

14.     AutoZone directed its District Managers to either stop promoting women to store manager or dramatically reduce the number of women promoted and start getting rid of the women store managers and district managers who were then in position. On one occasion VP Smith visited a store that was staffed with a woman store manager and several women PSMs and CSRs. Mr. Smith was accompanied on this visit by the District Manager, Randy Cosby. Mr. Smith took Cosby aside and berated him for having so many women in the store, asking sarcastically "what are we running here, a boutique? Get rid of those women." Mr. Smith also directed Cosby to not promote any more women and try to get rid of the women store managers he had in his district. Plaintiff is

informed and believes and thereon alleges that AutoZone management told all the District Managers the same thing.

15. Plaintiff was promoted only after she complained to AUTOZONE's Human Resources Division Human Resources Manager, Staci Saucier. Plaintiff told Ms. Saucier words to the effect, what do I have to do, sue? Abruptly, after the meeting with Ms. Saucier, plaintiff was informed that she would be promoted to store manager. No investigation of Juarez's complaint was performed. On or about October 2004, JUAREZ was promoted to Store Manager. The Store Manager position was also an hourly wage position. JUAREZ received a pay increase with the promotion. The promotion was approved by the then District Manager, Jose Luis Torres. Subsequent to her promotion, Torres left the company and was replaced by Kent McFall. McFall became JUAREZ's direct supervisor.

16. There were only a couple of women District Managers in the 9 district San Diego region when JUAREZ began working there. The two women District Managers left the company and were replaced with men.

17. Kent McFall ("McFall") was at times relevant acting in the course and scope of his employment as an executive officer and managing agent of AUTOZONE responsible for the supervision of AUTOZONE employees, including Plaintiff, and establishing company policy. McFall was at all times a "supervisor" as defined by Govt. Code §12926®.

18. The "glass ceiling" continued after JUAREZ was promoted to store manager. JUAREZ had at least one woman PSM in her store that was very good and she recommended her to be promoted to Store Managers. All open store manager positions were given to male employees.

19. On or about early 2004 to mid-August, 2005, AUTOZONE Division Vice President Rick Smith curtailed and/or eliminated any investigations or prevention of discrimination in AUTOZONE's Western Division by the Human Resources Department. Plaintiff is informed and believes and thereon alleges that said elimination of investigations of complaints of unlawful discrimination was a decision taken at AutoZone's Memphis headquarters. The new policy was communicated by Mr. Smith to the Regional Human Resources Managers including the then Sacramento RHRM, Brenda Granville. Ms. Granville had been following California law and

AutoZone's written procedures and investigating all complaints of unlawful activity and had compiled a record of zero DFEH or EEOC complaints in her Region. Mr. Smith told Ms. Granville to reduce the number of investigations she conducted and that it was going to be a criteria on her next evaluation. All complaints were to be considered "informal" complaints that did not involve allegations of unlawful activity even if the complainant clearly said there was unlawful activity and even if it was apparent that they were complaining about unlawful activity. Mr. Smith demoted Division HR Manager Saucier to Regional Human Resource Manager effective August 16, 2005. Plaintiff is informed and believes and thereon alleges that Ms. Saucier was demoted because she was pregnant and because she was investigating complaints of discrimination against AUTOZONE upper managerial employees. As of no later than the end of August, 2005 there were no further active investigations or prevention of discrimination in the Western Division and complainants were subject to retaliation.

20. In September 2005, JUAREZ became pregnant. The District Manager, McFall, learned that JUAREZ was pregnant in November 2005. His attitude towards JUAREZ changed. McFall told JUAREZ that because she was pregnant, she could not handle the job and she should step down from her Store Manager position to again be a PSM. JUAREZ refused. McFall continued to chide her about not being able to handle her job although JUAREZ was at all times able to perform her duties. Her store made money for AUTOZONE.

21. JUAREZ's son was born in May 2005. McFall continued to tell JUAREZ she could not be a mother and handle her job and suggest she step down.

22. JUAREZ complained about being treated unfairly to the newly demoted San Diego RHRM Staci Saucier in a face-to-face meeting at her store. Saucier knew that JUAREZ was pregnant at the time she received this complaint. Saucier did not conduct any investigation of this complaint. Rather, consistent with AutoZone's new policy, Ms. Saucier ignored the obvious nexus between JUAREZ's complaint and her pregnancy and destroyed all evidence of the complaint and conducted no investigation at all. JUAREZ also complained to the Regional Training Manager, Mark Torres. Mr. Torres also ignored the complaint and did not conduct any investigation of the complaint. AUTOZONE demoted JUAREZ to PSM with a pay decrease in February 2006.

