UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSARIO JUAREZ, | ) | Case No. 08cv417-L (BLM) |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S UNTIMELY DESIGNATION OF EXPERT PSYCHIATRIST, DOMINICK ADDARIO, M.D.** |
| v. | ) ) | |
| AUTOZONE STORES, INC., and DOES 1 through 20, | ) ) ) | |
| Defendants. | ) ) | [ECF No. 100] |

On June 17, 2011, counsel for Defendant Autozone Stores, Inc. ("Defendant") contacted the Court regarding a discovery dispute, for which the Court set a briefing schedule. ECF No. 99. Pursuant to the Court's Order, on June 23, 2011, Defendant filed its motion to strike Plaintiff's expert designation (ECF No. 100), Plaintiff filed her opposition on June 30, 2011 (ECF No. 104), and Defendant filed its reply on July 7, 2011 (ECF No. 106). Having reviewed the briefing, the Court **GRANTS** Defendant's Motion to Strike Plaintiff's Untimely Designation of Expert Psychiatrist, Dominick Addario, M.D.

**FACTUAL AND PROCEDURAL BACKGROUND**

This Court's Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings[1] directed the parties as follows:

Each party shall serve on all opposing parties a list of experts, whom

---

[1] Rule 26(a)(2)(D), which addresses the time to disclose expert testimony, states that "[a] party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

      that party expects to call at trial, on or before **February 4, 2011**. Each party may supplement its designation in response to the other party's designation no later than **February 25, 2011**. Expert designations shall include the name, address, and telephone number of each expert and a reasonable summary of the testimony the expert is expected to provide. The list shall also include the normal rates the expert charges for deposition and trial testimony.

      The parties must identify <u>any</u> person who may be used at trial to present evidence pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence. This requirement is <u>not</u> limited to retained experts.

      **Please be advised that failure to comply with this section or any other discovery order of the Court may result in the sanctions provided for in Fed. R. Civ. P. 37, including a prohibition on the introduction of experts or other designated matters in evidence.**

      All expert disclosures required by Fed. R. Civ. P. 26(a)(2) shall be served on all parties on or before **March 25, 2011**. Any contradictory or rebuttal information shall be disclosed on or before **April 15, 2011.** In addition, Fed. R. Civ. P. 26(e)(2) imposes a duty on the parties to supplement the expert disclosures made pursuant to Fed. R. Civ. P. 26(a)(2)(B) by the time that pretrial disclosures are due under Fed. R. Civ. P. 26(a)(3) (discussed below).

      The parties are advised to consult with Fed. R. Civ. P. 26(a)(2) regarding expert disclosures. Such disclosures shall include an expert report, all supporting materials, a complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered by the expert in forming the opinions, any exhibits to be used as a summary of or support for the opinions, the qualifications of the witness including a list of all publications authored by the witness within the preceding ten years, the compensation to be paid for the study and testimony, and a list of other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

      This disclosure requirement applies to all persons retained or specially employed to provide expert testimony <u>or</u> whose duties as an employee of the party regularly involve the giving of expert testimony.

      **Please be advised that failure to comply with this section or any other discovery order of the Court may result in the sanctions provided for in Fed. R. Civ. P. 37, including a prohibition on the introduction of experts or other designated matters in evidence.**

ECF No. 85 at 1-2. The parties were therefore informed of the relevant expert designation and disclosure deadlines, and they were cautioned regarding the possible imposition of sanctions for failure to comply with the Court's Order.

On February 4, 2011, Defendant filed a Notice of Non-Designation of Expert Witnesses and Reservation of Right to Designate Rebuttal Expert Witnesses. ECF No. 87. Defendant stated that it "does not presently intend to offer the testimony of any expert witnesses at trial," but "expressly reserves its right to designate rebuttal expert witnesses at the time designated for the second exchange of expert witness information . . . ."

