# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rosario Juarez,<br><br>                     Plaintiff,<br>vs.<br><br>Autozone Stores, Inc.,<br>                     Defendant. | CASE NO. 08cv00417-CAB (BLM)<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT AUTOZONE'S MOTION FOR SUMMARY JUDGMENT; and DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT<br>[Doc. Nos. 105, 113] |

**I.    BACKGROUND**

On January 18, 2008, Plaintiff Rosario Juarez ("Plaintiff" or "Juarez") filed this action against her former employer, AutoZone Stores, Inc. ("Defendant" or "AutoZone"), in the Superior Court of the State of California, County of San Diego. The case was removed to this Court on March 5, 2008. On September 7, 2010, Plaintiff filed the operative complaint in this matter, the Second Amended Complaint (the "SAC"). The SAC asserts the following nine causes of action:

(1) Pregnancy/Sex Discrimination in Violation of the Fair Employment Housing Act ("FEHA"), Cal. Gov't Code §12940(a);

(2) Pregnancy/Sex Harassment, in Violation of FEHA, Cal. Gov't Code §12940(j);

(3) Retaliation, in Violation of FEHA, Cal. Gov't Code §12940(h);

(4) Failure to Prevent Harassment/Discrimination/Retaliation, Cal. Gov't Code §12940(k);

(5) Wrongful Termination in Violation of Public Policy;

(6) Failure to Pay Wages (Cal. Labor Code §§203, 1194);

| | |
|---|---|
| 1 | (7) Failure to Pay Wages (Fair Labor Standards Act, 29 U.S.C. §216); |
| 2 | (8) Unfair Competition (Cal. Bus. & Prof. Code §17200 et seq.); and |
| 3 | (9) Unjust Enrichment. |

On June 30, 2011, AutoZone filed a motion for summary judgment on each of Plaintiff's causes of action. [Doc. No. 105.] Plaintiff filed an opposition, which also cross-moved for partial summary judgment on AutoZone's tenth, seventeenth, and twenty-ninth affirmative defenses.[1] [Doc. No. 113.] AutoZone filed a reply. [Doc. No. 116.] Plaintiff filed a sur reply addressing its request for partial summary judgment. [Doc. No. 122.] On September 13, 2011, Judge M. James Lorenz submitted the motions for determination without oral argument. [Doc. No. 123.]

The case was transferred to the undersigned on February 15, 2012. [Doc. No. 128.] Having considered the submissions of the parties, AutoZone's Motion for Summary Judgment [Doc. No. 105]is DENIED as to Plaintiff's first, third, fourth and fifth causes of action, GRANTED IN PART and DENIED IN PART as to Plaintiff's second cause of action, and GRANTED as to Plaintiff's sixth, seventh, eighth and ninth causes of action. Plaintiff's Cross-Motion for Partial Summary Judgment on AutoZone's tenth, seventeenth, and twenty-ninth affirmative defenses [Doc. No. 113] is DENIED.

## II.   UNDISPUTED FACTS

The parties jointly submitted the following as undisputed facts in this case [*see* Doc. No. 121]:

Plaintiff Juarez began her employment with AutoZone as a Customer Service Representative in December 2000. In April 2001, Juarez was promoted to the Parts Sales Manager position. In October 2004, Juarez was promoted to the Store Manager position. Upon being promoted to the Store Manager position, Juarez was first assigned to the Santee store where she worked for a few months. At her own request, Juarez was then transferred to the position of Store Manager at the Plaza Blvd.

---

[1] AutoZone's tenth affirmative defense is "that any injuries or damages of Plaintiff, if any, were caused and/or instigated by Plaintiff's own conduct, behavior, and/or negligence." AutoZone's seventeenth affirmative defense is that "any conduct of its managers, while acting in the course and scope of their employment, was protected by the managerial privilege and that all actions taken with respect to Plaintiff's employment were undertaken and exercised with proper managerial discretion in good faith, for proper and lawful reasons and/or justified by legitimate and substantial business reasons." AutoZone's twenty-ninth affirmative defense is that "Defendant and its agents acted reasonably, with due care, and in good faith at all times material herein, based on all relevant facts and circumstances known by them at the time they so acted, and that all actions taken toward Plaintiff were for legitimate, good faith and nondiscriminatory business reasons."