23.     AUTOZONE's practice was to have the District Managers conduct periodic meetings with the Store Manager and give them a list of things, called the "Live the Pledge Fix It List", that had to be done before the next meeting.  The lists generally included the inventory of various store items and other tasks.  The Store Managers were also allowed only 10 hours of overtime per week.  The Store Managers were also given a labor budget, i.e. how many employees they were permitted for their store and how many hours they could schedule.  The labor budget came from AUTOZONE headquarters in Memphis, Tennessee.  They were also given instructions to reduce labor as much as possible.   If they exceeded these budgets for their own hours or their employees' hours, they would be written up and face other disciplinary action up to and including termination.  The store managers worked on the store sales floor and at the cash registers as "overflow", i.e. when the store was busy, they had to help customers.  The result of the labor budget was that the store was constantly understaffed to cut costs and the store managers were on the sales floor most hours of the day.

24.     Plaintiff is informed and believes and thereon alleges that prior to 2001 AutoZone classified its California Store managers as non-exempt and paid them on a salary basis.  The Store managers worked between 60 and 65 hours most weeks to get all of the required tasks completed and to meet AutoZone's standards.  Plaintiff is informed and believes and thereon alleges that in approximately 2001 AutoZone was sued for misclassifying its California Store managers under the California Labor Code.  Following this litigation, AutoZone reclassified their Store managers from exempt to non-exempt and rolled out a new program for these employees.  The new program limited the Store managers to working a total of 50 hours per week – 40 hours plus 10 hours of overtime and prohibited the managers from working more than 10 hours a day.  AutoZone did not change any of the job requirements or expectations for the Store manager position.

25.     AutoZone's California store managers had to work hours "off-the-clock" most weeks in order to complete all assigned tasks or record hours that were above the hours their stores were budgeted and have payroll dollars far in excess of what was allowed by AutoZone and risk termination.

26.     As with many of AutoZone's California store managers, JUAREZ worked as a store was required to work hours off-the-clock.  JUAREZ was told by McFall repeatedly that she had to

do more work, her store had to meet a higher standard than what other store managers were expected to meet. JUAREZ was faced with the situation where she, as with most California store managers, could not keep the store running, helping the customers, meeting sales goals, and do all the tasks required of the store manager in the allotted 50 hours per week. In order to keep her job, she was in the position of having to work off-the-clock uncompensated hours. McFall knew that his store managers were working off-the-clock. McFall would text message his store managers on their days off with tasks that had to be taken care of by the managers.

27. JUAREZ filed a complaint with the California Dept. of Fair Employment and Housing (DFEH) on January 25, 2007. JUAREZ complained about being unfairly demoted because of gender/pregnancy discrimination. The initial complaint in this matter was filed on January 18, 2008, while plaintiff was still employed as a PSM.

28. After plaintiff was demoted, she was told that she would have to wait one year before she could again be considered for promotion to a store manager position. After the one year period passed in February 2007, plaintiff again began asking her District Managers to be promoted to store manager. After being demoted, AUTOZONE routinely took advantage of plaintiff's experience as a store manager by having her perform store manager duties without promoting her to store manager or paying her store manager pay. Plaintiff witnessed less qualified male employees being promoted to store manager positions ahead of her. Plaintiff requested that she be promoted to store manager every couple of months but was never considered for such a position.

29. No employee of AUTOZONE who filed a DFEH charge against the company was still working for the company as of November 10, 2009, including plaintiff.

30. Plaintiff was terminated from her position as a PSM on or about November 20, 2008. AutoZone used its Loss Prevention Dept. (LP) to create a pretext for termination. Plaintiff was the manager on duty one day when a Customer Service Representative (CSR) did a register sweep, i.e. taking the cash out of the register and putting it in a deposit envelope. The CSR told plaintiff that she had done the sweep but rather than handing the envelope to plaintiff or putting it in the safe, the CSR left it on top of a register. Plaintiff was busy assisting customers and was unaware that the CSR had placed the envelope on the register. The envelope then went missing. When she determined that

the deposit envelope was missing, plaintiff followed AutoZone procedures and notified LP.

31.     LP conducted a so-called investigation. They talked to the CSR about the incident but did not fire her. LP then talked to plaintiff. Plaintiff told LP the facts of what happened. Then LP wanted to conduct a so-called "Q&A" statement, actually an interrogation to coerce a confession. AutoZone's LP practices were notorious and plaintiff refused. AutoZone used plaintiff's refusal to submit to the illegal interrogation as a pretext to terminate her employment. Plaintiff was terminated, at least in part, in retaliation for filing the DFEH complaint and because of sex discrimination.