1  Id. at 1.  In her First Designation of Expert Witnesses, dated February 4, 2011, Plaintiff
2  listed Vickie Wolf as a retained expert witness and Plaintiff also reserved the right to call Dr.
3  Patricia Stevenson, Dr. Khan Shahzad [sic], and Carla Cangdo [sic], three "[m]edical
4  providers who may be asked to offer opinion testimony."  Def.'s Mot. Ex. B, at 2.  Plaintiff
5  stated that "Dr. Shahzad and Ms. Cangdo [sic] treated Ms. Juarez for mental/emotional
6  distress related to her employment and her pregnancy.  These medical providers will provide
7  testimony related to this care."  Id. at 3.  In its Supplemental Expert Witness Disclosure,
8  dated February 25, 2011, Defendant stated that it intended to offer the opinions and
9  testimony of Robert Wallace and Dr. Mark Kalish.  Def.'s Mot. Ex. C, at 1-2.  Defendant
10 explained that "Dr. Kalish will provide reply and/or rebuttal testimony as to the opinions,
11 methodology, assumptions and conclusions of opinions reached by Plaintiff's designated
12 psychiatric experts."  Id. at 2.
13      On March 18, 2011, counsel for Plaintiff and counsel for Defendant jointly contacted
14 the Court regarding a discovery dispute—namely, whether Dr. Kalish should be permitted
15 to conduct an Independent Mental Examination ("IME") of Plaintiff—for which the Court set
16 a briefing schedule.  ECF No. 88.  Upon completion of the briefing, the Court held a
17 telephonic, attorneys-only case management conference, during which counsel for Plaintiff
18 agreed to certain stipulations proposed by counsel for Defendant.  ECF Nos. 93 & 95.  On
19 April 21, 2011, in an Order premised upon the verbal stipulations expressed by counsel
20 during the telephonic conference, the Court denied without prejudice Defendant's motion
21 to compel an IME of Plaintiff.  ECF No. 95.  The Court gave Defendant the opportunity to
22 renew its motion to compel after deposing witnesses and conducting further discovery.  Id.
23 at 2.  Defendant did not do so.
24      Defendant provided Dr. Kalish's report to Plaintiff on May 24, 2011.  Def.'s Mot. Ex.
25 H; Pl.'s Opp'n at 2.  Subsequently, on June 2, 2011, Plaintiff designated Dr. Dominick
26 Addario "in rebuttal to the report and testimony submitted by defendant from Dr. Mark
27 Kalish."  Def.'s Mot. Ex. I, at 2.  Plaintiff further stated that "Dr. Addario will submit a report
28 and is expected to testify . . . concerning . . . the psychological damages suffered by Plaintiff

1   as a result of the subject termination and her employment with defendants." Id. Plaintiff
2   served Defendant with Dr. Addario's report on June 14, 2011.  Def.'s Mot. Ex. J.

## DISCUSSION

Defendant moves to strike Plaintiff's expert designation on the grounds that it is untimely and in contravention of both this Court's scheduling Order (ECF No. 85) and Plaintiff's previous stipulations pertaining to her emotional distress claim.  Def.'s Mem. of P. & A. at 4-6.  Plaintiff argues that her designation is not untimely and that she never waived the right to allege that she suffered substantial emotional distress.  Pl.'s Opp'n at 4-9.

### A. Timeliness of Expert Designations and Disclosures

Defendant contends that Plaintiff's designation of Dr. Addario is untimely because she served Defendant with this expert designation "over three months after the deadline to designate experts had passed and just one day before the discovery cut off . . . ."  Def.'s Mem. of P. & A. at 3.  Plaintiff, however, argues that Defendant "fails to consider or explain how Defendant's conduct contributed to the timing of Plaintiff's use and disclosure of Dr. Addario." Pl.'s Opp'n at 4.  Plaintiff insists that her decision to designate Dr. Addario was made upon seeing Dr. Kalish's report, which Defendant did not serve until May 24, 2011.  Id. at 6.

Plaintiff insists that no deadlines were extended when the parties' IME dispute was before the Court, and she argues that Defendant ignored this Court's Scheduling Order (ECF No. 85) by failing to submit Dr. Kalish's expert report as required on March 25, 2011.  Pl.'s Opp'n at 4, 6.  In support of this contention, Plaintiff cites the Court's Order setting a briefing schedule to resolve the parties' IME dispute, which advised the parties that "if the Court grants Defendant's motion to compel, the Court will extend the rebuttal expert disclosure deadline.  However, until the Court extends a deadline, all dates and deadlines remain as previously set."  Id. at 4 (quoting ECF No. 88).  Plaintiff's rigid interpretation of the Court's language—namely, that Dr. Kalish was to author his expert report prior to the Court's Order resolving the motion to compel—renders the Court's Order illogical and inefficient.  Plaintiff's argument fails to recognize that Dr. Kalish's report was contingent

upon a ruling from this Court regarding an IME.[2]  Although Plaintiff is technically correct in that the Court did not explicitly extend the deadline by which Defendant could serve a written report by Dr. Kalish, the existence of the IME dispute necessitated such an extension and the Court's briefing schedule implicitly acknowledged as much.[3]  See ECF No. 88 (requiring the IME dispute to be fully briefed by April 6, 2011).  Contrary to Plaintiff's interpretation, the Court's cautionary language regarding deadline extensions did not encompass the deadline for Dr. Kalish's expert report.  Rather, given that this action commenced on March 5, 2008 (ECF No. 1), the Court instructed the parties that "deadlines remain as previously set" to ensure that no *unnecessary* delays occurred and to clarify that the June 3, 2011 discovery cut-off date remained in place.  ECF Nos. 85 & 88.  Pursuant to Plaintiff's interpretation of the Court's Order, Dr. Kalish should have authored his report in the midst of the parties' discovery dispute, despite the fact that the scope of Dr. Kalish's report would be determined only upon resolution of the IME dispute.  Thus, if the Court permitted Defendant to conduct an IME, Dr. Kalish would have authored one report, only to author another—presumably materially different—report.  The Court's Order did not require such a result.