1  store in National City.

2  On December 9, 2005, Juarez was placed on a Performance Improvement Plan ("PIP"). In February 2006, Juarez was demoted to the Parts Sales Manager position. Following her demotion, Juarez was assigned to work as a Parts Sales Manager at a store located on East H Street in Chula Vista.

On or about April 19, 2006, Juarez filed a Charge of Discrimination with the California Department of Fair Employment and Housing ("DFEH"). On February 16, 2007, the DFEH issued a right-to-sue notice to Juarez. Juarez was terminated from AutoZone on November 20, 2008. On or about February 19, 2009, Juarez filed a Complaint of Discrimination with the DFEH.

### III.  STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only upon the movant's showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1229 (9th. Cir. 2000). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Id.*, citing *Anderson*, 477 U.S. at 248.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the Plaintiff to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  ANALYSIS

**A.  Whether Plaintiff's Demotion was Motivated by Pregnancy/Sex Discrimination is a Triable Issue of Fact for the Jury (First Cause of Action)**

Juarez claims that she was demoted because of her pregnancy. In evaluating discrimination

claims under FEHA, California courts look to federal precedent governing analogous federal discrimination laws. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 354 (2000). When responding to a summary judgment motion, the plaintiff may proceed by using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or alternatively, may simply produce direct or circumstantial evidence demonstrating that "a discriminatory reason more likely than not motivated" the employment decision. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).[2]

For purposes of summary judgment, "'direct' evidence refers only to evidence (such as racist or sexist statements) that proves the fact of discriminatory animus without the need for **substantial** inference." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1096 n.8 (9th Cir. 2005) (emphasis added); *DeJung*, 169 Cal. App. 4th at 550; *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). Direct evidence often consists of remarks made by decision-makers displaying bias or motive. *Godwin*, 150 F.3d at 1221. "Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." *DeJung*, 169 Cal. App. 4th at 550. A reasonable factfinder could conclude that such a causal relationship exists where "the person who exhibited discriminatory animus influenced or participated in the decisionmaking process." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1040-41 (9th Cir. 2005). When the evidence is direct, little evidence is needed to survive summary judgment. *Godwin*, 150 F.3d at 1221.

Here, the Court finds that Plaintiff puts forth direct evidence that her February 2006 demotion was motivated by sex discrimination in violation of FEHA. Crediting Plaintiff's evidence and reasonable inferences therefrom as true for summary judgment purposes, Juarez's direct supervisor (district manager Kent McFall) held a sex-related animus toward Juarez, and a reasonable jury could conclude his bias tainted the PIP that influenced the decision to demote Juarez.[3]

---

[2] In the absence of direct evidence, however, California courts utilize the *McDonnell Douglas* framework. *Guz*, 24 Cal.4th at 354; *DeJung v. Superior Court*, 169 Cal. App. 4th 533, 550 (2008) ("there is no need to engage in this burden-shifting analysis where there is direct evidence of discriminatory animus").

[3] In making this finding, the Court relies on the Staci Saucier deposition transcript, among other evidence. In this regard, the Court DENIES Defendant's motion to strike deposition transcripts, such as the Saucier deposition transcript, for failing to submit the court reporter's

In or around November 2005, Juarez, accompanied by co-workers, told district manager McFall that she was pregnant. Throughout the two to three months leading up to Juarez's February 2006 demotion, McFall allegedly "often" pressured Juarez to step down as the Store Manager ***due to*** her pregnant condition – making statements like, the job is "too much for you in your condition" or "I don't think its right for you to be under this kind of pressure in your condition. You should step down."[4] Soon after telling McFall she was pregnant, McFall more than doubled the length of her "to do" list items (and not her male counterparts at other stores) and placed Juarez on an onerous PIP outlining areas where Juarez's would either need to improve over a short time period to McFall's subjective satisfaction or face demotion. Importantly, there is evidence that McFall's dissatisfaction with Juarez's improvement on the PIP was considered in deciding to demote Juarez. Thus, McFall's statements constitute direct evidence that Juarez's demotion was motivated by a discriminatory animus on the basis of sex.