## **FIRST CAUSE OF ACTION**

### **(Pregnancy/Sex Discrimination in Violation of Govt. Code §12940(a))**

32.     The allegations of paragraphs 1 through 31, inclusive, are realleged and incorporated by reference.

33.     Plaintiff is a female. During her employment with Defendant, Plaintiff became pregnant. As such, pursuant to Govt. Code §12926 subdivision (p) allegations in this complaint on the basis of "sex" refer to Plaintiff's gender, including but not limited to pregnancy, childbirth, or medical conditions related to pregnancy or childbirth or time constraints on a mother with an infant child.

34.     Defendant AUTOZONE's conduct violated Govt. Code §12940(a) and consistent with Title 2 of the California Code of Regulations §§7293.7 and 7291.5 by: 1) terminating Plaintiff because of her pregnancy, 2) demoting Plaintiff, 3) refusing to investigate discriminatory conduct, 4) disparate application of company practices, procedures and policies, 5) retaliating against plaintiff for making protected complaints and 5) otherwise discriminating against Plaintiff with regard to the terms and conditions of her employment.

35.     As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Govt. Code §12926.

36.     At all times relevant in this complaint, Government Code sections 12900 et. seq. (Fair Employment and Housing Act (FEHA)) were in full force and effect, and were binding upon

all defendants and each of them.  Plaintiff has complied with the requirements of FEHA that she file a complaint with the Department of Fair Employment and Housing ("DFEH") and obtained a right-to-sue letter duly issued by the DFEH.  This action is being commenced within the time period permitted by the right-to-sue letter(s) issued by the DFEH.

37.     As a direct and proximate result of defendants' conduct, plaintiff has lost income and benefits including medical and other employment benefits, retirement benefits, and other related benefits.

38.     As a further direct and proximate result of defendants' demotion of plaintiff from Store Manager to PSM, and subsequent termination of employment, plaintiff has suffered emotional injury and mental distress.

39.     Plaintiff JUAREZ has been required to obtain legal counsel to protect her rights, and she thereby has incurred attorney fees in an amount to be proven at the time of trial.  As provided under Government Code sections 12900 et. seq., and specifically section 12965(b), and Civil Code plaintiff requests an award of reasonable attorney fees against all defendants.

40.     Pursuant to Government Code section 12926©, plaintiff JUAREZ seeks recovery against defendant AUTOZONE.

41.      The conduct of defendants, including their agents and employees, was done with conscious disregard of plaintiff's rights, was carried out by authorized agents acting in a deliberate, calloused, and intentional manner in order to injure and damage plaintiff, which conduct was despicable, egregious and oppressive, and constituted fraud, malice or oppression as defined by Civil Code section 3294.  Therefore, plaintiff is entitled to punitive damages in an amount sufficient to punish or set an example of defendants, in a sum to be proven at trial.

## SECOND CAUSE OF ACTION

(Pregnancy/Sex Harassment, Govt. Code §12940(j))

42.     The allegations of paragraphs 1 through 41, inclusive, are realleged and incorporated by reference.

43.     Plaintiff is a female.  During her employment with Defendant, Plaintiff became pregnant.  As such, pursuant to Govt. Code §12926 subdivision (p) allegations in this complaint

on the basis of "sex" refer to Plaintiff's gender, including but not limited to pregnancy, childbirth, or medical conditions related to pregnancy or childbirth.

44.     At various times during her employment Defendant harassed Plaintiff, as defined by Title 2 of California Code of Regulations §7287.6(b) based upon Plaintiff's sex.  Specifically, Defendants failed to provide Plaintiff important information concerning her rights as a pregnant woman as required by §7291.16 subd. (a) when notified of Plaintiff's pregnancy.  In addition, Defendants subjected Plaintiff to unjustified criticism, callously disregarded her pregnancy status, pressured her to relinquish her store manager position, demoted Plaintiff, and ultimately terminated Plaintiff's employment.  Accordingly, Defendant's conduct violated Govt. Code §12940(j) and Title 2 of the California Code of Regulations §§7287.6(2), and 7291.15.

45.     As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Govt. Code §12926.

46.     Pursuant to Government Code section 12926©, plaintiff JUAREZ seeks recovery against defendant AUTOZONE.

47.      The conduct of defendants, including their agents and employees, was done with conscious disregard of plaintiff's rights, was carried out by authorized agents acting in a deliberate, calloused, and intentional manner in order to injure and damage plaintiff, which conduct was despicable, egregious and oppressive, and constituted fraud, malice or oppression as defined by Civil Code section 3294.  Therefore, plaintiff is entitled to punitive damages in an amount sufficient to punish or set an example of defendants, in a sum to be proven at trial.