Although Plaintiff presently is adamant that Defendant "improperly and untimely disclosed its psychiatric expert" (Pl.'s Opp'n at 1), Plaintiff waited to make this novel argument until faced with Defendant's motion to strike.  Plaintiff's argument that the timing of her expert designation is inescapably the result of the timing of Defendant's expert report is unavailing.  As a result, Plaintiff's designation of Dr. Addario is untimely.

---

[2] In fact, the opening remarks in Dr. Kalish's report indicate that the substance of his report hinged upon whether he would be conducting an IME: "At [counsel for Defendant's] request I reviewed the following documents pertaining to Ms. Juarez.  It is my understanding that Ms. Juarez has refused to meet with me for a clinical interview."  Def.'s Mot. Ex. H, at 1.  Moreover, one of the records upon which Dr. Kalish based his report was the deposition transcript of Patricia A. Stevenson, NP.  Id.  This deposition occurred in the presence of Plaintiff's counsel on May 18, 2011.  Id. Ex. G.  Plaintiff was served with Dr. Kalish's report less than one week later.  Id. Ex. H.

[3] Plaintiff asserts that Dr. Kalish's report was due by March 25, 2011 (Pl.'s Opp'n at 1), whereas Defendant contends the relevant deadline was April 15, 2011 (Def.'s Reply at 4).  Regardless, the Court did not issue its Order denying Defendant's motion to compel an IME until April 21, 2011.  ECF No. 95.

### B. Substance of Plaintiff's Emotional Distress Claim

Plaintiff further argues that, even if the designation of and report by Dr. Addario were untimely, "such untimeliness was substantially justified, was beyond plaintiff's control and has caused no harm to the defendant." Pl.'s Opp'n at 7. Defendant responds that Plaintiff's untimely expert designation is the result of her own tactical decisions and runs afoul of "all of her arguments and stipulations [previously] offered to this Court . . . ." Def.'s Reply at 3.

Plaintiff alleges that she in no way "waived the right to allege that plaintiff has suffered substantial emotional distress." Pl.'s Opp'n at 8. Plaintiff further argues that she never de-designated her treating physicians or made stipulations regarding their testimony. Id. at 5, 8. These statements and arguments are inaccurate. In her opposition to Defendant's motion to compel an IME, Plaintiff repeatedly stated that her mental condition was not "in controversy" in this case because she did not seek medical treatment for any emotional injury resulting from her alleged discrimination or demotion, she was not currently suffering from emotional distress, and she only suffered "garden variety" emotional distress.[4] ECF No. 90. During the telephonic conference, the Court confirmed these facts

---

[4] In her opposition to Defendant's motion to compel an IME (ECF No. 90), Plaintiff made her stance on the emotional distress issue abundantly clear:

"Good cause for a psychiatric examination does not exist in this case because plaintiff suffered only 'garden variety' emotional distress damages, and because plaintiff has no current complaints of emotional distress." ECF No. 90 at 2.

"Plaintiff has alleged a claim for pregnancy discrimination. . . . Plaintiff was treated beginning in July 2006 for post-partum depression related to the pregnancy." Id.

"Plaintiff sought no medical treatment for any emotional injury as a result of the demotion and plaintiff will present no evidence at trial to the contrary." Id.

"Nowhere in the SAC does plaintiff allege that she was diagnosed as suffering from depression as a result of the conduct of AutoZone." Id. at 3.

"Plaintiff has reviewed the medical records and there is nothing in the records that establishes a nexus between plaintiff's post-partum depression and her demotion from five months earlier nor will plaintiff submit any such evidence." Id.

" . . . plaintiff does not contend that her depression in July 2006 is related to the conduct of the defendant . . . ." Id. at 4.