Additional direct evidence of discriminatory animus are the comments and views shared about the women at AutoZone by Regional Manager Dan Merchant – one of the decisionmakers in Juarez's demotion. *Coghlan*, 413 F.3d at 1095 ("when evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small that we have treated the evidence as direct"); *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (racial comments viewed as direct evidence "despite their reference to another agent and their utterance after the hiring decision"). According to Plaintiff's

---

certification that the submitted transcript is true and correct. Plaintiff submitted a sworn declaration that the transcripts are true and correct copies of relevant portions of certain depositions. Plaintiff is not precluded from relying on such deposition transcripts given Defendant fails to articulate any substantive problems with excerpts from a deposition (I) taken in the course of this very litigation, (ii) at which AutoZone was represented by its current counsel, and (iii) for which the transcript is surely in AutoZone's possession. The Court declines to address each of Defendant's scorched-earth motions to strike. To the extent specific objections are not addressed herein, they are preserved for trial.

[4] The Court DENIES IN PART Defendant's motion to strike the Alejandra Perez declaration insofar as it seeks to exclude the following statements in the Perez declaration for which Perez is a percipient witness: (1) "After this he often told Rosario in my presence that: 'I don't think you can handle it in your condition.'"; (2) "McFall told Rosario in front of me and even customers: 'I don't think its right for you to be under this kind of pressure in your condition. You should step down.'" The Court finds that these statements are not vague as to time and are not being offered for their truth. Read in context, these statements were made after learning of Juarez's pregnancy in November 2005, but prior to her demotion in February 2006. Perez will be permitted at trial to testify as to statements she heard McFall utter.

evidence, during a 2003 or 2004 AutoZone district managers meeting, Merchant instructed that women be fired and purposefully not hired, and stated that "women weren't worth 'shit' to our business."[5]

The Court notes that Merchant's comments made in 2003 or 2004 are not directly connected to Plaintiff's demotion. However, given the sweeping nature of the alleged statements, the Court finds that for summary judgment purposes they are more than mere stray remarks. Coupled with McFall's alleged statements, Merchant's alleged statements are probative of a general hostility to a protected class and a rational jury could conclude that the decision to demote Plaintiff was discriminatory. *See Campbell v. Nat'l Passenger R.R. Corp.*, No. 05cv5434, 2009 WL 2591611, *5 (N.D. Cal. Aug. 21, 2009) ("The Court rejects the argument that, simply because . . . comments were made a number of years before the employment decisions at issue, they should have been excluded at trial").[6] Thus, Defendant's request for summary judgment on Plaintiff's first cause of action is DENIED.

**B.    Pregnancy/Sex Harassment (Second Cause of Action)**

    **1.    Plaintiff Exhausted her Administrative Remedies for the November 2005 through February 2006 Time Period Only**

This case also involves the hostile environment theory of sexual harassment. Autozone argues that Plaintiff's claim for harassment is barred because Plaintiff failed to exhaust her administrative remedies. In assessing whether Plaintiff failed to exhaust her administrative remedies, "what is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation." *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 268 (2009). Construing Plaintiff's DFEH complaint liberally, she may pursue a sexual harassment claim for the time period between notifying McFall of her pregnancy and her demotion only.

In her original complaint to the DFEH, Plaintiff alleged that she "was treated differently" starting in November 2005 and ending in February 2006. She also alleges the following facts:

---

[5]    The Court DENIES IN PART Defendant's motion to strike these statements, which are set forth in the Cosby declaration. These statements are relevant and offered to show Merchant's state of mind, not to prove the truth of the matter asserted therein.

[6]    There is also other evidence of a culture of sex discrimination at AutoZone, including that at some point in or before 2004, AutoZone's Vice President of Operations for the Western Division criticized a store for having too many female employees, angrily commenting "What are we running, a boutique?"

> On or about November 2005, I informed Mr. Kent McFall that I was pregnant. Shortly thereafter Mr. McFall began to be critical of the work I did. On or about December 2005, Mr. McFall told me that I should consider stepping down because I couldn't handle the store. Prior to telling me Mr. McFall of my pregnancy he had praised my work.