### THIRD CAUSE OF ACTION

(Retaliation; Govt. Code §12940(h))

48.     The allegations of paragraphs 1 through 47, inclusive, are realleged and incorporated by reference.

49.     At all times relevant in this matter Plaintiff engaged in activities protected by the California Fair Employment Act.  Specifically, Plaintiff opposed and reported unlawful discrimination and harassment based upon sex.  Plaintiff also requested time off for pregnancy.

Plaintiff opposed and complained about being passed over for promotion in favor of male employees, complained about being treated unfairly while pregnant, filed a DFEH complaint while still employed and filed a complaint in the Superior Court while still employed.

50.     Defendant subjected Plaintiff to adverse employment actions including a severe and pervasively hostile environment, demotion, suspension and ultimately termination.  Plaintiff's activities were a motivating factor for all adverse actions.  On information and belief, AUTOZONE's retaliation, although individually impacting Plaintiff, is part of a larger pattern and practice of retaliation against any employee who submits complaints of unlawful harassment and discrimination to the California Department of Fair Employment and Housing.  According to Defendant's Regional Human Resources Manager, no employee has continued employment after submitting a charge to the DFEH.  This is in keeping with AUTOZONE's express policy against any "third party intervention".  Accordingly, Defendant's conduct violated Govt. Code §12940(h) and Title 2 of the California Code of Regulations §7287.8.

51.     As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.  Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Govt. Code §12926.

52.     Pursuant to Government Code section 12926©, plaintiff JUAREZ seeks recovery against defendant AUTOZONE and other individuals named as DOES.

53.      The conduct of defendants, including their agents and employees, was done with conscious disregard of plaintiff's rights, was carried out by authorized agents acting in a deliberate, calloused, and intentional manner in order to injure and damage plaintiff, which conduct was despicable, egregious and oppressive, and constituted fraud, malice or oppression as defined by Civil Code section 3294.  Therefore, plaintiff is entitled to punitive damages in an amount sufficient to punish or set an example of defendants, in a sum to be proven at trial.

**FOURTH CAUSE OF ACTION**

(Failure to Prevent Harassment/Discrimination/Retaliation; Govt. Code §12940(k))

54.     The allegations of paragraphs 1 through 53, inclusive, are realleged and incorporated by reference.

55. AUTOZONE knew or should have known about the sex discrimination, harassment and retaliation of Plaintiff set forth above. AUTOZONE failed to implement adequate training, policies or instructions that would have prevented the aforementioned discrimination, harassment and retaliation. AUTOZONE breached its duty to prevent discrimination of Plaintiff. Accordingly, AUTOZONE violated Govt. Code §12940(k) and Title 2 of the California Code of Regulations §7287.6(3).

56. As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Govt. Code §12926.

57. The conduct of defendants, including their agents and employees, was done with conscious disregard of plaintiff's rights, was carried out by authorized agents acting in a deliberate, calloused, and intentional manner in order to injure and damage plaintiff, which conduct was despicable, egregious and oppressive, and constituted fraud, malice or oppression as defined by Civil Code section 3294. Therefore, plaintiff is entitled to punitive damages in an amount sufficient to punish or set an example of defendants, in a sum to be proven at trial.

## FIFTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy)

58. The allegations of paragraphs 1 through 57, inclusive, are realleged and incorporated by reference.

59. AUTOZONE's termination of Plaintiff's employment based upon her gender, pregnancy, and childbirth, failure to provide reasonable accomodation, and need to engage in the interactive process violated important public policy codified in Govt. Code §§12940 (a), (h), (j); and Title 2 of the California Code of Regulations §§7291.15, 7293.7 and 7287.8.

60. As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

## SIXTH CAUSE OF ACTION

**Failure to Pay Overtime Wages – Labor Code §§203, 1194**

61.    The allegations of paragraphs 1 through 60, inclusive, are realleged and incorporated by reference.

62.    Plaintiff had an employment relationship with Defendant AUTOZONE and/or Does 1-10 from 2000 through the present.

63.    Plaintiff worked overtime on or about every week that she was employed in the position of Store Manager, from October 2004 through February 2006, until demoted to PSM.

64.    Defendants AUTOZONE and/or Does 1-10, failed to pay Plaintiff overtime compensation.

65.    Plaintiff routinely worked longer than 8 hours per day without any compensation for overtime by Defendants AUTOZONE and/or Does 1-10.