"The inappropriate and unnecessary nature of the suggested psychiatric exam is further shown by the fact that plaintiff[']s symptoms of post-partum depression subsided in or around Mid-2008. Plaintiff's deposition was taken on October 8, 2008. She was asked if she was still taking medication for depression and she said no. She then was asked when was the last time you were prescribed medication for depression. She answered that it was about two years before the deposition, i.e. 2006. Therefore, she has no current

1  and conditions with Plaintiff's attorney, discussed with the attorneys Defendant's proposed

2  stipulations, and obtained the parties' agreement regarding the scope of Plaintiff's emotional

3  distress claims.  Based upon the parties' agreements, the Court denied Defendant's motion

4  to compel an IME.  ECF No. 95.  As the Court explained in its Order:

> Counsel for Plaintiff agreed to withdraw two previously-designated expert witnesses: Dr. Shahzad Kahn and Ms. Carla Canedo-Villa, M.A.  See ECF No. 89-1 at 6; ECF No. 89-3 at 50-51.  Counsel for Plaintiff also agreed to Defendant's proposed stipulation that "Juarez will only refer to 'humiliation, embarrassment, anger or anxiety' when describing or referring to what she experienced as a result of the conduct that she attributes to Autozone."  ECF No. 91 at 3.  Based upon these agreements and the fact that Plaintiff is not alleging any ongoing emotional distress, the Court finds that Plaintiff's mental state is not "in controversy" and an independent mental examination is not warranted at this time.  See Turner, 161 F.R.D. at 98.

11 ECF No. 95 at 3.  Plaintiff did not object in any way to this Court's statement regarding

12 Plaintiff's agreement.  If Plaintiff and her attorney had not agreed to withdraw the two

13 designated psychological or psychiatric expert witnesses and to limit the scope of the

14 claimed emotional distress, Plaintiff had several months to notify the Court or opposing

15 counsel.  The fact that she did not do so reinforces the accuracy of the Court's statement.

16  Contrary to her argument, Plaintiff's new and untimely expert designation is not

17 harmless.  See Pl.'s Opp'n at 7-8.  Plaintiff's new expert sets forth an emotional distress

18 claim that is 180 degrees away from the position Plaintiff adopted in April.  In denying the

---

complaints or symptoms requiring or justifying a lengthy psychiatrist[']s evaluation."  Id. at 5.
  "It is undisputed that plaintiff has not asserted causes of action for either intentional or negligent infliction of emotional distress."  Id. at 6.
  "Plaintiff here, as in Turner, is alleging only 'garden variety' emotional distress and has not put in controversy her mental health."  Id.
  "Since plaintiff[']s counsel is willing to stipulate that plaintiff will not be claiming severe emotional distress at trial, and that plaintiff does not currently have symptoms or complaints of emotional distress caused by the subject harassments, plaintiff cannot stipulate to undergoing a mental exam because there are no relevant issues warranting this unduly invasive process."  Id. at 7.
  "If the court orders that plaintiff must submit to the mental IME by Dr. Kalish, plaintiff requests leave to designate her own retained mental health expert.  This could be done within 5 days of this court's order.  Plaintiff did not previously designate a retained mental health expert since she was only alleging 'garden variety' emotional distress and did not anticipate putting on any medical evidence, aside from proving she was pregnant as alleged in the SAC (if the defendants refused to so stipulate)."  Id.  Tellingly, this last statement indicates that Plaintiff would only seek a psychological or psychiatric expert if the Court allowed an IME—which, based upon Plaintiff's representations, it did not—and further suggests that Plaintiff would be able to designate an expert very quickly—which, based upon her June 2, 2011 designation, she did not.

motion to compel an IME, the Court relied on the agreements and stipulations made by Plaintiff during the conference call and summarized in the April Order. ECF No. 95. Because Plaintiff's new emotional distress claim contradicts those agreements and asserts new claims, it also would mandate an IME, as well as a new report issued by Dr. Kalish, and perhaps additional discovery. Because this latest expert designation occurred several months after the deadline and one day before the close of discovery, and involves a significant change in position, it is not harmless.

Plaintiff fails to adequately explain how or why she failed to designate Dr. Addario on February 4, 2011 and her new emotional distress claim, as asserted by Dr. Addario, contradicts her former written and verbal agreements. Because Plaintiff had ample opportunity to timely designate an expert and to allege significant emotional distress and chose not to do so, the Court finds that her last-minute attempt to reverse that decision is neither "substantially justified [n]or harmless."[5] Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Strike Plaintiff's Untimely Designation of Expert Psychiatrist, Dominick Addario, M.D.

**IT IS SO ORDERED.**

DATED: July 12, 2011

_____
BARBARA L. MAJOR
United States Magistrate Judge

---

[5] Plaintiff's counsel's decision not to speak with Plaintiff's physicians and/or designate an expert earlier in this litigation is a decision that counsel for Plaintiff consciously made and a decision by which she must now abide. See ECF No. 90-1 at 2 (Moore Decl.) ("I at all times during the meet and confer process [] informed defendant the plaintiff was only alleging 'garden variety' emotional distress and that no one from my office had ever spoken to plaintiff's treating physicians. I also advised defense counsel that plaintiff was not going to call them at trial for the purpose of establishing that plaintiff suffered from depression caused by the actions of defendant. I also did not have the medical records during the meet and confer process. My office had not requested the records since they were not relevant to plaintiff's claims. They were provided by defense counsel as I was preparing this opposition.")