[Doc. No. 105-2 at 6.][7] While Plaintiff failed to label her DFEH complaint as one for both harassment and discrimination, the same facts serve as the basis for both claims for the November 2005 through February 2006 time period. As a result, a reasonable investigation could be expected to uncover both the alleged sex discrimination and sexual harassment that allegedly occurred between November 2005 and February 2006. Therefore, Plaintiff exhausted her administrative remedies for her claim that she suffered sexual harassment in the months leading up her demotion.

In contrast, there is no evidence from which a finder of fact could reasonably expect that DFEH would have investigated any alleged harassment prior to Plaintiff announcing her pregnancy or after her February 2006 demotion. As a result, the Court GRANTS IN PART summary judgment against Plaintiff to the extent her second cause of action claims sexual harassment occurred outside of the November 2005 through February 2006 time period for failure exhaust administrative remedies.

### 2. Whether AutoZone Subjected Plaintiff to a Hostile Work Environment is an Issue of Fact for the Jury

For the hostile work environment sexual harassment claim that remains, Defendant AutoZone argues that Juarez's allegations of sexual harassment fail as a matter of law. "[T]o establish liability in a FEHA hostile work environment sexual harassment case, a plaintiff employee must show [she] was subjected to sexual advances, conduct, or comments that were severe enough or sufficiently pervasive to alter the conditions of [his] employment and create a hostile or abusive work environment." *Lyle v. Warner Brothers Television Productions*, 38 Cal. 4th 264, 283 (2006). "[I]t is the disparate treatment of an employee on the basis of sex . . . that is the essence of a sexual harassment claim." *Id.* at 280. For purposes of sexual harassment claims, "[w]hat matters, however, is not whether the two sexes are treated differently in the workplace, but whether one of the sex[es] is treated adversely to the other sex in the workplace because of their sex." *Kelley v. Conco Companies*, 196 Cal. App. 4th 191, 207 (2011).

The crux of Plaintiff's harassment claim is that her supervisor, McFall, created a hostile work

---

[7] Page citations reference the ECF-generated page numbers, where applicable.

environment. He visited her store two to three times a month and during those visits McFall allegedly treated Juarez poorly and set her up for failure. For example, as compared to her male counterparts with stores in worse condition than hers, he would assign her longer "to do" lists with impracticably short deadlines and would speak to her more "dismissive and sarcastic." Juarez testified that she was required to complete her onerous "to do" lists timely, even when she told McFall that she could not do all the work on the list and run the store within the hours she was allowed.

Also during his visits, McFall "often" made comments that Plaintiff's pregnant condition should be the reason for her to step down as the Store Manager. Plaintiff claims the "to do" lists assigned to her contained unnecessary busy work and that McFall more than doubled the length of her "to do" items once she told him that she was pregnant. Further, McFall warned her that she would be written up and, ultimately, did write her up for not timely completing her lists. Though a close call, the Court finds there to be sufficient evidence from which a reasonable juror could find in Plaintiff's favor on her sexual harassment claim for the November 2005 through February 2006 time period only. Therefore, summary judgment as to Plaintiff's second cause of action for the November 2005 through February 2006 time period is DENIED.

**C.** **Whether Defendant Terminated Plaintiff Because She Opposed Discriminatory Behavior is a Triable Issue of Fact for the Jury (Third and Fifth Causes of Action)**

Plaintiff claims that she was wrongfully terminated on November 20, 2008 for retaliatory and gender discriminatory reasons. Specifically, Plaintiff contends that the filing of DFEH complaints and actively pursuing this sex discrimination litigation were motivating factors in the decision to terminate Plaintiff. Thus, Plaintiff's wrongful termination claims (the third and fifth causes of action) turn on whether Defendant terminated Plaintiff because she opposed discriminatory behavior. *See* Cal. Gov't Code § 12940(h).

Plaintiff presents circumstantial evidence of retaliation in support of her wrongful termination claims. As there is an absence of direct evidence of retaliation, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.