66.    Defendants AUTOZONE and/or Does 1-10 and/or each of them refused or neglected to make records of the amount of time Plaintiff and/or other employees worked and/or worked overtime.

67.    Defendants conduct in not paying Plaintiff anything for overtime compensation was in violation of law.

68.    Plaintiff therefore prays for the amount of the unpaid overtime compensation, for interest due from the day such amounts were due, for penalty equal to 30 days wages pursuant to California Labor Code Sec. 203, for reasonable attorneys fees pursuant to Labor Code Sec. 1194, for costs of suit herein, and/or for equitable relief.

## SEVENTH CAUSE OF ACTION

### Failure to Pay Overtime - Fair Labor Standards Act

69.    The allegations of paragraphs 1 through 68, inclusive, are realleged and incorporated by reference.

70.    AUTOZONE  was in violation of the Fair Labor Standards Act, when it refused to pay JUAREZ overtime that she was owed.

71.    AUTOZONE had a pattern and practice of failing to pay overtime wages to plaintiff, who worked substantial overtime hours.

72.    AUTOZONE's afore stated company practices were in violation of the Fair Labor Standards Act.  Said violations were wilful in that AUTOZONE knew or should have known that said practices were in violation of law.  AUTOZONE  had no reasonable belief that such practices were in

compliance with the Fair Labor Standards Act.

73. Plaintiff therefore prays for the amount of unpaid overtime compensation, for interest due from the day such amounts were due, for liquidated damages pursuant to 29 U.S.C. §216(b), for reasonable attorneys fees pursuant to 29 U.S.C. §216(b), for costs of suit herein, and/or for equitable relief.

## EIGHTH CAUSE OF ACTION

### Unfair Business Practices - Bus. & Prof. Code §17200

74. Plaintiff incorporates paragraphs 1-73 as though fully alleged herein.

75. AUTOZONE acquired moneys required to be paid under the overtime laws by an unlawful practice. AUTOZONE's failure to pay overtime wages owed to its employees, including plaintiff, constitutes an unfair business practice under Bus. & Prof. Code §17200 et seq.

76. Plaintiff prays for restitution of all moneys unlawfully acquired by AUTOZONE pursuant to Bus. & Prof. Code §17203 and such other equitable relief as the court deems proper.

## NINTH CAUSE OF ACTION

### Unjust Enrichment And/or for Quantum Meruit

77. Plaintiff incorporates paragraphs 1-76 as though fully alleged herein.

78. Plaintiff had an employment relationship with Defendants AUTOZONE and/or Does 1-10.

79. Plaintiff was not paid for the hours that she worked for Defendants and/or was not paid anything for overtime work in excess of time that she worked 8 hours of work daily for Defendants.

80. By failing to pay Plaintiff money for her overtime work, Defendants AUTOZONE and/or Does 1-10 were unjustly enriched.

81. Plaintiff therefore prays for quantum meruit payment, interest, and for all other damages and equitable relief permitted under law.

## PRAYER

WHEREFORE, plaintiff prays for judgment as follows:

On the First through Fifth Causes of Action:

1. For compensatory damages including lost wages, lost employee benefits, bonuses, vacation benefits, mental and emotional distress, and other general and special damages according to

proof;

2.　For incidental, consequential and punitive damages according to proof;

3.　For prejudgment interest at the legal rate;

4.　For attorney fees as provided for under any statutory provision;

On the Sixth Cause of Action:

5.　Unpaid overtime wages plus interest thereon under Cal. Labor Code §1194.

6.　For damages due to unequal pay.

7.　Penalty as permitted under Cal. Labor Code §203.

8.　For attorney fees as provided for under Cal. Labor Code §1194.

On the Seventh Cause of Action:

9.　Unpaid overtime wages plus interest thereon under 29 U.S.C. §216(b).

10.　Liquidated damages as permitted under 29 U.S.C. §216(b).

11.　For attorney fees as provided for under 29 U.S.C. §216(b).

On the Eighth Cause of Action:

12.　 For restitution.

13.　For attorney fees pursuant to CCP §1021.5.

On the Ninth Cause of Action:

14.　Unpaid wages and overtime wages plus interest thereon.

On All Causes of Action:

15.　For costs of suit and for such other and further relief as the court deems just and proper.

SIMPSON & MOORE LLP


DATED: September 7, 2010　　　　　　by___s/Charles Moore_____
　　　　　　　　　　　　　　　　　　SEAN SIMPSON or CHARLES  MOORE
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff ROSARIO JUAREZ

g:\wp\0267-060-JUA\plead\Juarez02Complaint.FAC