Under this framework, Plaintiff must first establish her prima facie case of retaliation under the FEHA by showing "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the

employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" *Scotch v. Art Institute of California*, 173 Cal. App. 4th 986, 1020 (2009). Once the plaintiff has established a prima facie case, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse employment action. *Anderson v. Union Pac. R. Co.*, No. 06cv2813, 2008 WL 2130320, at *9 (E.D. Cal. May 20, 2008) (applying *McDonnell Douglas* burden shifting scheme to wrongful termination action). If the employer does so, the inference of retaliation is overcome. The plaintiff must then provide evidence to demonstrate that the legitimate reason proffered by the defendant is merely a pretext. *Id.*

### 1. Plaintiff Establishes Her Prima Facie Case for Summary Judgment Purposes

Defendant contends that Plaintiff lacks evidence of a causal link and, as a result, cannot establish the third element of her prima facie case. Plaintiff disagrees. "At the prima facie stage of a retaliation case, the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative . . . action are not completely unrelated." *Emeldi v. University of Oregon*, 673 F.3d 1218, 1226 (9th Cir. 2012) (internal quotations and citations omitted). Plaintiff argues that the causal link exists because her termination was contemporaneous with her protected activity of pursuing this litigation, having completed her first deposition approximately six weeks earlier.

The Court finds for purposes of summary judgment that Plaintiff's deposition was a new instance of protected activity. *See Gray v. City of Montgomery*, 756 F.Supp.2d 1339, 1351-52 (M.D. Ala. 2010) ("separate protected activity could occur in a lawsuit or charge. For example, a plaintiff could give a deposition that angers a defendant."). The lapse of six weeks between Juarez's deposition and her termination is sufficiently proximate in time to establish the causal link element of Plaintiff's prima facie case. *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir.2000) (noting that causation can be inferred from timing alone); *see also Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir.1989) (prima facie case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings). For purposes of summary judgment, the timing between Plaintiff's deposition testimony and her subsequent termination is enough to establish the causal link element of Plaintiff's prima facie case.

### 2. Plaintiff Puts Forth Sufficient Evidence of Pretext to Rebut the Nondiscriminatory Motives Offered by Defendant

As Plaintiff has made her prima facie case, the burden now shifts to Defendant to offer a nondiscriminatory motive for the adverse employment action. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002). Plaintiff "can rebut this by producing 'specific, substantial evidence of pretext.'" *Id.* "Pretext, too, may be shown by circumstantial evidence . . . but it must consist of 'more than a mere refutation of the employer's legitimate reason and [a mere assertion] that the discriminatory reason be the cause of the firing." *Id.* (citations omitted).

Here, AutoZone rebutted Plaintiff's claim for retaliation with evidence of a legitimate non-discriminatory motive for Plaintiff's discharge – that an internal AutoZone investigation concluded that Plaintiff was responsible for the loss of cash. The evidence shows that on October 29, 2008, Juarez was the manager on duty responsible for a "cash sweep" (taking the cash out of the register and putting it in a deposit envelope) that resulted in the loss of $400. According to a report dated December 8, 2008, a November 8th interview of Juarez revealed to AutoZone that Juarez was responsible for the loss as she "failed to follow cash handling procedures during the sweep." Upon hearing about Juarez's interview and also that she refused to provide a written statement memorializing the interview, District Manager John Gonzales suspended Juarez. AutoZone terminated Plaintiff from her position on November 20, 2008, and AutoZone's Payroll Termination Report lists the termination reason as "policy violation."

Defendant also argues that Plaintiff's termination was partially the product of her behavior during the cash sweep investigation. For example, the above-referenced December 8 report states that Juarez refused to provide a written statement (referred to as a "Q&A statement") reflecting her November 6, 2008 interview about the cash sweep, despite being warned that refusal could lead to termination. AutoZone's Regional Human Resources Manager testified that this refusal violated AutoZone's code of conduct and ethics requirement that managers cooperate in internal investigations. Further, Juarez admitted that she provided her employees with false information about the money that had gone missing. Juarez also admitted that she was told that a "lack of trusting" was one of the reasons for her termination.

However, Plaintiff presents substantial additional evidence from which a trier of fact could

infer the articulated reasons for her termination were untrue or pretextual. In addition to the six week temporal proximity between her deposition in this case and the time of her termination, there is evidence that the cash sweep investigation was a sham as (1) AutoZone and its witnesses failed to point to a written policy that Plaintiff violated and for which a violation thereof is a terminable offense (yet AutoZone contends she was terminated for a "policy violation"); (2) the only dated report of Plaintiff's interview was generated over a month after the investigation and over two weeks after Plaintiff's termination; (3) AutoZone did not discipline the other employee involved in the cash sweep (despite the fact that the other employee admitted to improperly placing the money on the register instead of handing it directly to Plaintiff); and (4) AutoZone trains its employees that investigative interviews are voluntary and AutoZone's human resources witness testified that managers "may not be terminated for failing to write out a Q&A statement," but yet Plaintiff was supposedly warned that her refusal to write out a Q&A statement could, and ultimately did, lead to termination.

Further evidence that the termination may have been retaliatory includes the evidence showing that Merchant knew about Plaintiff's lawsuit prior to her termination, harbored a discriminatory animus toward women in the AutoZone workplace,[8] and, given his job responsibilities, would have played a role in the termination decision. Finally, AutoZone's human resources witness, who for years had responsibilities over AutoZone's DFEH claim files, testified that she is not aware of any AutoZone employee who both filed a DFEH charge and kept their AutoZone employment. Taking these facts in the light most favorable to Plaintiff, she presents a genuine issue of fact as to whether her termination was retaliatory. Thus, the Court DENIES summary judgment as to Plaintiff's third and fifth causes of action.[9]

---

[8] Standing alone, Merchant's alleged discriminatory comments years earlier would be too remote in time and context to raise a triable issue as to the causal link element of Plaintiff's retaliation claim.

[9] It is unclear as to whether Plaintiff is attempting to alternatively argue that her termination constituted non-retaliatory gender discrimination. If so, then Plaintiff has failed to present evidence raising a triable issue of fact that similarly situated male employees were treated more favorably than she was. Plaintiff claims that "[c]reating pretexts for wrongful termination out of minor incidents was a practice at Autozone." [Doc. No. 113 at 19.] But the only evidence presented in support is the Randy Cosby declaration, claiming that starting in 2003 or 2004 and continuing through his termination in 2006, he, with the help of the Sacramento Regional Manager and Human Resources manager, "would use any little problem the managers had to get rid of [women] – things that would

### D. Plaintiff's Failure to Prevent Harassment/Discrimination/Retaliation Argument Does Not Constitute New Grounds (Fourth Cause of Action)

Plaintiff argues in her papers that AutoZone failed to prevent discrimination in violation of Cal. Gov't Code §12940(k) because AutoZone failed to investigate Plaintiff's complaint of being unfairly treated while she was pregnant. Defendant argues that this "duty to investigate" argument constitutes new grounds not in issue under the pleadings, and thus, improperly raised at summary judgment. The Court is not persuaded that Plaintiff is raising new grounds. That Plaintiff seeks to hold Defendant liable for its alleged refusal to investigate discriminatory conduct is inherent in the Code section at issue[10] and pled in SAC. Therefore, Defendant's motion for summary judgment as to Plaintiff's fourth cause of action is DENIED.

### E. Plaintiff Failed to Show that AutoZone had Actual or Constructive Knowledge of her Off-the-Clock Work (Sixth and Seventh Causes of Action)

To state an overtime claim under the Fair Labor Standards Act, Plaintiff must show, among other things, that AutoZone had actual or constructive knowledge of her overtime work. *See Lindow v. U.S.*, 738 F.2d 1057, 1060-61 (9th Cir. 1984) ("'an employer who knows or should have known that an employee is or was working overtime' is obligated to pay overtime"). The same is true under California law. *See* Cal. Lab. Code § 203(a); *Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1065 (C.D. Cal. 2008).

In assessing the extent of the employer's knowledge, the Court "need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge. *Reich v. Department of Conservation and Natural Resources, State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (citations and quotations omitted). An employer is not liable for work it did not know about, and had no reason to know about. *See* 29 U.S.C. § 203(g); Cal. Lab. Code § 203(a).

AutoZone takes the position that Plaintiff's overtime claim fails as a matter of law because she

---

not otherwise have meant anything." These conclusory allegations about different actors from a different region during a different time period than at issue here does not raise a triable issue of fact as to whether her termination constituted non-retaliatory gender discrimination.

[10] This section of the Code states that it is an "unlawful employment practice . . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code §12940(k).

made testimonial admissions that none of her superiors knew about her alleged off-the-clock work and that she understood AutoZone maintained a policy against off-the-clock work. Plaintiff counters AutoZone should be held liable because it both knew about and failed to monitor Plaintiff's off-the-clock work. Having reviewed the evidence, the Court finds there is no evidence from which a reasonable jury could conclude AutoZone had actual or constructive knowledge that Plaintiff performed off-the-clock work.

There is evidence that Plaintiff's job responsibilities included keeping her weekly hours within the budget of 40 hours of regular pay and 10 hours of overtime pay. However, at best, this evidence shows store managers had an incentive to work off-the-clock when additional tasks needed to be completed, not that they actually did so. There is also testimony that Plaintiff informed her supervisor, McFall, that certain tasks could not be completed in the time he allotted to her. But, there is no evidence that McFall was told, or otherwise should have known, that Plaintiff's solution was to work on those tasks off-the-clock. In fact, the evidence suggests that those tasks were not timely completed and that Plaintiff explained to management that tasks remained uncompleted due to the *cutting* of hours.

Plaintiff argues that AutoZone should have known that each of its store managers necessarily performed off-the-clock work. In support, Plaintiff provides a declaration from a former employee who served as a District Manager in the Sacramento Region and a store manager in Utah, hereinafter referred to as the Kell Declaration. The Kell declaration states that, upon AutoZone reclassifying its California store managers from exempt to non-exempt *in 2001*, AutoZone slashed the California store managers' maximum allotted hours per week from 60-65 down to 50, "but did not change any of the duties or expectations." [Doc. No. 113-2 at 141.] The Court finds this evidence to be too vague, too remote in time and of such marginal relevance that it cannot present an issue of facts as to whether AutoZone had actual or constructive knowledge that *Plaintiff* herself worked off-the-clock.

Plaintiff further argues District Managers could easily determine when store managers were working "off-the-clock." The evidence that Plaintiff claims supports this argument is very weak on this point and includes: (1) a time sheet showing that she worked until 11:37 p.m. on October 19, 2005

– the day McFall gave her the most onerous of her to do lists;[11] (2) a time sheet showing "a couple of entries on there that say 'failed to clock out'"; (3) the Kell Declaration stating that a District Manager could either review the alarm system records to identify the times and days a store manager logged in and out, or perform a "simple comparison" of the store manager's dated and time-stamped daily print-outs with the store manager's schedule would show the existence of these daily print-outs on off-the-clock days (days they were not scheduled to be working).

There are many problems with Plaintiff's evidence. For example, there is no evidence that anyone at AutoZone looked at, or per their job responsibilities were charged to look at, the records that supposedly would have made Plaintiff's unpaid overtime hours obvious. Further, there is no evidence that AutoZone's records, in fact, make Plaintiff's unpaid overtime hours obvious. The few time sheets referenced do not show that AutoZone should have know Plaintiff was working uncompensated overtime hours. Moreover, discrepancies between AutoZone's records and Plaintiff's schedule would not necessarily have alerted AutoZone that Plaintiff was working off-the-clock. *See, e.g.,* 29 C.F.R. § 785.48 (employees who voluntarily "remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded").

In addition, Plaintiff submits evidence that she was working "long" hours off-the-clock, including her co-worker Alejandra Perez's vague declaration that at some point during the October 2004 to June 2006 time period she "worked with Rosario 'off-the-clock' on many occasions until 2:00 a.m. or later – this happened two or three times a week."[12] [Doc. No. 113-2 at 137.] However, as set forth above, Plaintiff fails to establish AutoZone's actual or constructive knowledge of this work or that AutoZone's records would reflect this work. Plaintiff never mentioned to superiors that she was working beyond the 10 hours of overtime allotted to store managers, never complained that she was uncompensated for her total amount of hours worked, was never told not to record her overtime, and was never witnessed by supervisors as working off-the-clock. Plaintiff was aware of AutoZone's

---

[11] Despite Plaintiff's argument to the contrary, there is no evidence that McFall ever saw this time sheet.

[12] The Court notes that in addition to this evidence being vague, it may be stale as to any actionable claims. *See* 29 U.S.C. § 255(a).

policy prohibiting off-the-clock work. [Doc. No. 105-5 at 120; 105-4 at 8 (an employee should "never volunteer or agree to work off the clock or falsify time records for yourself or another AutoZoner. If you do, you can be terminated immediately").] And, in the months leading up to her demotion, AutoZone had no reason to suspect Plaintiff of off-the-clock work, especially given she failed to timely complete the allegedly onerous "to do" lists assigned to her. Given these circumstances, AutoZone did not have reason to know, or even suspect, Plaintiff was acting in direct contradiction of company policy. Accordingly, no reasonable trier of fact could conclude that AutoZone had reason to know that Plaintiff was working off-the-clock.

Therefore, Defendant's motion for summary judgment on Plaintiff's sixth and seventh causes of action for alleged "off-the-clock" work is GRANTED.

**F.     Plaintiff's Eighth Cause of Action for Unfair Business Practices and Ninth Cause of Action for Unjust Enrichment/Quantum Meruit Fail as a Matter of Law**

Defendant's motion for summary judgment on Plaintiff's eighth cause of action for unfair business practices and ninth cause of action for unjust enrichment/quantum meruit is GRANTED as these claims are derivative of Plaintiff's sixth and seventh causes of action for failure to pay overtime wages. *See generally Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005).

**G.     Whether Plaintiff's Damages are Limited by After Acquired Evidence is a Triable Issue of Fact**

The "after acquired-evidence rule" provides that an employee may not be reinstated or receive front-pay for his severe wrongdoings after termination if that wrongdoing would have led to his termination on legitimate grounds had the employer known about it. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995). The employer must "establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.*, 513 U.S. at 362-63. Contrary to Defendant's argument otherwise, there is a triable issue of fact as to whether AutoZone would have in fact (rather than merely could have) terminated Plaintiff for allowing her store employees to work off-the-clock in violation of AutoZone policy. Thus, Defendant's request for summary judgment on the after-acquired evidence rule is DENIED.

### H. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff's cross-motion for summary judgment on Defendant's tenth, seventeenth, and twenty-ninth affirmative defenses is DENIED as Plaintiff improperly seeks to shift the burden of persuasion to Defendant. Plaintiff essentially argues that Defendant must prove that there was a "just cause for both the demotion and the termination." [*See, e.g.,* Doc. No. 122 at 5.] This is not the state of the law. *See, e.g., Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) ("plaintiff retains the 'ultimate burden of persuading the court that she has been the victim of intentional discrimination,' . . . the question comes down to whether she has made her case"). While this Court has found for purposes of summary judgment that a reasonable jury could find that discrimination was a motivating factor in both Plaintiff's demotion and termination decisions, equally a reasonable jury could find that discrimination played no part in the decisions. Therefore, summary judgment on Defendant's tenth, seventeenth, and twenty-ninth affirmative defenses is not warranted.

### V. CONCLUSION

For the reasons set forth herein, AutoZone's Motion for Summary Judgment [Doc. No. 105] is DENIED as to Plaintiff's first, third, fourth and fifth causes of action; GRANTED IN PART and DENIED IN PART as to Plaintiff's second cause of action; and GRANTED as to Plaintiff's sixth, seventh, eighth and ninth causes of action. Plaintiff's Cross-Motion for Partial Summary Judgment on AutoZone's tenth, seventeenth, and twenty-ninth affirmative defenses [Doc. No. 113] is DENIED.[13]

The parties are ORDERED to contact the Chambers of Magistrate Judge Barbara Lynn Major on or before **October 3, 2012** for a new scheduling order and a settlement conference.

DATED: September 28, 2012

_____
**CATHY ANN BENCIVENGO**
United States District Judge

---

[13] Further, as certain of the electronic filings before the Court were improperly scanned and filed in an unsearchable format, the parties are directed that hereafter filings must comply with the Electronic Case Filing Administrative Policies and Procedures of this Court, which instruct that "Electronic documents must be converted to .pdf directly from a word processing program (e.g., Microsoft Word® or Corel WordPerfect®)."