09:36:45  1                  UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4
       ROSARIO JUAREZ,                 . CASE NO. 08-CV-00417-WVG
5                                      .
            PLAINTIFF,                 . NOVEMBER 12, 2014
6                                      .
                                       . **JURY TRIAL - VOLUME VII**
7             VS.                      . **(SESSION 2)**
                                       .
8      AUTOZONE STORE, INC.,           . SAN DIEGO, CALIFORNIA
                                       .
9           DEFENDANT.                 .
09:36:45 . . . . . . . . . . . . . . . . . . ..
        10

11

12             TRANSCRIPT OF JURY TRIAL PROCEEDINGS
                    (VOLUME VII, SESSION 2)
13           BEFORE THE HONORABLE WILLIAM V. GALLO
                 UNITED STATES MAGISTRATE JUDGE
14
       APPEARANCES:
15
       FOR THE PLAINTIFF:      BOHM LAW GROUP
16                             BY: LAWRANCE BOHM AND CHARLES MOORE
                               4600 NORTHGATE BOULEVARD, SUITE 210
17                             SACRAMENTO, CA 95834

18     FOR THE DEFENDANT:      LITTLER MENDELSON, P.C.
                               BY: NANCY PRITIKIN AND LILIYA STANIK
19                             501 WEST BROADWAY, SUITE 900
                               SAN DIEGO, CA 92101
20
       COURT REPORTER:         JULIET Y. EICHENLAUB, CSR, RPR
21                             USDC CLERK'S OFFICE
                               333 WEST BROADWAY, SUITE 420
22                             SAN DIEGO, CALIFORNIA  92101
                               JULIET_EICHENLAUB@CASD.USCOURTS.GOV
23

24

25
       REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

1                              <u>**INDEX**</u>

2   EXAMINATION

3   WITNESS NAME                     DIRECT  CROSS  REDIRECT  RECROSS

4      KENNETH MCFALL....................    102      118      118

5   EXHIBITS

6   EXHIBIT      DESCRIPTION                            EVIDENCE

7   31           STORE MANAGER BONUS PLAN .....................    104

8   376          PERFORMANCE IMPROVEMENT PLAN FOR PHILLIP .    117
                 SMITH
9
    47           STATEMENT FORM – ROSARIO JUAREZ .............    124
10
    318          MANAGEMENT ACTION PLAN.......................    151
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

09:38:33   1   (FOR PAGES 1 THROUGH 82, VOLUME VII, PLEASE REFER TO SESSION 1

2   OF THE TRANSCRIPT.)

3            THE COURT:  SO WHAT DO WE GOT?

4            MR. BOHM:  A BUNCH.  I CAN SKIP STEP THREE, ALTHOUGH

5   THERE WAS ALREADY QUESTIONS IN SET TWO, BUT WHEN WE WENT TO SET

6   THREE, WE REALLY DUG IN AND GOT VERY SPECIFIC.

7            THE COURT:  RFP SET THREE?

8            MR. BOHM:  RFP SET THREE.

9            THE COURT:  WHEN WAS THAT SUBMITTED?

10            MR. BOHM:  MARCH OF '11 I BELIEVE.

11            THE COURT:  MARCH 2011.

12            MR. BOHM:  I BELIEVE THAT'S CORRECT.  THE REQUEST WAS

13   SUBMITTED TO THEM IN MARCH 2011.  THEY RESPONDED IN APRIL 2011.

14   AND THIS SET THREE -- I'VE ACTUALLY HIGHLIGHTED, IF YOU WANT ME

09:39:20  15   TO PUT IT IN THE RECORD, I CAN GIVE YOUR HONOR --

16            THE COURT:  WHY DON'T YOU GIVE IT TO ME.

17            MR. BOHM:  I CAN TELL THE DEFENSE WHAT NUMBERS I

18   HIGHLIGHTED.

19            MS. PRITIKIN:  THAT WOULD BE NICE IF WE KNOW WHICH

20   NUMBER THEY'RE TALKING ABOUT.  I KNOW THEY TOLD ME IT'S REQUEST

21   FOR PRODUCTION NUMBER 72.  HE ALREADY INQUIRED OF THE WITNESS

22   ABOUT 72 AND THAT WAS SIX YEARS AFTER THE L.P. AUDIT.  SO WHEN

23   THEY ASKED FOR IT, WE SAID WE WOULD PRODUCE IT IF WE HAD IT.

24   THAT'S ALL THAT IS, AND THAT'S ALREADY BEEN THE SUBJECT OF THE

25   QUESTION.

09:39:48  1          THE COURT:  LET ME JUST TAKE A LOOK AT IT.  MAYBE I

2   CAN SHORT CIRCUIT THE WHOLE THING.

3          MR. BOHM:  YES TO READING THE NUMBERS OR NO TO

4   READING THE NUMBERS TO DEFENSE COUNSEL?

5          THE COURT:  JUST GIVE IT TO ME, AND THEN IF I HAVE

6   QUESTIONS, THEN I'LL --

7          MR. BOHM:  THEY'RE HIGHLIGHTED IN BLUE.

8          MS. PRITIKIN:  MAY I KNOW WHAT'S HIGHLIGHTED, YOUR

9   HONOR?

10          THE COURT:  YES, MS. PRITIKIN, IF I HAVE QUESTIONS,

11   I'LL LET YOU KNOW.  IF I DON'T HAVE A QUESTIONS THEN --

12          MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.

13          THE COURT:  NUMBER 36, WHAT WAS AUTOZONE'S RESPONSE

14   AS TO 36?

09:42:04  15          MS. PRITIKIN:  36, YOUR HONOR, WAS OVERBROAD.  WE

16   OBJECTED OVERBROAD IN SCOPE, VAGUE AND AMBIGUOUS,

17   UNINTELLIGIBLE WITH RESPECT TO TIME AND SCOPE AS WELL AS THE

18   MEANING OF THE PHRASE JOB EVALUATIONS; UNDULY BURDENSOME,

19   HARASSING, OPPRESSIVE, SEEKS TO INVADE PRIVACY RIGHTS,

20   ATTORNEY-WORK PRODUCT AND ATTORNEY-CLIENT PRIVILEGE.  SUBJECT

21   TO AND WITHOUT WAIVING THE FOREGOING OBJECTIONS AUTOZONE STATES

22   THAT IT PREVIOUSLY PROVIDED ALL DOCUMENTS IN ITS POSSESSION,

23   CUSTODY AND CONTROL RESPONSIVE TO THIS REQUEST.

24          THE COURT:  AND WAS THERE ANY OBJECTION OR MOTION TO

25   COMPEL?

09:42:41    1                MS. PRITIKIN:  NO.

            2                THE COURT:  IS THAT CORRECT?

            3                MR. BOHM:  JUST TO INDICATE, THEY'RE SAYING IN THEIR

            4    RESPONSE THEY ALREADY PROVIDED EVERYTHING IN THEIR CUSTODY AND

            5    CONTROL AND THAT'S BECAUSE IN THE EARLIER SET -- GRANTED, WE

            6    ASKED MORE BROAD QUESTIONS BECAUSE WE'RE JUST TRYING TO GET THE

            7    INFORMATION -- THEN WE ASKED THE MORE SPECIFIC, AND THEY SAID,

            8    WE ALREADY GAVE IT TO YOU.  SO WHY WOULD WE FILE A MOTION TO

            9    COMPEL?

           10                THE COURT:  I'M NOT ASKING FOR ARGUMENT.  I'M JUST

           11    ASKING IF THE COMMENT WAS CORRECT.

           12                MS. BOHM:  YES, THAT'S WHAT THEY PUT THERE.  SORRY,

           13    YOUR HONOR.

           14                THE COURT:  NUMBER 40.

09:43:18   15                MS. PRITIKIN:  NUMBER 40:  OBJECTION, OVERBROAD,

           16    VAGUE, AMBIGUOUS, UNINTELLIGIBLE WITH RESPECT TO TIME AND SCOPE

           17    AS WELL AS THE MEANING OF THE TERM DISCUSSIONS AND

           18    COMMUNICATIONS AND THE PHRASE REGIONAL OFFICE; UNDULY

           19    BURDENSOME, HARASSING, OPPRESSIVE, AND SEEKS TO INVADE PRIVACY

           20    RIGHTS, ATTORNEY-WORK PRODUCT, AND THE ATTORNEY-CLIENT

           21    PRIVILEGE.  SUBJECT TO AND WITHOUT WAIVING THE FOREGOING

           22    OBJECTIONS, AUTOZONE STATES THAT IT PREVIOUSLY PROVIDED

           23    DOCUMENTS IN ITS POSSESSION, CUSTODY AND CONTROL RESPONSIVE TO

           24    THIS REQUEST.  AUTOZONE ALSO AGREES TO PRODUCE ADDITIONAL

           25    RESPONSIVE DOCUMENTS IN ITS POSSESSION, CUSTODY AND CONTROL

09:43:55   1   INCLUDING PLAINTIFF'S LEAVE OF ABSENCE REQUEST FORM DATED APRIL

2   25TH, 2006, PLAINTIFF'S MEDICAL RELEASE PAPERWORK DATED JANUARY

3   2007 AND PLAINTIFF'S LABOR AND DELIVERY DISCHARGE INSTRUCTIONS

4   DATED FEBRUARY 11, 2006.

5           THE COURT:  MR. BOHM, I ASSUME YOU'LL SPEAK UP WITH

6   RESPECT IF THERE'S ANY INACCURACY.

7           MR. BOHM:  THANK YOU, YOUR HONOR.

8           THE COURT:  NUMBER 50, AND YOU DON'T HAVE TO RECITE

9   ALL THE STANDARD BOILER PLATE OBJECTIONS.  YOU CAN JUST TELL ME

10   YOU OBJECTED AND IF THERE IS ANYTHING ELSE.

11           MS. PRITIKIN:  THE RESPONSE WAS, SUBJECT TO WITHOUT

12   WAIVING THE FOREGOING OBJECTIONS, AUTOZONE STATES THAT IT

13   PREVIOUSLY PROVIDED ALL DOCUMENTS IN ITS POSSESSION, CUSTODY

14   AND CONTROL RESPONSIVE TO THIS REQUEST.

09:44:44   15           THE COURT:  NUMBER 51?

16           MS. PRITIKIN:  I'M SORRY, YOUR HONOR, THAT WAS 51.

17   AND 50 WAS THE SAME RESPONSE, THAT WE HAD ALREADY PRODUCED

18   EVERYTHING WE HAD IN RESPONSE TO THAT REQUEST.

19           THE COURT:  52?

20           MS. PRITIKIN:  52: SAME THING, THAT WE PRODUCED

21   EVERYTHING WE HAD THAT WERE IN THE CUSTODY AND CONTROL

22   RESPONSIVE TO, ALL RELEVANT DOCUMENTS.

23           MR. BOHM:  EACH OF THESE, YOUR HONOR, STATING THAT IT

24   WAS PREVIOUSLY PRODUCED, JUST TO AVOID ANY CONFUSION IN THE

25   RECORD.

09:45:18   1          THE COURT:  55?

2          MS. PRITIKIN:  SAME RESPONSE; THAT WE ALREADY

3    PRODUCED IT.

4          THE COURT:  56?

5          MS. PRITIKIN:  SAME RESPONSE.  THERE WAS A VAGUE AND

6    AMBIGUOUS OBJECTION WITH RESPECT TO THE TERM CONVERSATION, BUT

7    AS WE UNDERSTOOD IT, WE PRODUCED EVERYTHING WE HAVE.

8          THE COURT:  AND 58, 59, 60 AND 61?

9          MS. PRITIKIN:  SAME WITH 57, 58; AND 59, UPON A

10   DILIGENT SEARCH AND REASONABLE INQUIRY, AUTOZONE IS NOT IN THE

11   POSSESSION, CUSTODY OR CONTROL OF ANY DOCUMENTS RESPONSIVE TO

12   THIS REQUEST.

13         THE COURT:  61?

14         MS. PRITIKIN:  AUTOZONE STATES IT PREVIOUSLY PROVIDED

09:46:24   15   ALL DOCUMENTS IN ITS POSSESSION, CUSTODY AND CONTROL RESPONSIVE

16   TO THIS REQUEST.

17         THE COURT:  SO WITH RESPECT TO 58, 59, 60 AND 61, AS

18   WELL AS NUMBER 56, AND 57 -- SO 56, 57, 58, 59, 60 AND 61, THIS

19   REQUEST WAS MADE IN MARCH OF '11.  YOU SAID YOU ALREADY

20   PROVIDED DOCUMENTS THAT ARE RESPONSIVE TO THESE REQUESTS

21   PREVIOUSLY.  DID ANY OF THOSE DOCUMENTS INCLUDE MR. MCFALL'S

22   DAYTIME OR E-MAILS OR ANYTHING OF THE SORT?

23         MS. PRITIKIN:  NO, YOUR HONOR, BECAUSE THERE WEREN'T

24   ANY THAT WERE RESPONSIVE.

25         MR. BOHM:  MAY I SAY SOMETHING FOR THE RECORD, YOUR

09:47:29  1   HONOR, BECAUSE WE HAVE THE DATE FOR SET THREE, BUT THE DATE FOR

2   SET TWO WAS DECEMBER -- I'M SORRY.  AUTOZONE RESPONDED DECEMBER

3   2008, OCTOBER 2008 TO SET TWO, AND I BELIEVE WE ALREADY TALKED

4   ABOUT SET ONE IN COURT BEING JULY 2008.  SO THOSE WOULD BE THE

5   PRIOR PRODUCTIONS.

6                    THE COURT:  HOW ABOUT NUMBER 73?

7                    MS. PRITIKIN:  73: AUTOZONE STATES IT PREVIOUSLY

8   PROVIDED ALL DOCUMENTS IN ITS POSSESSION, CUSTODY AND CONTROL

9   RESPONSIVE TO THIS REQUEST.  AND YOUR HONOR, WHAT THAT MEANS IS

10  ANYTHING WE HAD THAT WE BELIEVED WAS RESPONSIVE TO THIS REQUEST

11  WAS PRODUCED.  THERE'S NO EVIDENCE IN THIS CASE THAT MR. MCFALL

12  HAD A DAYTIMER WITH A REFERENCE TO MS. JUAREZ THAT HE

13  DESTROYED.  THAT'S OUR OBJECTION IS THAT THEY WANT TO CREATE

14  THIS ILLUSION THAT HE HAD SOMETHING THAT WAS RESPONSIVE AND DID

09:48:36  15  SOMETHING WITH IT WHEN THEY DON'T HAVE A GOOD FAITH BELIEF OF

16  THAT.  THEY'RE JUST MAD THAT THEY DON'T HAVE A LOT OF E-MAIL

17  TRAFFIC, BUT THEY DIDN'T EVEN HAVE E-MAIL FOR THE DISTRICT

18  MANAGER.

19                    THE COURT:  I DON'T KNOW IF HE'S MAD.  I DIDN'T SEE

20  MR. BOHM GET ANGRY.  I THINK HE'S ZEALOUSLY ADVOCATING FOR HIS

21  CLIENT THAT THERE IS SOME EVIDENCE THAT MR. MCFALL HAD A

22  DAYTIMER AND THAT THE DAYTIMER WAS USED TO KEEP NOTES OF

23  MEETINGS, AND HIS DAILY ACTIVITIES WITH AUTOZONE AND NOTHING OF

24  THE SORT WAS EVER DISCLOSED IN DISCOVERY.

25                    MS. PRITIKIN:  AND THE REASON IT'S NOT DISCLOSED IN

09:49:23 1    DISCOVERY, YOUR HONOR, IS BECAUSE IT DOESN'T MAKE REFERENCE TO

2    MS. JUAREZ.  SO THE FACT THAT TO ASK A WITNESS SIX, EIGHT YEARS

3    LATER, WHAT DID YOU HAVE IN YOUR DAYTIMER ON DECEMBER 9TH WHEN

4    YOU MET WITH THE PLAINTIFF AND WHERE IS IT TODAY, WHEN THAT WAS

5    NEVER SPECIFICALLY REQUESTED, HE WASN'T ASKED ABOUT IT IN HIS

6    DEPOSITION, IT'S JUST NOT FAIR.  WE PRODUCED EVERYTHING WE HAD

7    THAT WAS IN OUR POSSESSION, CUSTODY AND CONTROL THAT WERE

8    RESPONSIVE TO THOSE REQUESTS SUBJECT TO THE OBJECTIONS THAT WE

9    MADE ABOUT THE VAGUENESS OF THEM AND SO FORTH.

10         THE COURT:  WELL, REQUEST NUMBER 73 I THINK WOULD

11    LOGICALLY AND PRACTICALLY AND COMMONSENSIBLY INCLUDE A

12    DAYTIMER.  IT SAYS, ANY AND ALL DOCUMENTS THAT PERTAIN,

13    REFERENCE OR RELATE TO PLAINTIFF'S DISCUSSIONS WITH MR. MCFALL

14    ABOUT A PERFORMANCE IMPROVEMENT PLAN.

09:50:12 15         MS. PRITIKIN:  IF THE WITNESS HAD A DAYTIMER THAT

16    MADE REFERENCE TO HIS DISCUSSION WITH MS. JUAREZ, WE WOULD HAVE

17    PRODUCED IT.

18         THE COURT:  LET'S BRING IN MR. MCFALL.  YOU CAN

19    QUESTION HIM OUTSIDE THE PRESENCE OF THE JURY ABOUT THIS AREA,

20    MR. BOHM.  THEN WE'RE GOING TO SEE WHERE WE GO.  I SEE THAT

21    THERE ARE SOME DISCOVERY REQUESTS THAT I THINK LOGICALLY WOULD

22    INCLUDE A DAYTIMER IF ONE EXISTED, AND YOU'LL HAVE THE

23    OPPORTUNITY TO EXAMINE HIM OUTSIDE THE PRESENCE OF THE JURY;

24    AND DEPENDING ON HIS ANSWERS, I MAY OR MAY NOT ALLOW YOU TO

25    EXAMINE HIM IN THE PRESENCE OF THE JURY ABOUT THAT AREA.

09:50:48   1           MR. BOHM:  OF COURSE, I WOULD ASK THERE BE NO

           2   DISCUSSION IN THE MOMENT BEFORE MR. MCFALL TAKES THE STAND

           3   ABOUT THE ISSUE.

           4           THE COURT:  THERE SHOULDN'T BE ANY, ANY TELEGRAPHING.

           5           MS. PRITIKIN:  I OBJECT TO THE IMPLICATION, YOUR

           6   HONOR.

           7           THE COURT:  WELL, THERE'S BEEN A LOT OF IMPLICATIONS

           8   GOING ON IN THIS TRIAL.  THIS IS JUST ONE MORE.

           9           YOU MAY HAVE A SEAT, MR. MCFALL.  MR. MCFALL, YOU'RE

          10   REMINDED YOU'RE STILL UNDER OATH.  I'M GOING TO ALLOW MR. BOHM

          11   TO ASK YOU A FEW QUESTIONS RIGHT NOW OUTSIDE THE PRESENCE OF

          12   THE JURY.  MR. BOHM, YOU MAY PROCEED.

          13           MR. BOHM:  THANK YOU.

          14   BY MR. BOHM:

09:51:46  15   Q.  MR. MCFALL, YOU MENTIONED A DAYTIMER EARLIER IN YOUR

          16   TESTIMONY TODAY.  DO YOU REMEMBER THAT?

          17   A.  YES.

          18   Q.  AND YOU ACTUALLY KEPT A DAYTIMER; TRUE?

          19   A.  I STILL KEEP A DAYTIMER.

          20   Q.  BACK IN THAT TIME, YOU WERE KEEPING A DAYTIMER; CORRECT?

          21   A.  YES.

          22   Q.  AND AUTOZONE TRAINS YOU FOR ANY IMPORTANT ISSUES THAT ARE

          23   GOING ON YOU SHOULD USE YOUR DAYTIMER AS A TOOL TO RECORD THOSE

          24   EVENTS; TRUE?

          25   A.  AS WELL AS REPORTING THEM, YES.

09:52:16    1    Q.   SO YOU WOULD ALSO KEEP TRACK OF YOUR MEETINGS, CORRECT, IN

            2    YOUR DAYTIMER?

            3    A.   I DON'T KNOW WHAT YOU MEAN BY MEETINGS.

            4    Q.   OKAY.   LET ME GO ONE AT A TIME.   YOU DO STORE VISITS;

            5    RIGHT?

            6    A.   YES, I DO.

            7    Q.   THAT WAS A REQUIRED PART OF YOUR JOB TO GO AND VISIT THE

            8    STORES; RIGHT?

            9    A.   YES, IT IS.

           10    Q.   THE DAYTIMER WAS A CONVENIENT WAY FOR YOU TO BE ABLE TO

           11    SHOW ANYBODY WHO WAS QUESTIONING WHETHER OR NOT YOU WERE DOING

           12    YOUR STORE VISITS, HEY, I WAS DOING MY STORE VISITS; TRUE?

           13            MS. PRITIKIN:   OBJECTION, YOUR HONOR.   VAGUE AS TO

           14    TIME.

09:52:46   15            THE COURT:   I THINK HE'S TRYING TO LAY A FOUNDATION

           16    GENERALLY.   SO IT'S OVERRULED.

           17            THE WITNESS:   I WOULD KEEP A SCHEDULE, YES, AND IT'S

           18    FILED IN MY DAYTIMER.

           19    BY MR. BOHM:

           20    Q.   AND YOUR DAYTIMER -- SO YOUR DAYTIMER IS MORE THAN JUST A

           21    CALENDAR.   IT'S ALSO AN ORGANIZER FOR YOU; IS THAT TRUE?

           22    A.   YES, IT IS.

           23    Q.   AND YOU WOULD KEEP IMPORTANT DOCUMENTS IN YOUR DAYTIMER?

           24    A.   DOCUMENTS.

           25    Q.   HOW ABOUT THIS:   WHAT KIND OF DOCUMENTS WOULD YOU KEEP IN

09:53:08   1   YOUR DAYTIMER?

2   A.   I WOULD KEEP MY SCHEDULE IN THERE.   I WOULD USUALLY KEEP

3   ANY PHONE NUMBER CONTACTS, EVEN A SAMPLE OF OUR VISIT, HOW IT

4   SHOULD BE, THE ABC'S, BUT OTHER THAN THAT, THAT'S PRETTY MUCH

5   WHAT I KEPT IN MY DAYTIMER.

6   Q.   THERE'S A NOTE SECTION IN YOUR DAYTIMER?

7   A.   I WRITE THAT SEPARATELY AND FILE THEM IN MY TRUNK FILES.

8   Q.   IN YOUR TRUNK FILES.   AND YOUR DAYTIMER ALSO HAS A CALENDAR

9   SECTION?

10   A.   YES, IT DOES.

11   Q.   WHAT KIND OF INFORMATION WOULD YOU PUT IN THE CALENDAR

12   SECTION?

13   A.   THE CALENDAR SECTION IS LIKE WHAT YOU SHOWED ME ON THAT

14   PERIOD CALENDARS, THAT'S WHAT I WOULD HAVE IN THERE.

09:53:46   15   Q.   LIKE, I'M SORRY, WHAT DID YOU MEAN -- EXCUSE ME.   WOULD YOU

16   PUT THE DATES OF YOUR VISITS TO STORES IN YOUR DAYTIMER SO YOU

17   REMEMBER TO GO TO THE STORES OR NO?

18   A.   I ONLY HAVE A SCHEDULE THAT SHOWS ME THAT I'M GOING TO BE

19   IN THAT STORE, AND THEN EITHER I CHECK IT OFF OR CROSS IT OFF

20   BECAUSE I CHANGE MY SCHEDULE, BUT ANY OTHER DOCUMENTS, I KEPT

21   THEM IN MY FILES.

22   Q.   SO WHAT INFORMATION DO YOU PUT IN -- I HAVEN'T SEEN YOUR

23   DAYTIMER.   IS IT ONE FULL PAGE FOR EACH DATE OF THE CALENDAR?

24   A.   I DON'T HAVE THAT KIND OF DAYTIMER LIKE YOU'RE LOOKING

25   FOR.

09:54:23    1    Q.   OKAY.   SO WHAT KIND -- I MEAN, DID IT HAVE A CALENDAR?

            2    A.   IT HAD, LIKE I SAID, THE PERIOD CALENDARS, YES.

            3    Q.   SO THIS IS LIKE A CUSTOM DAYTIMER FROM AUTOZONE?

            4    A.   IT'S MY OWN DAYTIMER HOW I CREATED IT, YES.

            5    Q.   AND IT WOULD -- YOUR DAYTIMER HAD THE AUTOZONE PERIOD

            6    CALENDAR.   INSTEAD OF LIKE "JANUARY," IT WOULD SAY "PERIOD

            7    ONE"?

            8    A.   I THINK YOU'RE LOOKING FIRST LIKE THE BIG DAYTIMER WITH THE

            9    DATES WITH LINES AND EVERY SINGLE DAY DIFFERENT, SEPARATE; IS

           10    THAT WHAT YOU'RE LOOKING FOR?

           11    Q.   I'M JUST TRYING FIGURE OUT -- YOU'RE CERTAINLY ON THE SAME

           12    PAGE AS ME.   I HAVEN'T SEEN YOURS.   WHEN I HEAR "DAYTIMER," I

           13    IMAGINE ONE OF THESE BOOKS THAT HAS CALENDAR PAGES THAT ARE

           14    BLANK.   DOES YOURS HAVE CALENDAR PAGES THAT ARE BLANK?

09:55:04   15    A.   NO, IT DOESN'T.

           16    Q.   IS YOURS IN A SPIRAL BIND?   IS IT SPIRAL?   IS IT THE KIND

           17    YOU CAN OPEN AND CLOSE?

           18    A.   IT'S A BINDER, YES.

           19    Q.   SO AND IT HAD A NOTEPAD FOR YOU TO WRITE NOTES IN YOUR

           20    BINDER IF YOU WANTED TO?

           21    A.   I HAVE A SEPARATE NOTEPAD.

           22    Q.   OKAY.   AND SO WHAT ITEMS WOULD BE IN THE THREE-RING

           23    BINDER?

           24    A.   THREE-RING BINDER -- IN THE BINDERS THAT I HAVE, LIKE I

           25    SAID, I HAVE CONTACT INFORMATION FOR ANYBODY THAT I NEED FROM

09:55:31    1   SSC, OR I GOT MY CALENDAR IN WHICH IT'S JUST A SIMPLE SCHEDULE

2   WRITTEN CALENDAR WITH BOXES WITH STORE NUMBERS IN THEM WHO I'M

3   VISITING FOR THAT DAY.   OTHER THAN THAT, I DON'T HAVE ANY

4   NOTING OR ANYTHING LIKE THAT.   I HAVE ALL THAT SEPARATELY.

5   Q.   THE BOXES THAT SHOW YOUR STORE VISITS FOR ANY PARTICULAR

6   DAY, YOU WOULD WRITE THEM IN OR COMPUTER GENERATE THAT?

7   A.   I WOULD WRITE THEM IN IN THE PAST.

8   Q.   SO IF YOU HAD TO CHANGE A VISIT -- LET'S SAY FOR SOME

9   REASON YOU COULDN'T GO TO THE PLAZA STORE -- WOULD YOU UPDATE

10   YOUR CALENDAR TO PUT THE NEW DATE FOR THE VISIT?

11   A.   YES, I WOULD.

12   Q.   WOULD YOU MAKE A NOTE IN YOUR CALENDAR AS TO WHY IT WAS

13   CANCELED AND MOVED?

14   A.   I JUST CROSS IT OUT AND PUT THE STORE NUMBER I WENT.

09:56:13   15   Q.   SO IT SHOWS THE DETAILS OF WHEN YOU'RE VISITING EACH

16   PARTICULAR STORE?

17   A.   NOT THE DETAILS, NO, JUST I WOULD CROSS IT OUT, AND I'M

18   PRETTY SURE, LIKE I SAID, THAT'S ALL I DO TO SHOW WHERE I WAS

19   AT.

20   Q.   FOR INSTANCE, THE PIP MEAN MEETING THAT YOU HAD WITH MS.

21   JUAREZ, THAT'S SOMETHING YOU WOULD CALENDAR; CORRECT?

22   A.   THAT, I DON'T KNOW IF I WOULD OR WOULDN'T.

23   Q.   YOU WOULD HAVE TO LOOK AT YOUR DAYTIMER TO KNOW?

24   A.   YES.

25           MR. BOHM:   NOTHING FURTHER, YOUR HONOR.

09:56:39   1           THE COURT:  WHENEVER YOU HAD A PIP SESSION WITH ANY

2   OF YOUR STORE MANAGERS, WOULD YOU KEEP NOTES AT THAT PIP WHAT

3   YOU DISCUSSED, OTHER THAN WHAT'S ON THE PIP EXHIBITS THAT WE'VE

4   SEEN HERE?

5           THE WITNESS:  JUST WHAT I WOULD PUT IN THE EXHIBIT.

6           THE COURT:  MS. PRITIKIN, ANY QUESTIONS?

7           MS. PRITIKIN:  NO, YOUR HONOR.

8           THE COURT:  ALL RIGHT.  BASED UPON THAT, WE'RE NOT

9   GOING TO EXPLORE THE QUESTIONING WITH RESPECT TO THIS DOCUMENT

10   THAT'S CALLED LEGAL MODULE, AND WE'RE NOT GOING TO ASK MR.

11   MCFALL ANY QUESTIONS WITH RESPECT TO THE WHEREABOUTS OF CERTAIN

12   DOCUMENTATION, WHY IT ISN'T HERE, WHERE IS IT, WHAT HAPPENED TO

13   IT, BASED UPON THIS.

14           MR. BOHM:  AS TO THE DAYTIMER OR AS TO ANY PIECE OF

09:57:36   15   INFORMATION WHICH HE WOULD HAVE HAD?

16           THE COURT:  WELL, WITH RESPECT TO THE DAYTIMER FOR

17   SURE.  WITH RESPECT TO THESE CORRECTIVE ACTION REVIEWS AND THE

18   AUDIT FORMS OR THE AUDITS THAT ARE SUPPOSEDLY TO BE ATTACHED TO

19   THIS WHICH IS DEFENSE EXHIBIT 320 AND CORRESPONDING PLAINTIFF'S

20   EXHIBIT 78 -- IN OTHER WORDS, MR. BOHM, THE TIME TO QUESTION

21   THE THOROUGHNESS OF THE DISCOVERY AND WHAT SHOULD HAVE BEEN

22   PRODUCED HAS LONG SINCE PASSED.  THERE WAS AN OPPORTUNITY -- I

23   MEAN, THIS CASE IS NOW SIX YEARS OLD OR EIGHT YEARS OLD.  IT'S

24   SIX YEARS OLD, AND THE DISCOVERY HAS COME TO AN END A LONG TIME

25   AGO.  IF THERE WERE OBJECTIONS BASED UPON THE COMPLETENESS AND

09:58:39  1   ACCURACY OF THE DISCOVERY PRODUCED BY THE DEFENSE, THE TIME TO

2   HAVE BROUGHT THOSE OBJECTIONS IN ORDER TO LAY A FOUNDATION NOW

3   THAT THEY ARE OR HAVE WITHHELD EVIDENCE FROM YOU HAS LONG SINCE

4   PASSED.  AND NOW IS NOT THE TIME FOR THIS COURT TO ENGAGE IN A

5   FACT-FINDING EXPEDITION AS TO WHETHER OR NOT AUTOZONE DID IN

6   FACT HAVE DOCUMENTS, DID NOT DISCLOSE THOSE DOCUMENTS OR DID

7   NOT DO A DILIGENT SEARCH FOR THEM IN ORDER TO DISCLOSE THEM.

8   THE TIME TO HAVE DONE THAT WAS DURING THE DISCOVERY PROCESS.

9            MR. BOHM:  MAY I RESPOND?

10           THE COURT:  YES, YOU MAY.

11           MR. BOHM:  I THINK A LITTLE BIT WE'RE PUTTING THE

12   CART BEFORE THE HORSE BECAUSE THE INITIAL DISCOVERY WENT OUT IN

13   2008 WHILE MS. JUAREZ WAS EMPLOYED AND THEN RIGHT AFTER SHE WAS

14   TERMINATED.  AND I ACTUALLY -- I'M NOT TRYING TO SAY ANYTHING

09:59:44  15  HERE EXCEPT THAT -- AND THIS WILL BE MORE FOR THE ARGUMENT FOR

16   THE JURY -- THAT THEY HAD THESE DOCUMENTS, THAT'S A FACT.  I

17   HAVE TO PROVE THE FACT THAT THESE DOCUMENTS EXIST AND WHETHER

18   OR NOT THEY WERE ASKED FOR IN DISCOVERY.  THE FACT THAT THEY

19   HAD THIS INFORMATION AVAILABLE TO THEM AND DID NOT BRING IT IS

20   PROBATIVE AND APPROPRIATE AND RELEVANT.

21           THE COURT:  I DISAGREE.  I DISAGREE WITH THAT

22   ARGUMENT.  THE FAILURE OF A PARTY TO PRESENT A DOCUMENT OR

23   EVIDENCE, JUST GENERALLY SPEAKING, IS NOT PROBATIVE OF ANYTHING

24   IN MY VIEW.  THEY ARE, EACH WITNESS IS THE MASTER OF THEIR OWN

25   DESTINY IN TERMS OF THE TRIAL STRATEGY THAT THEY EMPLOY.  IF

10:00:42  1   YOU HAD REQUESTED A CERTAIN DOCUMENT AND IT WAS NOT PRODUCED,

2   AND A DOCUMENT IN YOUR VIEW WAS RELEVANT, MATERIAL, IMPORTANT,

3   FOR EITHER A CLAIM OR DEFENSE, THE TIME TO HAVE CONTESTED THAT

4   FAILURE TO PRODUCE A DOCUMENT WAS DURING THE DISCOVERY PROCESS.

5   I SEEM TO RECALL MR. MCFALL SAYING IN 2009 HE WAS DEPOSED.  I

6   DON'T KNOW IF THAT'S ACCURATE OR NOT, BUT YOU HAD THE

7   OPPORTUNITY TO ASK HIM THESE QUESTIONS ABOUT THE EXISTENCE OF

8   CERTAIN DOCUMENTS, WHERE THEY MIGHT BE, AND FOLLOW UP ON THAT

9   WITH JUDGE BENCIVENGO WHEN SHE WAS JUDGE IN THIS CASE AND BRING

10   THIS TO HER ATTENTION THAT AUTOZONE FAILED TO PRODUCE RELEVANT,

11   MATERIAL DOCUMENTS, AND TO THE EXTENT THAT DID NOT HAPPEN AND

12   APPROPRIATE SANCTIONS IMPOSED, SUCH AS -- AND ONE OF THOSE

13   SANCTIONS COULD HAVE BEEN NOT ONLY MONETARY BUT APPROPRIATE

14   INSTRUCTIONS TO THE JURY THAT AUTOZONE INTENTIONALLY DESTROYED

10:01:52  15   DOCUMENTATION AND THAT THERE COULD BE AN ADVERSE INFERENCE BE

16   DRAWN AGAINST THEM FOR HAVING DONE THAT.  I DON'T HAVE THE

17   TIME.  WE DON'T HAVE THE TIME WITH THIS JURY TO DETERMINE

18   WHETHER OR NOT THAT HAS OCCURRED.  IT'S TOO LATE FOR THAT.

19            MR. BOHM:  AND I'M NOT ASKING FOR ANY INFERENCE.  BUT

20   AUTOZONE IS PUTTING UP ITS DEFENSE AS TO PRETEXT, AND SO WE

21   ASKED FOR DOCUMENTS, THEY GAVE US WHAT THEY HAD.  AND IN THE

22   PURSUIT OF PROVING THAT THEY HAD A LEGITIMATE REASON FOR THE

23   TERMINATION, THE FACT THAT THERE ARE IN EXISTENCE DOCUMENTS

24   THAT WOULD PROVE UP THE LEGITIMACY OF THEIR AFFIRMATIVE

25   DEFENSE, AND THEY'RE NOT BEING BROUGHT TO COURT I THINK IS

10:02:39  1  APPROPRIATE TO COMMENT ON NOT IN SO MUCH OF OUR DOING DISCOVERY

2  BUT IN SO MUCH AS THEIR MEETING THEIR BURDEN OF PROOF.

3          THE COURT:  WELL, IF THERE ARE DOCUMENTS THAT WOULD

4  SUPPORT THEIR DEFENSE, AND THEY CHOOSE NOT TO PRESENT THOSE

5  DOCUMENTS, THEN SHAME ON THEM.

6          MR. BOHM:  I THINK THAT'S WHAT I'M GETTING AT.

7          THE COURT:  BUT WE'RE NOT GOING TO INSINUATE THAT

8  THAT IS IN FACT THE CASE WITHOUT SOME DEFINITE PROOF, AND WE'RE

9  NOT GOING TO GO DOWN THIS ROAD.

10          MR. BOHM:  I UNDERSTAND THAT.  THAT'S WHY ALL I'VE

11  BEEN TALKING ABOUT OR TRYING TO TALK ABOUT IS WHAT DOCUMENTS

12  EVER EVEN EXISTED.  THAT'S ALL, JUST WHAT WAS THERE

13          THE COURT:  BUT YOUR PURPOSE IN DOING THAT IS TO BE

14  ABLE TO CREATE AN IMPRESSION WITHOUT ANY SPECIFIC FACTS TO BACK

10:03:28  15  IT UP THAT AUTOZONE HAD DOCUMENTS, AUTOZONE DESTROYED

16  DOCUMENTS, UNLAWFULLY OR ILLEGITIMATELY, WERE IN VIOLATION OF

17  ANY RULES, AND IT'S TOO LATE FOR THAT.

18          MR. BOHM:  I'M NOT LOOKING FOR THAT --

19          THE COURT:  GOOD.  WE DON'T NEED TO GO THERE.  I MADE

20  MY RULING, MR. BOHM.  YOU MAY NOT LIKE IT, BUT THAT'S THE

21  RULING.  I THINK THE RECORD HAS BEEN MADE.  IF YOU WANT TO

22  CHALLENGE IT LATER, THEN THE RECORD HAS BEEN MADE.

23          MR. BOHM:  THANK YOU, YOUR HONOR.

24          THE COURT:  BUT UNDER 403 ISSUES, WE'RE NOT GOING TO

25  ENGAGE IN A MINI-TRIAL AS TO THE EXISTENCE OF DOCUMENTS, WHAT

10:04:07   1   HAPPENED TO DOCUMENTS, WERE THE DOCUMENTS EVEN REQUESTED BY THE

2   DEFENSE OR BY THE PLAINTIFF, DEFENDANT LEGITIMATELY DENIED THE

3   REQUEST NOT TO PRODUCE DOCUMENTS; THE TIME HAS PASSED FOR THAT

4   TO OCCUR.  SO LET'S MOVE ON.  DID I RETURN YOUR DISCOVERY

5   REQUEST?  DID I RETURN THOSE TO YOU?

6            MR. BOHM:  NO, YOUR HONOR.  I CAN WAIT TO GET THEM

7   LATER.

8            THE COURT:  ALL RIGHT.  SO LET'S ASK THE JURY TO

9   RETURN.

10            (JURY PRESENT.)

11            THE COURT:  MAY THE RECORD REFLECT THE JURY HAS

12   RETURNED TO THE COURTROOM.  LADIES AND GENTLEMEN, YOU MAY HAVE

13   A SEAT.  I LIED TO YOU AGAIN.  I TOLD YOU WE WOULD ONLY BE

14   ABOUT 20 MINUTES, AND IT TURNED OUT TO BE ALMOST 40.  SO I

10:06:33   15   APOLOGIZE FOR THE DELAY.  BUT AS I SAID, WE'RE TRYING TO TAKE

16   CARE OF BUSINESS AND MAKE THE TRIAL MORE EFFICIENT.  MR. BOHM

17   MAY CONTINUE WITH HIS CROSS-EXAMINATION OF MR. MCFALL.

18            MR. BOHM:  THANK YOU, YOUR HONOR.  EXHIBIT 31 IN THIS

19   BOOK.

20            MS. PRITIKIN:  I'M SORRY, YOUR HONOR.  I COULDN'T

21   HEAR.

22                      CROSS-EXAMINATION

23   BY BY MR. BOHM:

24   Q.  EXHIBIT 31 PLEASE.  TAKE A LOOK AT THAT DOCUMENT.  DO YOU

25   RECOGNIZE EXHIBIT 31?

10:07:01   1   A.   LOOKS LIKE A DOCUMENT FOR BONUS STRUCTURE PLAN FOR

2   MANAGERS.

3   Q.   SPECIFICALLY FOR CALIFORNIA; TRUE?

4   A.   CALIFORNIA PLAN.

5   Q.   AND THIS WOULD CORRESPOND, IF YOU NEED TO USE THE PERIOD

6   CALENDAR, TO THE FISCAL YEAR WHEN MS. JUAREZ WAS A STORE

7   MANAGER AT THE PLAZA STORE; CORRECT?

8   A.   WITH THAT CALENDAR THAT WE HAVE, YES.

9   Q.   SO YOU UNDERSTOOD THAT MS. JUAREZ WAS ON A BONUS PLAN;

10   CORRECT?

11   A.   YES.

12   Q.   AND YOU UNDERSTOOD SHE WAS ELIGIBLE FOR A BONUS; CORRECT?

13   A.   THAT IS CORRECT.

14   Q.   ALL THE WAY THROUGH THE TIME THAT SHE LEFT THE STORE;

10:07:35   15   TRUE?

16   A.   I DON'T KNOW EXACTLY WHEN THE TIME SHE LEFT THE STORE, BUT

17   IF SHE WAS A MANAGER, SHE WAS ELIGIBLE FOR BONUS.

18   Q.   IF SHE WAS HITTING HER TARGETS, SHE WAS ELIGIBLE FOR THE

19   BONUS?

20   A.   YES.

21   Q.   THE BONUS PLAN IS ALL DRIVEN OFF OF THE TARGETS, NOT LAST

22   YEAR'S SALES BUT THE TARGETS?

23   A.   THE TARGETS THAT WERE SET, YES.

24          MR. BOHM:   YOUR HONOR, I'D LIKE TO HAVE EXHIBIT 31

25   ADMITTED INTO EVIDENCE.

10:07:57  1          MS. PRITIKIN:  NO OBJECTION, YOUR HONOR.

2          THE COURT:  31 MAY BE ADMITTED.

3          (EXHIBIT 31 ADMITTED.)

4    BY MR. BOHM:

5    Q.  LOOKING AT EXHIBIT 24, BACK TO THE BONUS WORKSHEET REAL

6    QUICK, BASED ON MS. JUAREZ'S PROGRESS, ASSUMING SHE CONTINUED

7    TO MEET THOSE TARGETS, SHE WOULD HAVE GOTTEN A BONUS FOR THAT

8    SECOND QUARTER OF FISCAL YEAR 2006; CORRECT?

9    A.  YES.

10   Q.  GENERALLY SPEAKING, WHAT'S THE RANGE OF BONUSES FOR STORE

11   MANAGERS?

12         MS. PRITIKIN:  OBJECTION.  CALL FOR SPECULATION.

13   FOUNDATION.  AND VAGUE AS TO TIME.

14         MR. BOHM:  AS OF THAT TIME.

10:08:50 15        THE COURT:  FISCAL YEAR '06?

16         MR. BOHM:  YES.  THANK YOU, YOUR HONOR.

17         THE COURT:  OBJECTION OVERRULED.

18         THE WITNESS:  I DON'T HAVE THE SPECIFIC PERCENTAGE

19   THAT THEY'RE GOING TO GET PAID OUT ON.  IT'S ALWAYS DEPENDING

20   ON WHAT THEY'VE EARNED.

21   BY MR. BOHM:

22   Q.  I'M SORRY.  I JUST MEANT A RANGE.  IF YOU'RE GETTING READY

23   TO PROMOTE SOMEBODY TO STORE MANAGER, MAYBE YOU TELL THEM, HEY,

24   AS A STORE MANAGER, IF YOU DO GOOD, YOU CAN GET A RANGE OF

25   BONUS FROM THIS TO THIS?

103

10:09:15   1    A.   IT'S ACTUALLY TEN PERCENT OF WHAT THEY EARNED.

           2    Q.   SO WHAT DOES THAT WORK OUT -- IN YOUR EXPERIENCE, HAVE YOU

           3    SEEN STORE MANAGER BONUSES?

           4    A.   I'VE SEEN PAYOUTS, YES.

           5    Q.   AND YOU HAVE TO APPROVE THOSE?

           6    A.   NO, I DON'T.

           7    Q.   YOU JUST GET A REPORT ABOUT IT?

           8    A.   THEY SEND ME A REPORT, AND THEY TELL ME HOW MUCH EACH AND

           9    EVERY MANAGER RECEIVES, AND THAT'S ALL I GET.

          10    Q.   SO IN GENERAL, WHAT'S THE LOWEST BONUS YOU CAN RECALL?

          11    A.   I'VE SEEN $0.

          12    Q.   ALL RIGHT.  WELL THAT'S NOT A BONUS, IS IT?

          13    A.   BECAUSE THEY DIDN'T EARN A BONUS.

          14    Q.   LIKE I'M SAYING, THAT'S NOT A BONUS.  SO WHAT'S LOWEST

10:09:51  15    BONUS YOU'VE SEEN WHERE SOMEBODY ACTUALLY RECEIVES MONEY?

          16    A.   $100.

          17    Q.   WHAT'S THE MOST YOU'VE SEEN FOR STORE MANAGERS?

          18    A.   $6,000.

          19    Q.   NOW, YOU TALKED ABOUT THE FIX-IT LISTS AND THE VARIOUS

          20    ITEMS THAT WERE ON THERE, EITHER ONE; THE IDEA THAT THE STORE

          21    GETS HOURS FOR PLANOGRAMS, IT DOESN'T INCLUDE REDOING

          22    PLANOGRAMS; CORRECT?

          23    A.   YES.

          24    Q.   YES, WHAT I SAID IS CORRECT?

          25    A.   YES, IT'S CORRECT WHAT YOU SAID.

104

10:10:24  1  Q.  WHEN THEY HAVE TO REDO A PLANOGRAM, THEY'RE GOING TO HAVE

2  TO SOMEHOW MAKE UP THE TIME THAT THEY'RE LOSING TO REDO THE

3  PLANOGRAM; CORRECT?

4  A.  THAT'S CORRECT.  IF IT WASN'T EXECUTED PROPERLY WHEN THEY

5  HAD THE TIME, THEN THEY DO HAVE TO REDO IT.

6  Q.  NOW THE PROOF THAT THE PLANOGRAMS WERE NOT EXECUTED

7  PROPERLY, WHERE IS THAT, SIR?  WHERE IS THE PROOF THAT ANY OF

8  THE PLANOGRAMS THAT YOU SAY WERE NOT EXECUTED PROPERLY WERE IN

9  FACT NOT EXECUTED PROPERLY?

10        MS. PRITIKIN:  OBJECTION TO THE FORM OF THE QUESTION,

11  YOUR HONOR.  ARGUMENTATIVE.

12        THE COURT:  SUSTAINED.

13  BY MR. BOHM:

14  Q.  HOW DO YOU PROVE, SIR?

10:10:59  15  A.  WE PRINT OUT THE DIAGRAM OF THE PLANOGRAM ITSELF AND VERIFY

16  IF IT'S EXECUTED PROPERLY OR NOT.

17  Q.  AND SO HAVE YOU EVER SEEN ANY DOCUMENTATION THAT ESTABLISH

18  WHAT YOU'RE SAYING THAT ON THOSE FIX-IT LISTS THOSE PLANOGRAMS

19  WERE DONE WRONG?

20  A.  UPON MY WALK-THROUGH OF THE STORE, I WOULD SHOW THAT TO THE

21  MANAGER OR MANAGEMENT IN CHARGE OF THAT STORE THAT IT WAS NOT

22  DONE PROPERLY.

23  Q.  BUT OTHER THAN THAT, YOU GOT NO ACTUAL PROOF THAT THE

24  PLANOGRAMS WERE DONE INCORRECTLY?

25        MS. PRITIKIN:  OBJECTION, YOUR HONOR, TO THE WORD

10:11:33  1   PROOF.

2              THE COURT:  SUSTAINED.

3   BY MR. BOHM:

4   Q.  INFORMATION OR DOCUMENTS TO SAY THAT THOSE PLANOGRAMS WERE

5   DONE INCORRECTLY; IT'S JUST YOUR WORD?

6   A.  IT'S THE PLANOGRAM THAT I VERIFY, AND WHEN I VERIFY THE

7   PLANOGRAM, THEN IT SHOWS THAT IT WAS NOT DONE RIGHT OR PROPERLY

8   EXECUTED.

9   Q.  IS THERE ANYTHING IN ADDITION TO YOUR WORD HERE IN COURT,

10  MR. MCFALL, THAT YOU COULD IDENTIFY THAT WOULD HELP ESTABLISH

11  THAT THESE PLANOGRAMS WERE TRULY NOT DONE CORRECTLY?

12  A.  IN MY INSPECTION AND THE VERIFICATION OF THE PLANOGRAM.

13  THAT'S IT.

14  Q.  SO IT'S JUST YOUR WORD?

10:12:06  15  A.  WELL --

16             MS. PRITIKIN:  OBJECTION, YOUR HONOR.  MISSTATES THE

17  WITNESS'S TESTIMONY.  ARGUMENTATIVE.

18             THE COURT:  SUSTAINED.

19  BY MR. BOHM:

20  Q.  YOU SAY YOUR INSPECTION.  YOU'RE REFERRING TO YOUR FIX-IT

21  LIST?

22  A.  MY JUST VISUALLY LOOKING AT THE PLANOGRAM ITSELF.

23  Q.  WHICH IS BASED ON WHAT YOU ARE TELLING THE JURY?

24  A.  YES.

25  Q.  YOU DON'T HAVE A -- DO YOU HAVE A WITNESS GO THROUGH WITH

10:12:24   1   YOU AND CONFIRM THAT YOU'RE ACTUALLY PICKING LEGITIMATE

         2   ISSUES?

         3   A.   I WALK THE MANAGEMENT TEAM OR STORE MANAGER THEMSELVES AND

         4   SHOW THEM WHAT I SEE AND DISCOVER UPON THOSE INSPECTIONS.

         5   Q.   SO IN THE CASE OF MS. JUAREZ, THE ONLY OTHER WITNESSES TO

         6   THESE PLANOGRAMS NOT BEING DONE WOULD BE MS. JUAREZ, MS. PEREZ

         7   AND MR. CORTEZ, HER MANAGEMENT TEAM; CORRECT?

         8   A.   SHE HAD OTHER MANAGEMENT TEAM IN THERE AS WELL IN HER STORE

         9   BESIDES THOSE, THE THREE OF THEM.

        10   Q.   BUT THE THREE IDENTIFIED, THEY CERTAINLY WOULD BE

        11   APPROPRIATE WITNESSES AS TO WHETHER OR NOT THESE ISSUES WERE

        12   REAL OR NOT REAL?

        13        MS. PRITIKIN:   OBJECTION, YOUR HONOR.   CALLS FOR

        14   SPECULATION ABOUT APPROPRIATE WITNESSES.

10:13:03  15        THE COURT:   SUSTAINED.

        16   BY MR. BOHM:

        17   Q.   NOW IN THE CORRECTIVE ACTION, YOU GAVE MS. JUAREZ A FIRST

        18   WRITTEN CORRECTIVE ACTION, REMEMBER THAT?

        19   A.   YES.

        20   Q.   YOU SKIPPED OVER THE BOX FOR VERBAL; TRUE?

        21   A.   YES.

        22   Q.   YOU COULD HAVE GIVEN HER VERBAL WARNING BEFORE GIVING HER A

        23   WRITTEN WARNING AS TO BOTH OF THOSE CORRECTIVE ACTIONS; TRUE?

        24   A.   AT AUTOZONE, WE DON'T HAVE A PROGRESSIVE COUNSELING.   WE

        25   COULD GO TO FIRST, SECOND, THIRD, OR EVEN GO TO SERIOUS

10:13:32    1    VIOLATION.

2    Q.   SO MY QUESTION AGAIN, SIR, WAS YOU COULD HAVE MARKED HER ON

3    A VERBAL BEFORE YOU MARKED HER ON A FIRST WRITTEN; YOU COULD

4    HAVE DONE THAT, TRUE?

5    A.   I COULD HAVE, BUT I CHOSE NOT TO.

6    Q.   YOU SAY THAT ON YOUR FIX-IT LISTS, WHEN THEY GO FROM 17 TO

7    37, THAT'S JUST YOU BEING MORE DETAILED, RIGHT?

8    A.   THAT'S TRUE.

9    Q.   BUT YOUR BEING MORE DETAILED DIDN'T START UNTIL AFTER MS.

10    JUAREZ INFORMED YOU THAT SHE WAS PREGNANT, TRUE?

11    A.   NO, THAT'S NOT TRUE.

12    Q.   DO YOU HAVE ANY OF THESE 37 ITEM FIX-IT LISTS THAT

13    PRE-DATE, MEANING COME BEFORE, YOUR KNOWLEDGE OF HER

14    PREGNANCY?

10:14:12   15    A.   I DO BELIEVE THAT WAS BEFORE EVEN THAT ANNOUNCEMENT OF HER

16    PREGNANCY.

17    Q.   THE DECEMBER 19TH ONE YOU THINK WAS BEFORE --

18           MS. PRITIKIN:   OBJECTION, YOUR HONOR.   MISSTATES THE

19    DATE OF THE DOCUMENT.

20           THE COURT:   OVERRULED.

21    BY MR. BOHM:

22    Q.   IT'S NUMBER 87 IN THE BINDER THERE.   WHY DON'T YOU JUST

23    TELL US AGAIN WHAT IS THE DATE?

24    A.   THIS IS 10-19 ON 87, OH, 86.   DECEMBER 9.

25    Q.   DECEMBER 9.   NOW IF YOU LOOK AT EXHIBIT 100 IN THE BINDER

10:14:59  1  THERE, YOU KNOW WHO BEN DEMOSS IS?

2  A.   BEN DEMOSS?

3  Q.   YES.

4  A.   YES, I DO.

5  Q.   DID YOU WRITE UP BEN DEMOSS WHEN YOU WERE DISTRICT

6  MANAGER?

7  A.   I CAN'T RECOLLECT.

8  Q.   YOU CAN'T RECALL EVER GIVING HIM A CORRECTIVE ACTION,

9  RIGHT?

10  A.   NO, I CAN'T.

11  Q.   BUT IN EXHIBIT 100, YOU WOULD AGREE THAT'S THE PAPERWORK,

12  THE ACTUAL AUDIT, FOR MR. BEN DEMOSS; RIGHT?

13        MS. PRITIKIN:  OBJECTION, YOUR HONOR.  VAGUE ON WHAT

14  "AUDIT" MEANS.  IT WAS A LOSS PREVENTION AUDIT?

10:15:51  15  BY MR. BOHM:

16  Q.   WELL, ARE THOSE AUDITS FOR MR. DEMOSS?

17        THE COURT:  SUSTAINED.

18  BY MR. BOHM:

19  Q.   ARE THOSE AUDITS FOR MR. DEMOSS?

20  A.   THIS IS AN OPERATIONS AUDIT, THE FIRST PAGE.

21  Q.   THEN THERE'S MORE AUDITS IN HERE; CORRECT?

22  A.   SAFETY, L.P. AUDIT, COMMERCIAL STORE OPERATION AUDIT,

23  COMMERCIAL L.P. AUDIT, AND A HUMAN RESOURCE AUDIT.

24  Q.   ON THE COMMERCIAL L.P. AUDIT, DID MR. DEMOSS PASS?

25  A.   77.

10:16:31  1  Q.  DID HE PASS?

2  A.  NO, HE DIDN'T.

3  Q.  SO AND IT'S AN L.P. AUDIT, THE SAME TYPE OF AUDIT THAT MS.

4  JUAREZ ALLEGEDLY DID NOT PASS; CORRECT?

5  A.  THIS IS A COMMERCIAL SITE L.P. AUDIT, YES.

6  Q.  SO YOU'RE NOT ABLE TO TELL THE JURY THAT YOU WROTE UP MR.

7  DEMOSS FOR THIS 77 COMMERCIAL AUDIT; CORRECT?

8  A.  I CAN'T RECOLLECT THAT, NO.

9  Q.  MR. DEMOSS WAS ANOTHER MAN WHO WAS WORKING AS A STORE

10  MANAGER IN YOUR DISTRICT DURING THE TIME THAT MS. JUAREZ WAS

11  ALSO WORKING AS A STORE MANAGER IN YOUR DISTRICT; CORRECT?

12  A.  WHAT'S THAT AGAIN?  CAN YOU REPEAT THAT AGAIN FOR ME?

13  Q.  MS. JUAREZ AND MR. DEMOSS WERE BOTH STORE MANAGERS IN YOUR

14  DISTRICT AT THE SAME TIME; TRUE?

10:17:13  15  A.  YES, THEY WERE.

16  Q.  MR. DEMOSS IS ALSO THE STORE MANAGER WHO YOU MOVED INTO THE

17  STORE AFTER MS. JUAREZ; CORRECT?

18  A.  I DIDN'T MOVE MR. DEMOSS.

19  Q.  WELL, WHILE YOU WERE DISTRICT MANAGER, YOU HAD SPOKEN TO

20  MR. DEMOSS ABOUT TAKING OVER MS. JUAREZ'S STORE AT SOME POINT

21  IN THE FUTURE TRUE?

22  A.  NO.

23  Q.  WHEN YOU WERE CONTACTED BY AUTOZONER RELATIONS TO ASSIST

24  THE COMPANY IN PREPARING A RESPONSE TO MS. JUAREZ'S DFEH

25  CHARGE, DID YOU GO LOOKING FOR RECORDS AT THAT TIME?

10:18:04   1          MS. PRITIKIN:  OBJECTION, YOUR HONOR.  CALLS FOR

          2   PRIVILEGED COMMUNICATIONS.

          3          THE COURT:  OVERRULED.

          4          THE WITNESS:  I CAN'T REMEMBER IF I DID OR DIDN'T.

          5   BY MR. BOHM:

          6   Q.   THE ONLY THING YOU CAN REMEMBER IS THAT YOU FILLED OUT THAT

          7   AFFIDAVIT?

          8   A.   I DIDN'T REMEMBER THAT UNTIL YOU SHOWED ME.

          9   Q.   MR. MCFALL, YELLING AT YOUR EMPLOYEES, THAT WOULD BE UNFAIR

         10   TO YOUR EMPLOYEES; TRUE?

         11   A.   TRUE.

         12   Q.   AND ASSIGNING THEM TASKS TO DO JUST TO KEEP THEM BUSY AND

         13   MAKE THEM MISERABLE, THAT WOULD BE A BAD THING TO DO; TRUE?

         14   A.   WELL, I DON'T DO THAT.  THAT IS TRUE.  BUT I DON'T DO

10:19:00  15   THAT.

         16   Q.   WHAT DID YOU DO TO SHOW YOUR SUPPORT FOR MS. JUAREZ ONCE

         17   YOU LEARNED SHE WAS PREGNANT?  WHAT DID YOU DO?

         18   A.   WELL, SHE NEVER ASKED ME FOR HELP OR ASSISTANT, AND IF

         19   ANYTHING ELSE, I JUST WANTED HER TO SUCCEED AND FINISH THAT PIP

         20   AND GET THROUGH THAT THREE ITEMS I WAS LOOKING FOR.

         21   Q.   I'M SORRY, SIR.  I MEAN, DID YOU GO AND MAYBE ANNOUNCE TO

         22   THE STAFF THAT CONGRATULATIONS WERE IN ORDER?

         23   A.   FOR?

         24   Q.   FOR BEING PREGNANT?

         25   A.   I CONGRATULATED HER MYSELF.

10:19:26  1    Q.  I'M SAYING, DID YOU GO AROUND THE STORE AND CELEBRATE?

2    A.  WHY WOULD I CELEBRATE?  I CONGRATULATED HER AND OFFERED

3    HER, IF YOU NEEDED ANYTHING FROM ME, LET ME KNOW.

4    Q.  DID YOU GET HER A CARD SAYING, HEY, CONGRATULATIONS ON YOUR

5    PREGNANCY?

6    A.  I DON'T DO THAT TO MY STAFF.  I DON'T OFFER THEM CHRISTMAS

7    CARDS, BIRTHDAY CARDS OR ANNOUNCEMENT CARDS.

8    Q.  DID YOU EVER PULL HER ASIDE AND SAY, HEY, ROSA, HOW ARE YOU

9    DOING, HONEY?  HOW ARE YOU DOING?  YOU'RE PREGNANT, HOW ARE

10   YOU?

11   A.  I NEVER, THAT NEVER OCCURRED TO ME THAT I SHOULD DO THAT.

12   Q.  DID YOU EVER ASK MS. JUAREZ, HEY, YOU KNOW, ANY PROBLEMS

13   WITH MORNING SICKNESS?  DID YOU EVER JUST ASK HER THAT?

14   A.  I DON'T RECALL IF I DID OR I DIDN'T.

10:20:12  15   Q.  WHAT, IF ANYTHING, SIR, DID YOU DO TO ENSURE THAT MS.

16   JUAREZ'S PREGNANCY CONDITION WAS NOT INTERFERING WITH HER

17   ABILITY TO GET THE JOB DONE?

18        MS. PRITIKIN:  OBJECTION, YOUR HONOR.  IT'S

19   ARGUMENTATIVE AND MISSTATES ANY STANDARD THAT'S REQUIRED BY

20   LAW.

21        THE COURT:  OVERRULED.

22        MR. BOHM:  YOU MAY ANSWER.

23        THE WITNESS:  I CONTINUED TO BE HER SUPERVISOR.

24   BY MR. BOHM:

25   Q.  I'M SORRY.  MY QUESTION WAS, WHAT, IF ANYTHING, DID YOU DO,

10:20:38   1   MR. MCFALL, TO ENSURE THAT MS. JUAREZ'S PREGNANCY WAS NOT

2   CAUSING HER ISSUES IN THE STORE?

3   A.   LIKE I STATED, I CONTINUED TO BE HER SUPERVISOR AS I WOULD

4   DO TO ALL MY SUBORDINATES AND WOULDN'T TREAT HER ANY

5   DIFFERENTLY OR SHOULD GIVE HER SPECIAL TREATMENT BECAUSE SHE

6   WAS IN THAT CONDITION.

7   Q.   IS IT FAIR TO SAY YOU DID NOTHING TO ENSURE THAT MS.

8   JUAREZ'S PREGNANCY WAS NOT HAVING AN IMPACT?

9   A.   I MEAN, WHAT SPECIAL ACCOMMODATION DID YOU WANTED ME TO?

10   Q.   SIR, IT'S NOT ABOUT WHAT I WANT.   I'M JUST ASKING YOU, DID

11   YOU DO ANYTHING, ANYTHING AT ALL, EVEN THE SLIGHTEST GESTURE,

12   TO INDICATE TO MS. JUAREZ THAT YOU WERE AWARE OF HER PREGNANCY

13   AND YOU WANTED TO TRY TO HELP HER OUT?   ANYTHING ELSE?

14          MS. PRITIKIN:   OBJECTION, YOUR HONOR.   ARGUMENTATIVE.

10:21:26   15   MISSTATES WITNESS'S TESTIMONY.

16          THE COURT:   SUSTAINED.

17   BY MR. BOHM:

18   Q.   DID YOU DO ANYTHING, SIR, TO ENSURE THAT MS. JUAREZ'S

19   PREGNANCY WAS NOT A FACTOR?

20   A.   AS MENTIONED, I ONLY CONTINUED TO BE HER SUPERVISOR AS I

21   WOULD TREAT ANYONE ELSE IN MY STORES.

22   Q.   AND THAT'S THE FULL EXTENT OF IT, CORRECT, OF WHAT YOU

23   DID?

24   A.   YES.

25   Q.   HAVE YOU HEARD OF A PLACE CALLED LA COAHUILA?

113

10:22:02    1    A.   I'VE HEARD OF IT.

            2    Q.   WHAT'S LA COAHUILA?

            3    A.   I KNOW IT'S LIKE A BAR OR SOME KIND OF IN THE RED LIGHT

            4    DISTRICT IN MEXICO.

            5    Q.   HOW LONG HAVE YOU LIVED IN THE SAN DIEGO AREA?

            6    A.   20 YEARS.

            7             MR. BOHM:  NOTHING FURTHER, YOUR HONOR.

            8             THE COURT:  REDIRECT?

            9             MS. PRITIKIN:  JUST TWO QUESTIONS.  TWO THINGS, YOUR

           10    HONOR.  FIRST, I WANT TO OFFER EXHIBIT 375, THE DOCUMENT, THE

           11    AFFIDAVIT OF KENT MCFALL THAT WAS AN EXHIBIT TO THE DEPARTMENT

           12    OF FAIR EMPLOYMENT AND HOUSING RESPONSE OF THE COMPANY THAT

           13    COUNSEL ASKED THE WITNESS ABOUT.

           14             THE COURT:  375?

10:22:39   15             MS. PRITIKIN:  375.

           16             MR. BOHM:  YOUR HONOR, I HAVE A RESPONSE.

           17             MS. PRITIKIN:  IT'S NOT IN THERE, YOUR HONOR.  IT WAS

           18    AN EXHIBIT THAT WAS PART OF THE DEPARTMENT OF FAIR EMPLOYMENT

           19    AND HOUSING FILE.

           20             MR. BOHM:  YOUR HONOR, I HAVE IT, IF I MAY APPROACH.

           21             MS. PRITIKIN:  IT WAS SHOWN TO THE WITNESS, YOUR

           22    HONOR, ON HIS CROSS-EXAMINATION, AND IT'S HIS AFFIDAVIT FOR

           23    COMPLETENESS AND BECAUSE COUNSEL MADE IT RELEVANT, I WANT TO

           24    OFFER IT AS EXHIBIT 375.

           25             THE COURT:  IT WAS OFFERED FOR IMPEACHMENT PURPOSES.

10:23:21   1   ANY OBJECTION?

2          MR. BOHM:  YES.  IT CONTAINS SELF-SERVING HEARSAY.

3          THE COURT:  I'LL SUSTAIN THE OBJECTION.

4          MS. PRITIKIN:  THE LETTER THAT THIS WAS ATTACHED TO

5   IS ALREADY IN EVIDENCE.  THIS IS AN EXHIBIT TO THAT LETTER.  SO

6   I THINK THAT OVERCOMES THE HEARSAY OBJECTION BECAUSE COUNSEL

7   ALLEGED THE QUALITY OF THE INVESTIGATION; THIS WAS PART OF THE

8   INVESTIGATING MATERIALS THAT WERE PROVIDED; COUNSEL ASKED HIM

9   ABOUT IT, AND I THINK WE'RE ENTITLED TO SHOW THAT HE WAS

10   CONSISTENT.

11          THE COURT:  OBJECTION SUSTAINED.

12          MS. PRITIKIN:  I'D LIKE TO OFFER AS AN EXHIBIT, THIS

13   IF FROM DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING FILES THAT

14   WERE AUTHENTICATED, THAT IS THE PERFORMANCE IMPROVEMENT PLAN

10:24:06   15   GIVEN BY THE WITNESS TO PHILLIP SMITH, AND THAT WILL NEED TO BE

16   MARKED AS 376, AND IT'S SOMETHING THAT IS PART OF THE FAIR

17   EMPLOYMENT HOUSING RECORDS THAT COUNSEL HAS AND HAS MADE

18   REFERENCE TO AND ALSO IS AN EXHIBIT TO THE LETTER TO THE

19   DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING.

20          MR. BOHM:  COUPLE THINGS TO SAY IN RESPONSE.  NUMBER

21   ONE, I'VE NEVER SEEN THIS DOCUMENT BEFORE.  I DISPUTE THAT WE

22   HAVE THE DFEH RECORDS THAT COUNSEL IS REFERRING TO.

23          THE COURT:  MAY I SEE THE DOCUMENT?

24          MR. BOHM:  YES.

25          MS. PRITIKIN:  IT'S EXHIBIT 218, YOUR HONOR, THAT

10:24:47   1   COUNSEL SUBMITTED.  THERE'S A LETTER, AND THERE'S ATTACHMENTS

2   TO THE LETTER.  THIS IS ONE OF THE ATTACHMENTS TO THE LETTER,

3   AND PLAINTIFF'S COUNSEL IS THE ONE WHO PRODUCED THAT LETTER.

4   THEY GOT IT FROM DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING.  IT

5   INCLUDED THE EXHIBITS.  IT'S EXHIBIT K TO 218.

6          MR. BOHM:  YOUR HONOR, I OBJECT TO COUNSEL'S

7   CHARACTERIZATION OF WHAT MY OFFICE HAS DONE.  WE RECEIVED THOSE

8   DOCUMENTS FROM AUTOZONE, AND SHE'S MAKING IT SOUND AS THOUGH WE

9   RECEIVED THEM INDEPENDENTLY.  SO I OBVIOUSLY OBJECT.

10          MS. PRITIKIN:  WELL, THEY WERE PRODUCED.

11          THE COURT:  ALL RIGHT.  COUNSEL, LET'S STOP THE BACK

12   AND FORTH PLEASE.

13          MR. BOHM:  YOUR HONOR, IN THE INTEREST OF TIME, I

14   HAVE NO PROBLEM WITH THIS ONE DOCUMENT COMING IN, AS LONG AS

10:26:13  15   IT'S NOT DEEMED AS OPENING THE DOOR TO OTHER THINGS; I'M FINE

16   WITH THAT ONE PAGE.

17          THE COURT:  IF THERE'S NO OBJECTION, IT WILL BE

18   ADMITTED.  THIS IS EXHIBIT K TO DOCUMENT, PLAINTIFF'S EXHIBIT

19   218?

20          MS. PRITIKIN:  YOUR HONOR BECAUSE I DON'T HAVE EXTRA

21   COPIES, IF THE WITNESS CAN BE SHOWN THE EXHIBIT, EXHIBIT K TO

22   218?

23          THE COURT:  I'VE ALREADY PUT A MARK ON IT, LET ME

24   ERASE IT.  THIS IS 376.

25             (EXHIBIT 376 ADMITTED.)

10:27:05   1          MS. PRITIKIN:   WE HAVE ANOTHER COPY YOUR HONOR.

2   NEVER MIND.   OKAY.   SORRY, YOUR HONOR.   WE DON'T HAVE IT.

3                              REDIRECT

4   BY MS. PRITIKIN:

5   Q.   WELL, LET ME ASK THIS QUESTION.   IN 2005, BEFORE MS. JUAREZ

6   WAS PLACED ON A PERFORMANCE IMPROVEMENT PLAN, DID YOU PLACE

7   ANOTHER INDIVIDUAL ON A PERFORMANCE IMPROVEMENT PLAN?

8   A.   YES, I DID.   IT WAS PHILLIP SMITH.

9   Q.   AND DOES MR. SMITH HAVE THE SAME JOB OR DIFFERENT JOB THAN

10   MS. JUAREZ?

11   A.   SAME JOB.   THEY WERE BOTH STORE MANAGERS.

12   Q.   WERE THE ISSUES FOR HIM SIMILAR OR DIFFERENT THAN THE

13   ISSUES WITH MS. JUAREZ'S STORE?

14   A.   ALMOST SIMILAR.

10:27:58   15   Q.   AND DO YOU KNOW WHAT HAPPENED WITH MR. SMITH IN TERMS OF

16   HIM BEING A STORE MANAGER AFTER YOU GAVE HIM A PERFORMANCE

17   IMPROVEMENT PLAN?

18   A.   HE WAS DEMOTED AS WELL.

19          MS. PRITIKIN:   IF I CAN HAVE A MOMENT, YOUR HONOR.

20   NO FURTHER QUESTIONS, YOUR HONOR.

21          MR. BOHM:   BRIEFLY, AS TO THAT MR. SMITH DOCUMENT AND

22   MR. SMITH.

23          THE COURT:   YOU MAY RECROSS.

24                              RECROSS

25   BY MR. BOHM:

10:28:24   1    Q.   NOW MR. MCFALL, WAS MR. SMITH EVER PREGNANT WHILE YOU WERE

           2    HIS DISTRICT MANAGER?

           3    A.   NO.

           4    Q.   MR. SMITH HAD THE GENDER APPROPRIATE PARTS I ASSUME?

           5              MS. PRITIKIN:   OBJECTION, YOUR HONOR.

           6    BY MR. BOHM:

           7    Q.   HE WAS A MAN?

           8    A.   HE WAS MALE, YES.

           9    Q.   AND YOU DON'T KNOW WHY MR. SMITH WAS DEMOTED; CORRECT?

          10    A.   DUE TO HIS PERFORMANCE AS WELL TO THAT DOCUMENT AS THE

          11    PERFORMANCE IMPROVEMENT PLAN.

          12    Q.   SO LET ME GET THIS STRAIGHT.   YOU DON'T KNOW WHY MS. JUAREZ

          13    WAS DEMOTED, BUT YOU DO KNOW WHY MR. SMITH WAS DEMOTED; IS THAT

          14    FAIR TO SAY?

10:28:57  15    A.   I WAS STILL HIS DISTRICT MANAGER AT THAT TIME.

          16    Q.   OKAY.   SO YOU DON'T KNOW IF THE CIRCUMSTANCES SURROUNDING

          17    WHY MR. SMITH WAS DEMOTED ARE EVEN THE SAME AS MS. JUAREZ;

          18    CORRECT?

          19    A.   MY -- MR. SMITH'S DEMOTION IS DUE TO HIS PERFORMANCE AND

          20    WHAT I PRESENTED AS A DOCUMENT RIGHT THERE AND WHICH IS A PIP

          21    AS WELL.

          22    Q.   BUT YOU DON'T KNOW WHAT HAPPENED TO MS. JUAREZ?

          23    A.   NO, I DON'T.

          24    Q.   AND ALSO MR. SMITH -- DID ANYBODY COMPLAIN THAT MR. SMITH'S

          25    RIGHTS WERE BEING VIOLATED IN THE WORKPLACE TO YOU?

10:29:29   1   A.   NOT THAT I KNOW OF.

2   Q.   AND SO SOME OF THE -- SO THAT DOCUMENT FROM MR. SMITH, THAT

3   WAS BACK FROM DECEMBER 2005, THE ONE THAT COUNSEL IS TALKING

4   ABOUT?   WE'LL SHOW YOU THE DOCUMENT.   I THINK YOUR HONOR HAS

5   THE DOCUMENT CURRENTLY.

6          MS. PRITIKIN:   I HAVE A COPY FOR THE WITNESS, YOUR

7   HONOR.

8          THE COURT:   MR. BROWN POINTED OUT TO ME WE HAVE TO

9   REDACT THE PERSONAL INFORMATION OF MR. SMITH.   SPECIFICALLY, IT

10   LOOK LIKE HIS SOCIAL SECURITY NUMBER IS ON IT.

11          MS. PRITIKIN:   YES, YOUR HONOR.

12   BY MR. BOHM:

13   Q.   RECOGNIZE THAT FROM DECEMBER 2005?

14   A.   IT'S OCTOBER ALL THE WAY TO DECEMBER 8.

10:30:24   15   Q.   DID YOU GET THAT DOCUMENT?   DID YOU GO AND COLLECT THAT

16   DOCUMENT SO THAT YOU COULD SHOW THE DFEH THAT YOU TREATED MEN

17   EQUAL TO WOMEN?

18   A.   DID I COLLECT THE DOCUMENT?

19   Q.   YEAH.   THAT DOCUMENT THAT'S THERE, SIR, DID YOU GO AND GET

20   IT SO THAT IT COULD BE OFFERED TO THE DFEH AS EVIDENCE THAT YOU

21   DON'T DISCRIMINATE AGAINST WOMEN?

22   A.   I DIDN'T COLLECT IT.   I TURNED IT IN TO HUMAN RESOURCE JUST

23   LIKE PROTOCOL AS I MENTIONED EARLIER.

24   Q.   THAT WAS BEFORE YOU HAD ANY KNOWLEDGE ABOUT WHAT WAS GOING

25   ON WITH MS. JUAREZ AND HER CLAIM OF GENDER DISCRIMINATION AND

10:31:00  1   PREGNANCY DISCRIMINATION?

2   A.   THIS WAS WAY BEFORE THAT.

3   Q.   AND SO DO YOU HAVE ANY UNDERSTANDING OF WHERE THAT DOCUMENT

4   CAME FROM SUCH THAT IT'S HERE IN COURT TODAY?

5   A.   NO, I DON'T.

6   Q.   BUT YOU DON'T KEEP MR. SMITH'S DOCUMENT HANDY ON YOUR

7   PERSON; RIGHT?

8   A.   NO.

9   Q.   SOMEHOW THE CORPORATION HAS ACCESS TO THAT DOCUMENT FROM

10   THAT POINT IN TIME IN DECEMBER '05?

11   A.   I DON'T KNOW WHAT THEY DID WITH IT OR THE STRUCTURE, BUT I

12   TURNED IT AS MENTIONED EARLIER TO, AS MY PROTOCOL, TO EVERY

13   TIME I'M DONE WITH IT I TURN IT INTO HUMAN RESOURCE.

14   Q.   WHEN YOU SAY YOU MADE THE DECISION TO DEMOTE MR. SMITH, IT

10:31:36  15   WAS BECAUSE YOU WERE THE DISTRICT MANAGER?

16          MS. PRITIKIN:   OBJECTION, YOUR HONOR.   MISSTATES THE

17   WITNESS'S TESTIMONY?

18   BY MR. BOHM:

19   Q.   I'M SORRY.   LET ME MAKE SURE WE'RE CLEAR.   DID YOU SAY YOU

20   MADE THE DECISION TO DEMOTE MR. SMITH?

21   A.   I DIDN'T SAY I MADE THE DECISION.   I WOULD, IT WOULD

22   CONFIRMATION FROM A HUMAN RESOURCE.   THEY'RE THE ONE WHO GAVE

23   ME THE RECOMMENDATION AND BECAUSE OF EVERYTHING THAT HAPPENED,

24   BUT I DIDN'T MAKE THE DECISION.

25   Q.   THE DECISION TO DEMOTE MR. SMITH WAS MADE BY STACI SAUCIER

```
10:32:06    1    AND AUTOZONER RELATIONS AS FAR AS YOU UNDERSTOOD?

            2    A.   THAT I DON'T KNOW.

            3    Q.   OKAY.  SO DO YOU KNOW WHO MADE THE DECISION TO TERMINATE

            4    MR. SMITH?

            5    A.   NO, I DON'T.

            6    Q.   DO YOU KNOW WHETHER MR. SMITH EVER COMPLAINED ABOUT

            7    UNLAWFUL DISCRIMINATION IN THE WORKPLACE?

            8    A.   I DON'T KNOW.

            9            MR. BOHM:  NOTHING FURTHER.

           10            THE COURT:  MR. MCFALL, YOU'RE EXCUSED.  I CAUTION

           11    YOU NOT TO DISCUSS YOUR TESTIMONY WITH ANYONE OTHER THAN

           12    COUNSEL.  THANK YOU.

           13            THE WITNESS:  THANK YOU.

           14            MS. PRITIKIN:  YOUR HONOR, MAY I HAVE A MOMENT TO

10:32:45   15    CALL OUR NEXT WITNESS.

           16            THE COURT:  YES.

           17            MS. PRITIKIN:  YOUR HONOR, MAY WE HAVE EXHIBIT 344

           18    ADMITTED INTO EVIDENCE? IT WAS AUTHENTICATED PREVIOUSLY, AND I

           19    MOVE FOR ITS ADMISSION.

           20            THE COURT:  344?

           21            MR. BOHM:  I THINK THIS WAS A DOCUMENT THAT ALREADY

           22    HAS GONE IN, YOUR HONOR, DURING THE PLAINTIFF'S CASE.  IT WAS

           23    THE ONE WHERE WE'RE TALKING ABOUT THE DATES.

           24            MS. PRITIKIN:  I DON'T THINK IT WAS EVER ACTUALLY

           25    ADMITTED.  THAT'S WHY I'M RAISING IT.
```

10:34:24   1                    MR. BOHM:  I THINK IT WAS.

           2              THE COURT:  DO YOU HAVE A CORRESPONDING PLAINTIFF

           3    EXHIBIT NUMBER FOR THIS?

           4              MR. BOHM:  YES, I CAN.  IT SHOULD HAVE BEEN 84, I

           5    BELIEVE.  LET ME MAKE SURE I GOT THAT.  YES.  I DON'T KNOW IF

           6    IT'S BEEN CORRECTED, BUT THE VERSION SUGGESTED BY DEFENSE STILL

           7    HAS PLAINTIFF'S SOCIAL SECURITY NUMBER.

           8              MS. PRITIKIN:  WE ALREADY CHANGED IT.

           9              THE COURT:  IT DOES APPEAR THAT PLAINTIFF'S EXHIBIT

          10    84, AS REDACTED TO TAKE OUT THE SOCIAL SECURITY NUMBER, IS THE

          11    SAME AS DEFENSE EXHIBIT 344.

          12              MS. PRITIKIN:  IS IT IN EVIDENCE, YOUR HONOR?

          13              THE COURT:  IT'S BEEN ADMITTED, YES.

          14              MS. PRITIKIN:  IS 327 IN EVIDENCE?  IT'S A STATEMENT

10:35:19  15    BY MS. JUAREZ.  IT MAY HAVE CAME IN ON PLAINTIFF'S CASE, BUT I

          16    DON'T HAVE A NOTE THAT IT DID.

          17              MR. BOHM:  I'M CHECKING TO SEE.  ALTHOUGH IT IS NOT

          18    IN EVIDENCE, I WOULD STIPULATE TO THE ADMISSION.  HOWEVER,

          19    BECAUSE THE REDACTION IS CERTAIN, I WOULD REQUEST THAT IT BE

          20    PLAINTIFF'S EXHIBIT 47 WHICH HAS ALL THE NECESSARY REDACTION.

          21              MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.  JUST WANT TO

          22    MAKE SURE IT'S IN EVIDENCE.  SO 47, NO PROBLEM.

          23              THE COURT:  SO NO OBJECTION TO PLAINTIFF'S EXHIBIT 47

          24    AS REDACTED THEN?

          25              MS. PRITIKIN:  THAT'S CORRECT.

10:36:46  1          THE COURT:  ALL RIGHT.  PLAINTIFF'S EXHIBIT 47 WILL

2     BE ADMITTED.

3              (EXHIBIT 47 ADMITTED.)

4          MS. PRITIKIN:  YOUR HONOR, DEFENDANT RESTS.

5          MR. BOHM:  WELL, I HAVE A WITNESS IN THE HALLWAY, AND

6     WE HAVE A COUPLE ISSUES WE NEED TO DISCUSS WITH REGARD TO MY

7     REQUESTS.

8          THE COURT:  LET'S CALL THE WITNESS.

9          MR. BOHM:  SHE IS ON HER WAY HERE RIGHT NOW, YOUR

10    HONOR.  I DO HAVE TRANSCRIPTS THAT I HAD WANTED TO READ AND

11    THAT MATTER WE COULD TAKE UP WITH THE COURT.  I REQUESTED A

12    WHILE BACK --

13         THE COURT:  LADIES AND GENTLEMEN, YOU'VE HEARD THE

14    DEFENSE INDICATE THAT THEY'VE RESTED THEIR CASE.  PLAINTIFF NOW

10:37:35  15  HAS THE OPPORTUNITY TO PRESENT A REBUTTAL CASE.  IT'S 10:35.

16    THIS IS ONE OF THOSE DAYS WE'RE NOT TAKING OUR REGULARLY

17    SCHEDULED BREAKS FOR WHAT HOPEFULLY APPEARS TO YOU AS OBVIOUS

18    REASONS.  SO WE'RE GOING TO TAKE ANOTHER BREAK RIGHT NOW AND

19    TRY TO KEEP IT SHORT.  WE'LL TRY TO KEEP IT AT TEN MINUTES AND

20    OR LESS.  SO IT'S 10:37 RIGHT NOW.  PLEASE RETURN AT 10:47, AND

21    PLEASE REMEMBER THE ADMONITION.

22             (JURY ABSENT.)

23         THE COURT:  LET THE RECORD REFLECT THE JURY HAS

24    DEPARTED THE COURTROOM.

25         MS. PRITIKIN:  YOUR HONOR, MAY WE KNOW WHAT WITNESS

123

10:38:31   1   IS BEING CALLED.  WE WEREN'T GIVING ANY NOTICE.

2        MR. BOHM:  ALEJANDRA PEREZ.  AND I APOLOGIZE THE

3   WITNESS IS NOT YET HERE.  THEY HAD MARC TORRES ON THE LIST.  WE

4   WERE NEVER TOLD MARC TORRES WOULDN'T BE HERE.  WE WERE ALSO NOT

5   INFORMED UNTIL JUST NOW THEY WEREN'T CALLING MS. SORRELL --

6        THE COURT:  LET'S JUST MOVE ON.

7        MR. BOHM:  YES, YOUR HONOR.  THE FIRST ISSUE IS, AS

8   PART OF THE PLAINTIFF'S CASE IN CHIEF, I WOULD LIKE TO -- I'M

9   SORRY, REBUTTAL CASE -- I WOULD LIKE TO HAVE ADMITTED INTO

10   EVIDENCE AND PUBLISHED, NOT THE ENTIRE DECLARATION OF MS.

11   SAUCIER, BUT SHE HAS TWO DECLARATIONS IN THIS CASE, YOUR HONOR.

12   ONE SUBMITTED, IT'S DOCUMENT 48-7, SUBMITTED 9-25-2009.  THAT'S

13   THE DECLARATION I PROVIDED YOUR HONOR AT SIDEBAR AND LABELED IT

14   AS EXHIBIT 222 NEXT IN ORDER.

10:39:33  15        THE COURT:  SO WHEN YOU SAY DOCUMENT 48-7.

16        MR. BOHM:  I'M REFERRING TO THIS CASE'S DOCKET IN THE

17   FEDERAL SYSTEM, DOCUMENT NUMBER 48-7 WAS A PART OF THE MSJ.

18        THE COURT:  OH, I SEE. NOT A PLAINTIFF'S EXHIBIT?

19        MR. BOHM:  CORRECT, NOT PLAINTIFF'S EXHIBIT.

20        THE COURT:  OKAY.

21        MR. BOHM:  AND THESE ARE GOING TO INVOLVE A SIMILAR

22   ANALYSIS.  I'LL IDENTIFY THEM BOTH FOR THE RECORD.  THERE WAS A

23   SECOND DECLARATION OF MS. SAUCIER THAT WAS SUBMITTED AS DOCKET

24   105-4 ON JUNE 30, 2011, AND I'M MARKING THAT AS EXHIBIT 223,

25   AND I'D LIKE TO PROVIDE THAT TO YOUR HONOR AS WELL.  MAY I

10:40:20  1  APPROACH?

2        THE COURT:  YES.

3        MR. BOHM:  NOW TO BE CLEAR, YOUR HONOR, I WOULD NOT

4  BE OFFERING THE ENTIRETY OF THE DECLARATION.  I WOULD INCLUDE

5  ONLY THE PARAGRAPH NUMBERED ONE WHICH JUST ESTABLISHES THE

6  WITNESS'S FOUNDATION FOR THE TESTIMONY.  AND THEN I WOULD OFFER

7  PARAGRAPH 13, I'M SORRY.  WE'RE -- I SHOULD ASK THE COURT,

8  WHICH EXHIBIT ARE YOU LOOKING AT?  223 OR 222?

9        THE COURT:  223.

10        MR. BOHM:  OKAY.  IN 223, I WOULD SEEK TO USE

11  PARAGRAPH 13 AND 14, ONLY THOSE TWO PARAGRAPHS, AND THEN OF

12  COURSE, JUST THE DECLARATION UNDER PENALTY OF PERJURY.

13        MS. PRITIKIN:  YOUR HONOR --

14        MR. BOHM:  AND THEN THE NEXT DECLARATION, SIMILARLY,

10:42:08  15  WE WOULD INCLUDE THE FIRST PARAGRAPH JUST TO PROVIDE THE

16  FOUNDATION FOR THE TESTIMONY, AND THEN WE WOULD GO TO, ON THIS

17  ONE, PARAGRAPH 14 AND PARAGRAPH 15.

18        THE COURT:  I DON'T HAVE THAT DOCUMENT.

19        MR. BOHM:  I'M SORRY.  THAT WAS EXHIBIT 222 WHICH WE

20  HAD AT SIDEBAR.

21        THE COURT:  DO I STILL HAVE IT?

22        MR. BOHM:  MAYBE.  HERE IT IS AGAIN JUST IN CASE.

23        THE CLERK:  YOU'RE ADDING ALL THESE.  THEY'RE NOT IN

24  THE BINDER.

25        MR. BOHM:  THEY'RE NOT IN THE BINDER, 222, AND 223.

10:43:07  1          THE COURT:  WITH RESPECT TO 222, YOU'RE OFFERING

2     PARAGRAPH ONE.

3          MR. BOHM:  YES, AND THEN PARAGRAPHS 14 AND 15 ONLY,

4     AND THE SIGNATURE BLOCK.

5          MS. PRITIKIN:  I'M SORRY.  I'M CONFUSED.  WHAT IS THE

6     DATE OF THE ONE THAT YOU'RE SAYING 14 AND 15?

7          MR. BOHM:  OKAY.  THAT WAS EXHIBIT 222.  IT'S THE

8     DECLARATION THAT WAS DOCUMENT 48-7 AT THE TOP OF THE DOCUMENT

9     FILED 9-25-2009 IN THIS COURT.

10          MS. PRITIKIN:  YOU'RE SAYING 14 AND 15?

11          MR. BOHM:  I WOULD BE TAKING PARAGRAPH NUMBER ONE,

12     PARAGRAPHS 14 AND 15.

13          MS. PRITIKIN:  THEN ON THE OTHER DECLARATION?

14          MR. BOHM:  ON THE OTHER DECLARATION WHICH IS 223, IT

10:43:49  15     WOULD BE PARAGRAPH ONE AND THEN PARAGRAPHS 13 AND 14.

16          MS. PRITIKIN:  YOUR HONOR, I HAVE TWO OBJECTIONS AND

17     CONCERNS ABOUT THIS.  THE FIRST IS I BELIEVE THERE WAS ANOTHER

18     DECLARATION FROM MS. SAUCIER -- THAT OF COURSE WE DON'T HAVE IN

19     THE COURTROOM BECAUSE COUNSEL GAVE US NO NOTICE OF THESE

20     DECLARATIONS -- WHERE SHE EXPLAINS SHE WAS CORRECTING HER

21     DECLARATION FROM THE FIRST ONE.  THAT'S NUMBER ONE.

22          THE SECOND IS WHAT NEEDS TO BE ATTACHED TO THESE

23     DOCUMENTS FOR FAIRNESS ARE THE DOCUMENTS SHE MAKES REFERENCE TO

24     AS OPPOSED TO WHAT THE TEXT OF THE DECLARATION SAYS.  SO SHE'S

25     TALKING ABOUT SPECIFIC DOCUMENTS ON EXHIBIT 12, AND THEN SHE

10:44:37   1   TALKS ABOUT THE OTHER EXHIBITS.  SO I THINK THAT IF THEY ARE

2   GOING TO COME IN, IT SHOULD BE WITH THE EXHIBITS THAT WERE

3   ATTACHED TO THE DECLARATION BECAUSE COUNSEL KNOWS THAT, BECAUSE

4   MS. SAUCIER IS UNAVAILABLE TO US BECAUSE SHE DIDN'T ACCEPT

5   SERVICE OF HER SUBPOENA, HE'S GOING TO TAKE ADVANTAGE TO TRY TO

6   SAY THAT SHE WAS, THERE'S A DIFFERENCE BETWEEN THOSE TWO

7   DECLARATIONS WHICH THERE IS, AND SHE EXPLAINED THE CORRECTION.

8   BUT THE DOCUMENTS ATTACHED TO IT SHOW THAT WHAT SHE'S TALKING

9   ABOUT IS CONSISTENT, AND THEY'RE THE SAME DOCUMENT.  SO THAT'S

10   MY CONCERN.

11          THE COURT:  SO WITH RESPECT TO A THIRD DECLARATION, I

12   WOULD ASSUME THAT YOU HAVE THAT.

13          MS. PRITIKIN:  I DON'T HAVE IT IN COURT.

14          THE COURT:  OR IT'S EASILY OBTAINED.  IF WE KNOW WHAT

10:45:28  15   THE DOCUMENT NUMBER IS, WE CAN PRINT IT UP.

16          MS. PRITIKIN:  WE'LL FIND THAT, YOUR HONOR, BUT

17   BECAUSE WE'RE TRYING TO GET DONE, I WANTED YOU TO KNOW THAT IF

18   WE HAD SOME NOTICE I WOULD HAVE HAD THAT, BUT I JUST DON'T HAVE

19   IT.

20          MR. BOHM:  PERHAPS IF I ADDRESS JUST WHAT I SEE AS

21   IMPORTANT IN HERE, MAYBE THE COURT CAN -- I WOULD HAVE LOVED TO

22   HAVE HAD THE SUPPLEMENTAL DECLARATION.  I OBVIOUSLY MISSED THAT

23   OR I WOULD HAVE BROUGHT IT MYSELF BECAUSE AS I UNDERSTAND, THE

24   CHRONOLOGY IS THE FIRST DECLARATION, EXHIBIT 22, MS. SAUCIER

25   WAS EXAMINED ABOUT IT, AND THE MISTAKES IN HER DECLARATION WERE

10:46:13   1    BROUGHT TO HER ATTENTION IN DEPOSITION.  AFTER SHE WAS DEPOSED

2    AND THE MISTAKES IN HER DECLARATION WERE BROUGHT TO HER

3    ATTENTION, THEN EXHIBIT 223 WAS CREATED AFTER SOME KIND OF A

4    SUPPLEMENTAL DECLARATION EXPLAINING WHY SHE GOT THINGS WRONG IN

5    THE FIRST DECLARATION.  AND TO THE EXTENT THE DEFENSE HAS IT OR

6    WE KNOW WHAT COURT NUMBER AND WE'LL TRY TO FIND IT OURSELVES

7    BECAUSE I DIDN'T REALIZE IT EXISTED UNTIL THEY JUST SAID IT,

8    WE'LL FIND IT, AND WE'LL SEE IF IT BEARS ON THE ISSUE.  AND I

9    DON'T KNOW IF ONE OF THE THINGS THAT SHE CORRECTED IS THE SAME

10    THING THAT I SAW.  BUT WHAT I SEE HERE IS ON BEHALF OF THE

11    COMPANY SHE SAYS IN FEBRUARY, I, ALONG -- THIS IS PARAGRAPH.

12           THE COURT:  14.

13           MR. BOHM:  14.  I, ALONG WITH MS. GOODEN, REVIEWED

14    MS. JUAREZ'S PIP, ET CETERA.  IN THE 223, IT'S I, ALONG WITH

10:47:10   15    MR. TORRES, REVIEWED THE INVESTIGATION INTO JUAREZ.  I HAD

16    INTENDED TO TAKE THIS UP WITH MR. TORRES, BUT THEY DID NOT CALL

17    MR. TORRES.  SO OBVIOUSLY, I WAS NOT GOING TO BE ABLE TO ASK

18    HIM ABOUT THAT.  BUT THAT'S ONE SIGNIFICANT ISSUE.  THE OTHER

19    SIGNIFICANT ISSUE IS THE NEXT SENTENCE IN BOTH DECLARATIONS

20    TALKING ABOUT DAN MERCHANT AND MS. SAUCIER REVIEWING THE

21    PERFORMANCE, ET CETERA.  AND THEN THE OTHER IMPORTANT PART IS

22    WHERE IT SAYS, THESE DATA CONTAINED IN THESE DOCUMENTS SHOW

23    THAT NOT ONLY WAS MS. JUAREZ'S STORE SHOWING LOWER YEAR OVER

24    YEAR SALES, BUT HER STORE WAS ALSO NOT MEETING ITS SALES

25    TARGETS, WHICH WE KNOW TO BE A FALSE STATEMENT.

10:48:02  1            THE COURT:  EXCEPT FOR ONE WEEK.

2            MR. BOHM:  EXCEPT FOR ONE WEEK.  BUT EVEN IN THAT,

3     SHE WAS MEETING HER SALES TARGETS BECAUSE THEY ACCUMULATE, THEY

4     AGGREGATE.  SO NOT ONLY DO YOU HAVE TO MEET YOUR SALES TARGETS

5     WEEK AFTER WEEK OR BEAT THE AGGREGATE QUARTER TO DATE TOTAL OR

6     NO BONUS.  THAT'S WHY I MADE SURE TO GET THE BONUS PLAN INTO

7     EVIDENCE AS TO THAT.  AND THEN IN PARAGRAPH 15, IT'S TALKING

8     ABOUT AUTOZONER RELATIONS AND HOW THIS INFORMATION WAS

9     SUBMITTED TO AUTOZONER RELATIONS, AND THAT AUTOZONER RELATIONS

10     RECOMMENDED THAT MS. JUAREZ BE DEMOTED AND THAT DAN MERCHANT

11     AND HER AGREED.  THAT'S IN 22.  I BELIEVE THAT PARAGRAPH

12     DIFFERS ALSO FROM THE PRIOR DECLARATION.  AND THAT'S WHY I'VE

13     INCLUDED BOTH OF THOSE PARAGRAPHS.  I JUST WANT TO REMIND THE

14     COURT TOO THAT MS. SAUCIER PROVIDED DEPOSITION TESTIMONY IN

10:49:13  15     THIS CASE AS THE PERSON MOST KNOWLEDGEABLE CONCERNING THE

16     DEMOTION.

17            MS. PRITIKIN:  YOUR HONOR, I JUST ASK THAT THE

18     EXHIBIT THAT MS. SAUCIER IS INTERPRETING IN HER DECLARATION BE

19     PART OF WHAT IS PRESENTED.

20            THE COURT:  IN PLAINTIFF'S EXHIBIT 222, MS. SAUCIER

21     REFERENCES AN EXHIBIT 12.  I THINK THE PIP IS ALREADY PART OF

22     THE RECORD AS BEING ADMITTED.

23            MS. PRITIKIN:  THAT'S CORRECT.

24            THE COURT:  THE STORE'S PERFORMANCE, MS. JUAREZ'S

25     PERFORMANCE, THOSE DOCUMENTS HAVE ALREADY BEEN ADMITTED.

10:49:52   1          MS. PRITIKIN:  WELL, I THINK, YOUR HONOR, IT'S

2     IMPORTANT THAT THE DOCUMENT TO WHICH THIS IS MADE REFERENCE IS

3     IDENTIFIED TO THE JURY.

4          THE COURT:  I'M TRYING TO, I'M GETTING TO THAT.  I'M

5     JUST GOING THROUGH DOCUMENTS THAT ARE IDENTIFIED IN THESE TWO

6     PARAGRAPHS 14 AND 15, AND EXHIBIT 12 IS PERHAPS THE ONLY

7     DOCUMENT THAT HASN'T YET BEEN ADMITTED.  MAYBE IT HAS OR IT

8     HASN'T.  WE DON'T KNOW.  I DON'T KNOW WHAT EXHIBIT 12 IS.  IT

9     COULD BE A DOCUMENT THAT'S BEEN ADMITTED.

10          MS. PRITIKIN:  I BELIEVE, YOUR HONOR, IT IS --

11          I THINK IT'S 318, YOUR HONOR, IS THE EXHIBIT, AND SO

12     IF THAT CAN BE REFERENCED AND THAT CAN BE ADMITTED INTO

13     EVIDENCE.

14          THE COURT:  CONSISTS OF TWO PAGES?

10:51:07  15          MS. PRITIKIN:  YES, YOUR HONOR.

16          THE COURT:  THAT'S EXHIBIT 12.

17          MS. PRITIKIN:  AND ALSO EXHIBIT I.

18          THE COURT:  SO EXHIBIT I AND PLAINTIFF'S EXHIBIT 223,

19     PARAGRAPH 14, AND EXHIBIT 12, PLAINTIFF'S EXHIBIT 222, ARE THE

20     SAME?  THEY'RE THE SAME EXHIBIT?

21          MS. PRITIKIN:  THAT'S CORRECT.

22          THE COURT:  AND YOU BELIEVE THAT CORRESPONDS TO

23     DEFENSE EXHIBIT 318.

24          MS. PRITIKIN:  THAT'S CORRECT, YOUR HONOR.

25          THE COURT:  MR. BOHM, CAN YOU CONFIRM THAT ONE WAY OR

10:51:34  1    THE OTHER?

        2              MR. BOHM:  I AM MOVING PARTICLES AROUND IN THE

        3    INTERNET RIGHT NOW TO DO THAT.  ONE MOMENT, YOUR HONOR.  I HAVE

        4    THE COMPLETE OF ONE, SO I CAN DO -- FOR 223, I CAN TELL -- AT

        5    THIS POINT, I FEEL COMFORTABLE THAT THE DEFENSE KNOWS THEIR OWN

        6    EXHIBITS.  I DON'T HAVE A PROBLEM WITH THIS MAP THING, THE --

        7              THE COURT:  THE MANAGEMENT ACTION PLAN?

        8              MR. BOHM:  IF THEY'RE SAYING THAT'S EXHIBIT 12,

        9    THAT'S GOOD ENOUGH FOR ME.  I DON'T WANT TO MESS THINGS UP.

       10              THE COURT:  OKAY.  SO THE THIRD DECLARATION, DO WE

       11    KNOW WHAT THAT DOCUMENT NUMBER IS?

       12              MS. PRITIKIN:  I DON'T, YOUR HONOR.  SOMEBODY IS BACK

       13    AT THE OFFICE LOOKING FOR IT AND CAN BRING IT HERE.

       14              THE COURT:  IF WE KNOW WHAT THE DOCUMENT NUMBER IS,

10:52:38 15    WE CAN PRINT IT UP RIGHT NOW.

       16              MS. PRITIKIN:  THERE WERE TWO SEPARATE SUMMARY

       17    JUDGMENT MOTIONS SO GIVING YOU A DOCUMENT NUMBER IS A CHALLENGE

       18    FOR US BECAUSE THERE WAS SO MANY PLEADINGS IN THIS CASE, AND IT

       19    MAY HAVE BEEN AN ATTACHMENT TO A LAWYER'S DECLARATION AS

       20    OPPOSED TO A SEPARATE FILING OF HER DECLARATION.  I'M JUST NOT

       21    SURE.  IT'S SUBSEQUENT TO ONE BUT --

       22              THE COURT:  MR. BOHM, DO YOU HAVE ANY OBJECTION AS A

       23    MATTER OF COMPLETENESS UNDER, I DON'T KNOW, 106, THAT THE THREE

       24    DECLARATIONS BE CONSIDERED TOGETHER WITH RESPECT TO THE

       25    PERTINENT PARAGRAPHS?

10:53:22  1          MR. BOHM:  MY CO-COUNSEL HAS GIVEN ME HIS

2  RECOLLECTION OF THE LAST OF THOSE DECLARATIONS, AND APPARENTLY,

3  IT HAS NOTHING TO DO WITH THE TWO PARAGRAPHS THAT I'M

4  ADDRESSING.  IT HAD TO DO WITH THE IDEA THAT MS. JUAREZ -- MS.

5  GOODEN RECEIVED REPORTS OR DID NOT RECEIVE REPORTS ABOUT MS.

6  JUAREZ TELLING PEOPLE TO QUIT.  SO IF MR. MOORE'S RECOLLECTION

7  IS ACCURATE THAT THAT'S THE ONLY THING, YEAH, I WOULD OBJECT

8  BECAUSE THAT WOULDN'T COMPLETE THE SITUATION.  BUT IF IT'S

9  ADDRESSING THESE PARAGRAPHS, THEN I HAVE NO OBJECTION.

10          THE COURT:  LET'S FIND THE DECLARATION AS QUICKLY AS

11  WE CAN, AND THEN WE'LL MAKE THAT DETERMINATION.  NOW IT APPEARS

12  THAT THESE DECLARATIONS, AT LEAST THE PERTINENT PARAGRAPHS, MAY

13  BE ADMITTED.  HOW DO YOU INTEND TO DO THIS?  DO YOU INTEND TO

14  READ THEM?

10:54:18 15          MR. BOHM:  TODAY, I WILL READ THEM.  AND THEN FOR

16  SUBMISSION AS AN ACTUAL EXHIBIT, I WOULD REDACT THEM AND AGREE

17  TO REDACT -- I DON'T THINK WE NEED THE FIRST PAGE UNLESS YOUR

18  HONOR THINKS WE DO BECAUSE THE DECLARATIONS BOTH START, I,

19  STACI SAUCIER.  SO WE CAN REDACT OUT THE CASE NUMBER HEADING AT

20  THE TOP, LEAVE PARAGRAPH ONE ON THE PAGE WHERE IT IS, AND THEN

21  REDACT OUT EVERYTHING EXCEPT FOR THE TWO PARAGRAPHS THAT I SAID

22  WE WOULD LEAVE IN, AND THEN WE WOULD ALSO LEAVE THE DECLARATION

23  UNDER PENALTY OF PERJURY WITH HER NAME ON IT.

24          MS. PRITIKIN:  YOUR HONOR, I BELIEVE THE ENTIRE

25  DECLARATION SHOULD GO IN IF THEY'RE GOING TO GO IN IN PRINT,

10:54:53    1    AND IF THEY'RE NOT GOING TO GO IN IN PRINT, BECAUSE IT'S NOT

            2    FAIR TO ISOLATE ONE LITTLE PART AND MAKE IT AS THOUGH THAT WAS

            3    HER ENTIRE DECLARATION, I THINK WHAT IS TYPICAL IS THAT THEY

            4    GET READ AND THAT'S ALL.  JUST LIKE YOU READ DEPOSITION

            5    TESTIMONY GETS READ, IT'S NOT SOMETHING THAT IS GIVEN SOME

            6    SPECIAL ATTENTION OR SPECIAL KIND OF EXHIBIT THAT GIVES IT MORE

            7    ATTENTION THAN ITS DUE.

            8            THE COURT:  I HAVEN'T REVIEWED ALL THE OTHER

            9    PARAGRAPHS.  I JUST FOCUSED ON THE SEVERAL PARAGRAPHS THAT MR.

           10    BOHM IDENTIFIED.  IS THERE ANY REASON WHY THE WHOLE THING

           11    SHOULD NOT BE READ TO THE JURY?

           12            MR. BOHM:  YES, BECAUSE THE REST OF THE DOCUMENT

           13    CONTAINS A LOT OF SELF-SERVING HEARSAY THAT MS. SAUCIER IS NOT

           14    HERE TO TESTIFY TO.  IT'S PLAINTIFF'S REBUTTAL CASE.  WE'RE

10:55:40   15    PUTTING IN JUST THESE FEW STATEMENTS BECAUSE THAT'S WHAT'S

           16    RELEVANT, AND I'M NOT ABLE TO QUESTION MS. SAUCIER BECAUSE

           17    SHE'S NOT AVAILABLE APPARENTLY FOR TESTIMONY.

           18            THE COURT:  APPARENTLY, ACCORDING TO MR. BROWN, HE'S

           19    FOUND A DECLARATION THAT FALLS WITHIN THE TWO DATES, IN BETWEEN

           20    THE TWO DATES OF THESE TWO EXHIBITS 222 AND 223, AUTHORED BY

           21    MS. SAUCIER, BUT IT SAYS IT WAS STRICKEN FROM THE DOCKET, AND

           22    WE DON'T HAVE ACCESS TO IT.  SO I'M NOT SURE WHAT THAT MEANS.

           23            MS. PRITIKIN:  WE'RE BRINGING OVER THE DECLARATION,

           24    YOUR HONOR.  I DON'T KNOW IF IT WAS JUST FILED WRONG AND

           25    RE-FILED.  WE HAVE A NOTATION ON IT THAT IT WAS SUBMITTED ON

10:56:57  1    THE ECF SO IT MAY HAVE BEEN THAT IT WAS.

2              THE COURT:  IF SOMEONE COULD JUST TELL YOU WHAT THE

3    NUMBER IS, WE COULD PRINT IT UP RIGHT HERE.  THEY DON'T HAVE TO

4    BRING IT OVER.

5              MS. PRITIKIN:  SOUNDS LIKE IT'S NOT --

6              THE COURT:  IF IT'S THE SAME NUMBER AS HE'S LOOKING

7    AT.

8              MS. PRITIKIN:  I DON'T KNOW, BUT SOMEONE IS ON THEIR

9    WAY.  OUR OFFICE IS JUST A BLOCK AWAY.

10             THE COURT:  I KNOW WHERE YOUR OFFICE IS.

11             SO I AGREE WITH MR. BOHM AS TO READING THE ENTIRE

12   DECLARATION.  AND I THINK UNDER -- I THINK IT'S FEDERAL RULE OF

13   EVIDENCE 106 -- 106, YES, 106.  AND IT'S WHETHER THE REST OF

14   THE DOCUMENT, IN FAIRNESS, BE CONSIDERED WITH THOSE PORTIONS

10:58:37 15   THAT ARE SOUGHT TO BE ADMITTED BY THE MOVING PARTY.  AND JUST

16   QUICKLY GOING OVER, I'M GOING OVER 222 RIGHT NOW, IT DOESN'T

17   APPEAR TO ME THAT IN FAIRNESS THE OTHER PARAGRAPHS OUGHT TO BE

18   ADMITTED, FOR A COUPLE REASONS.  ONE IS EACH PARAGRAPH IS

19   ALMOST A DISCREET AND SEPARATE TOPIC UNTO ITSELF.  SOME OF THEM

20   MERGE INTO OTHER PARAGRAPHS, BUT THEY ALSO REFERENCE MANY

21   EXHIBITS.  SO IF WE'RE TO INTRODUCE THE ENTIRE DECLARATION, IT

22   WOULD ALMOST BY NECESSITY, IF WE'RE GOING TO REMAIN SOMEWHAT

23   CONSISTENT, IS ALL THESE OTHER EXHIBITS, ONE THROUGH 11, GETS

24   US UP TO PARAGRAPH 14, WOULD ALSO HAVE TO BE ADMITTED.  I DON'T

25   BELIEVE THAT PARAGRAPH 14 AND 15, EXHIBIT 222, WOULD BE IN ANY

11:00:10  1   WAY CONSTRUED OUT OF CONTEXT IF THE OTHER PARAGRAPHS ARE NOT

2   READ AT THE SAME TIME.  THAT'S AS TO 222.  AS TO PLAINTIFF'S

3   EXHIBIT 223, WHICH IS VERY MUCH SIMILAR TO 222, MY REVIEW OF

4   223 LEADS ME TO THE SAME CONCLUSION THAT THE OTHER PARAGRAPHS,

5   OTHER THAN THOSE THAT MR. BOHM HAS IDENTIFIED, NEED NOT IN

6   FAIRNESS BE READ TO THE JURY FOR THE VERY SAME REASONS.  SO

7   LET'S WAIT AND SEE WHAT THIS THIRD DECLARATION HAS IN STORE FOR

8   US AS TO WHETHER THAT WILL BE READ.

9          SO MR. BOHM WHAT YOU'RE GOING TO DO IS YOU WILL READ,

10   YOU'LL IDENTIFY THE EXHIBIT BY NUMBER, OF COURSE, THE DATE THAT

11   IT WAS SIGNED BY MS. SAUCIER; YOU'RE GOING TO READ PARAGRAPH

12   ONE, PARAGRAPH 14 AND PARAGRAPH 15, AND THEN THE VERY END WHICH

13   CONCLUDES WITH, I DECLARE UNDER PENALTY OF PERJURY, EXECUTED

14   THIS DAY.  NOW THE QUESTION IS, SHOULD YOU JUST SIMPLY READ THE

11:02:08  15   PARAGRAPHS WITHOUT IDENTIFYING THEM BY NUMBER?  AS OPPOSED TO

16   PARAGRAPH ONE, PARAGRAPH 14, 15, WHICH WOULD INDICATE THERE ARE

17   PARAGRAPHS BEING OMITTED OBVIOUSLY BY IMPLICATION.  I DON'T

18   HAVE ANY STRONG FEELINGS ONE WAY OR THE OTHER.  SO I'LL LISTEN

19   TO WHAT COUNSEL HAS TO SAY.

20          MR. BOHM:  I HAVE NO -- I MEAN, IF WE'RE PUTTING THE

21   DOCUMENT IN, WITH THE BEAUTY OF PDF, WE COULD RE-NUMBER THE

22   PARAGRAPHS TO BE ONE, TWO, THREE, OR WE COULD LEAVE THEM AS

23   THEY ARE.  WE COULD LEAVE THEM AS THEY ARE ON THE PAGE.  WE

24   COULD PUT THEM ALL ON ONE PAGE.  IT'S WHATEVER THE COURT

25   WANTS.

11:02:50  1          THE COURT:  I AGREE WITH MS. PRITIKIN ON THE ONE

2    POINT THOUGH IS THAT THERE SHOULD NOT BE ANY ADDITIONAL UNDUE

3    SIGNIFICANCE ATTACHED TO THE DECLARATION BY READING IT AND

4    SUBMITTING IT TO THE JURY AS A WRITTEN DOCUMENT.

5          MR. BOHM:  SO WE WOULD NOT BE SUBMITTING IT IN

6    WRITING.

7          THE COURT:  CORRECT.

8          MR. BOHM:  WHICH BRINGS UP THE CURIOSITY OF THEN

9    WHAT'S THE POINT OF PUTTING IN THE ATTACHED M.A.P.?

10          THE COURT:  ONLY BECAUSE IT'S REFERENCED IN THE

11    PARAGRAPH THERE, AND THERE HAS TO BE SOME CONTEXT TO IT.

12          MR. BOHM:  SURE.  AND THEN SO WHAT I COULD DO IS,

13    WHILE READING IT AND WHEN IT GETS TO THAT, I COULD SAY, YOUR

14    HONOR, WE ALSO OFFER THE REFERENCED ITEM AS EXHIBIT NEXT IN

11:03:36  15    ORDER, 224.

16          THE COURT:  OR YOU CAN REFERENCE IT AS DEFENSE

17    EXHIBIT 318.

18          MR. BOHM:  OR DEFENSE EXHIBIT 318.

19          MS. PRITIKIN:  YOUR HONOR, I HAVE DOCUMENT CALLED

20    DECLARATION OF STACI SAUCIER RE: ERRATA APPEARING IN MY PRIOR

21    DECLARATION SUBMITTED IN SUPPORT OF SUMMARY JUDGMENT OR PARTIAL

22    SUMMARY DOCUMENT, PACER DOCUMENT 48-6.

23          THE COURT:  DO YOU HAVE AN EXTRA COPY?

24          MS. PRITIKIN:  THIS IS MY ONLY COPY, BUT I'D BE HAPPY

25    TO SHARE WITH YOUR HONOR.

11:04:43  1          THE COURT:  THIS IS 51.  WHAT YOUR PRINTING UP THERE

2  IS DIFFERENT THAN WHAT I'VE GOT HERE.

3          IT APPEARS THAT MR. MOORE'S RECOLLECTION MAY BE

4  CORRECT WHEN LOOKING AT THIS TWO-PAGE DECLARATION WHICH IS

5  DOCUMENT NUMBER 51 OF MS. SAUCIER.  IT APPEARS TO HAVE

6  ABSOLUTELY NOTHING TO DO WITH OR MAKE ANY CORRECTIONS TO

7  PARAGRAPHS 14 AND 15 IN 48-7, THE SEPTEMBER 25TH DECLARATION.

8          MS. PRITIKIN:  YOUR HONOR, MAY I SEE IT BECAUSE MAYBE

9  I HANDED YOU THE WRONG --

10          THE COURT:  IT APPEARS TO JUST DEAL WITH PARAGRAPH

11  13.

12          MS. PRITIKIN:  YOUR HONOR, MY UNDERSTANDING IS THAT

13  THE DEBORAH GOODEN REFERENCE CARRIED ON TO THE NEXT PARAGRAPH.

14  THAT'S WHY -- AND IT SHOULD BE CHANGED TO MARC TORRES WHICH IS

11:07:13  15  WHAT THE CORRECTIONS WERE IN THE NEXT DECLARATION.  SO TO NOT

16  HAVE -- BECAUSE IT'S PART OF THE INVESTIGATION.  THEN THERE'S A

17  REVIEW OF THE INVESTIGATION AND THE PIP WHICH IS CORRECTED THAT

18  IT'S NOT DEBORAH GOODEN WHO WAS THERE, IT WAS MR. TORRES.  AND

19  I AGREE WITH YOU IT DOESN'T SPECIFICALLY CORRECT PARAGRAPH 14

20  BUT IT'S INTENDED TO CORRECT WHO WAS INVOLVED IN THAT ISSUE.

21  AND SO FOR THAT REASON, I THINK THAT IT IS UNFAIR TO SUGGEST

22  THAT SHE WAS LYING BECAUSE WE CHANGED IT WHEN SHE WAS CLEAR SHE

23  WAS TRYING TO MAKE THE CORRECTION THAT IT WASN'T MS. GOODEN, IT

24  WAS MR. TORRES.  AND MS. GOODEN WAS THE REPORTER OF THE EVENT.

25  SO IT WAS JUST A MISTAKE.  SO TO NOT HAVE HER BE ABLE TO

11:08:10   1    CORRECT THAT BY HAVING THESE READ OUT OF CONTEXT, I THINK THAT

2    PARAGRAPH 13 SHOULD BE READ, AND THEN THIS CORRECTION SHOULD BE

3    READ BECAUSE THAT'S ALL SHE WAS DOING, AND IT'S CLEAR FROM THE

4    ATTACHMENTS RELATING TO THE INVESTIGATION THAT MS. GOODEN WAS A

5    WITNESS AND THAT MR. TORRES WAS THERE FOR THE INTERVIEWS.

6              THE COURT:  I'M CERTAINLY NOT GOING TO SPECULATE AS

7    TO WHAT MS. SAUCIER WAS ATTEMPTING TO DO WHEN MAKING THIS

8    CORRECTION ON DECEMBER THE 31ST IN DOCUMENT 51, DECEMBER 31,

9    2009 WHICH IS DOCUMENT 51.  I WOULD ASSUME THAT THIS

10   DECLARATION WAS PREPARED IN CONSULTATION WITH AND WITH THE

11   ASSISTANCE OF COUNSEL FROM LITTLER MENDELSON.  I SEE THE COVER

12   PAGE INDICATES A GREG SINDICI AND JUSTIN MORELLO WERE THE

13   ATTORNEYS FOR THE DEFENDANT, AND IF THERE WAS A CORRECTION THAT

14   NEEDED TO BE MADE THROUGHOUT THE DOCUMENT, THEN DEFENSE HAD THE

11:09:25   15   OPPORTUNITY TO DO THAT.  THIS DOCUMENT, DOCUMENT NUMBER 51,

16   MAKES NO MENTION THAT THERE'S ANY CORRECTION THAT NEEDS TO BE

17   MADE TO ANY PARAGRAPH OTHER THAN PARAGRAPH 13.  IN FACT, IN

18   DOCUMENT NUMBER 51, PARAGRAPH THREE, MS. SAUCIER SAYS, IN

19   SIGNING THAT DECLARATION, WHICH IS THE ONE ON SEPTEMBER 25TH,

20   2009 WHICH HAS BEEN IDENTIFIED AS PLAINTIFF'S EXHIBIT 222, SHE

21   SAYS, I HAVE IDENTIFIED TWO ERRORS IN THE DECLARATION.  NOT

22   THREE OR FOUR OR FIVE BUT TWO.  AND BOTH OF THOSE ERRORS FALL

23   WITHIN PARAGRAPH 13.

24             MS. PRITIKIN:  YOU'RE CORRECT, YOUR HONOR.

25             THE COURT:  MS. PRITIKIN, IF I COULD JUST FINISH.

11:10:15   1          MS. PRITIKIN:  SURE.

2          THE COURT:  SHE INDICATES IN PARAGRAPH 13,

3    PLAINTIFF'S EXHIBIT 222, THAT SHE AND DEBORAH GOODEN BEGAN AN

4    INVESTIGATION IN DOCUMENT 51, WHICH IS THE ERRATA DECLARATION.

5    SHE INDICATES THAT IT WAS MR. TORRES WHO ACTUALLY ASSISTED IN

6    THE INVESTIGATION.  PARAGRAPH 14 OF PLAINTIFF'S EXHIBIT 222

7    DOES NOT TALK ABOUT AN INVESTIGATION NOW.  IT NOW TALKS ABOUT

8    REVIEWING THE PIP AND THE INVESTIGATION.  AND SO CONDUCTING THE

9    INVESTIGATION AND REVIEWING INVESTIGATION ARE TWO DIFFERENT

10   THINGS.  SO WE'RE NOT GOING TO ALLOW THE READING OF DOCUMENT

11   51, THE ERRATA DECLARATION.

12          MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.  AND I

13   ACTUALLY WITHDRAW.  MY MEMORY WAS DIFFERENT.  IT'S VERY

14   POSSIBLE SHE TALKED TO BOTH OF THEM.  SO I DON'T KNOW IT'S EVEN

11:11:26  15   INCONSISTENT.  IT'S FINE.  THEY CAN BE READ THE WAY THEY ARE,

16   AND WE'LL DEAL WITH IT.  MY RECOLLECTION WAS THAT SHE CORRECTED

17   THAT PARAGRAPH ALSO.  I THINK IT WAS SUPPOSED TO BE.  BUT YOU

18   KNOW, SHE COULD HAVE TALKED TO MORE THAN ONE PERSON ABOUT THIS.

19   SO IT'S NOT A PROBLEM FOR US.

20          THE COURT:  SO MEMORIES DO HAVE A TENDENCY TO FADE

21   OVER TIME I THINK IS WHAT WE LEARNED HERE TODAY, NOT ONLY BY

22   WITNESSES BUT BY ATTORNEYS, AND EVEN BY JUDGES FROM TIME TO

23   TIME.

24          THE COURT:  SO YOU'RE GOING TO READ THESE PARAGRAPHS.

25   I WOULD SUGGEST YOU JUST READ THE PARAGRAPHS WITHOUT NUMBERING.

11:11:56   1    JUST READ THE PARAGRAPHS.  NOT SUGGEST, I'M INSTRUCTING YOU.

           2    JUST READ THE PARAGRAPH.  FORGET ABOUT NUMBER ONE, NUMBER 14,

           3    NUMBER 15.  IDENTIFY THEM BY EXHIBIT NUMBER, READ IT, AND THEN

           4    WHAT ELSE DO YOU INTEND TO DO IN REBUTTAL?

           5            MR. BOHM:  AFTER WE GET THROUGH THE DECLARATIONS,

           6    ALEJANDRA PEREZ -- IF WE GET A STIPULATION, I DON'T HAVE TO

           7    CALL HER.  IF I CAN GET A STIPULATION THAT AUTOZONE NEVER SPOKE

           8    TO ALEJANDRA PEREZ IN THE COURSE OF DOING THEIR DFEH

           9    INVESTIGATION, I WILL NOT EVEN CALL HER.

          10            MS. PRITIKIN:  WE'LL STIPULATE TO THAT, YOUR HONOR.

          11            MR. BOHM:  WE CAN PUT THAT STIPULATION IN, AND YOU

          12    CAN LET ALEJANDRA SHE WILL NOT BE NEEDED.

          13            THE COURT:  SO WE DON'T HAVE ANY MISUNDERSTANDING,

          14    THE STIPULATION WILL BE -- LET'S WRITE IT OUT.  AUTOZONE AGREES

11:12:50  15    THAT THEY NEVER SPOKE TO MS. ALEJANDRA PEREZ DURING THE COURSE

          16    OF THE DFEH INVESTIGATION.

          17            MR. BOHM:  AS REFERENCED IN EXHIBIT 218.

          18            MS. PRITIKIN:  AS REFERENCED?

          19            THE COURT:  WELL, THERE ISN'T A REFERENCE IN 218 THAT

          20    THERE WAS, THAT THEY SPOKE TO MS. PEREZ.  IS THEY JUST STATE IN

          21    218 THAT THEY DID A THOROUGH INVESTIGATION.  I THINK ALL YOU

          22    HAVE TO DO IS SAY WHAT WE JUST SAID.  AUTOZONE STIPULATES AND

          23    AGREES THAT THEY DID NOT SPEAK TO ALEJANDRA PEREZ DURING THE

          24    COURSE OF THE DFEH OR DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

          25    INVESTIGATION.  PERIOD.  THEN YOU CAN ARGUE ALL YOU WANT IN

11:13:41   1    CLOSING WHAT THAT MEANS.  SO DON'T MAKE A REFERENCE TO 218.

2    THIS IS JUST A FACT.

3              MR. BOHM:  I WANT TO GET THE VERBIAGE.  ARE YOU GOING

4    TO SAY THE STIPULATION?

5              THE COURT:  NO, I'LL LET YOU DO IT.

6              MR. BOHM:  OKAY.  LASTLY, YOUR HONOR, A COUPLE

7    SNIPPETS FROM THE PMK DEPOSITION OF MS. SAUCIER.  I HAVE

8    PROVIDED THE PMK DEPO TRANSCRIPTS FIRST FOR MS. SAUCIER.  THE

9    FIRST LINE SITE WOULD BE PAGE 8, LINE 25.

10             THE COURT:  ON WHICH DAY?

11             MR. BOHM:  THE SKINNY ONE.

12             THE COURT:  THEY'RE BOTH SKINNY.

13             MR. BOHM:  MS. SAUCIER.  THE OTHER IS FOR MS. HOLMES.

14   IT'S 6-10-2011.

11:14:47  15             THE COURT:  WHAT PAGE?

16             MR. BOHM:  PAGE EIGHT, LINE 25, TO PAGE NINE, LINE

17   FOUR, WOULD BE THE FIRST READ.

18             THE COURT:  PAGE EIGHT, LINE 25, WHERE IT SAYS, ALL

19   RIGHT; DO YOU UNDERSTAND?

20             MR. BOHM:  YEP.

21             THE COURT:  THAT YOU ARE HERE TODAY FOR YOUR

22   DEPOSITION.  AND THEN YOU INTEND TO CONCLUDE THAT WHERE?

23             MR. BOHM:  I'D LIKE TO READ THAT PORTION IN TERMS OF

24   THAT SHE WAS THERE AS THE PERSON MOST KNOWLEDGEABLE FOR HER

25   DEPOSITION.

11:15:16   1          THE COURT:  SO YOU'RE GOING TO INCLUDE THAT SNIPPET

2    ON PAGE NINE, LINE FOUR.

3          MR. BOHM:  YES.  THE NEXT CITATION WOULD BE ON PAGE

4    21.

5          THE COURT:  LINE?

6          MR. BOHM:  LINE 13 TO 18.

7          MS. PRITIKIN:  WAIT.  I'M SORRY.  SAY THAT AGAIN.

8          MR. BOHM:  PAGE 21, LINE 13 TO 18.  AND THEN LINE

9    SEVEN TO NINE ON THE FOLLOWING PAGE 22.

10          MS. PRITIKIN:  YOUR HONOR, THERE'S NO QUESTION.  IT'S

11   COLLOQUY OF COUNSEL.

12          THE COURT:  HANG ON.  LET ME JUST LOOK AT IT.  MS.

13   PRITIKIN, THE WAY WE'VE BEEN CONDUCTING THIS TRIAL FOR THE LAST

14   WEEK AND A HALF IS I GET INPUT FROM ONE SIDE.  I'LL TAKE A

11:16:22  15   LOOK, AND THEN I'LL GIVE YOU AN OPPORTUNITY TO RESPOND.

16          MS. PRITIKIN:  I APOLOGIZE.

17          THE COURT:  DON'T WORRY.  WE'RE NOT GOING TO GO

18   FORWARD WITHOUT A RESPONSE.  I JUST WANT TO LOOK AT IT MYSELF.

19          MR. BOHM:  DO YOU NEED THE PAGES AGAIN, YOUR HONOR?

20          THE COURT:  NO. I'VE GOT THEM RIGHT HERE.   OKAY.

21   ANYTHING ELSE?

22          MR. BOHM:  YES, AS A SEPARATE PORTION THEN ON PAGE

23   22, 11 TO 14.

24          THE COURT:  ALL RIGHT.

25          MR. BOHM:  THEN PAGE 23, 21 TO 24, AND THAT WOULD BE

142

11:16:53  1  ALL OF THE READ BACK FOR MS. SAUCIER.

2        THE COURT:  21 THROUGH 24.

3        MR. BOHM:  PAGE 23 LINE 21 TO 24.

4        THE COURT:  ANYTHING ELSE?

5        MR. BOHM:  NOT FROM MS. SAUCIER'S DEPOSITION.

6        THE COURT:  LET'S START AT THE BEGINNING THEN.  PAGE

7  EIGHT, LINE 19; RIGHT?

8        MR. BOHM:  PAGE EIGHT WAS LINE 25.

9        THE COURT:  I'M SORRY.  LINE 25 THROUGH LINE FOUR ON

10  PAGE NINE. MS. PRITIKIN?

11        MS. PRITIKIN:  NO OBJECTION, YOUR HONOR.

12        THE COURT:  OKAY.  ON PAGE 21, STARTING AT LINE 13

13  THROUGH 18, AND THEN ON PAGE 22, LINE SEVEN THROUGH NINE.  DID

14  I GET THAT CORRECT?

11:18:01  15        MR. BOHM:  YES, YOUR HONOR.

16        MS. PRITIKIN:  YOUR HONOR, FIRST OF ALL, LINE 19 HAS

17  NO QUESTION.  IT'S LIKE AN EXPLANATION OF A QUESTION.  THERE'S

18  A COLLOQUY OF COUNSEL.  THERE'S AN OBJECTION THAT IT CALLS FOR

19  SPECULATION, AND SO WE RENEW THAT OBJECTION, AND THE QUESTION I

20  THINK IS AT LINE 13, AND THERE'S ALSO AN ATTORNEY-CLIENT

21  PRIVILEGE OBJECTION WHICH ALSO SHOULD BE SUSTAINED BECAUSE, AS

22  THE COURT KNOWS, THERE ARE ATTORNEYS WHO GIVE ADVICE IN

23  AUTOZONER RELATIONS.

24        THE COURT:  I'M GOING TO OVERRULE THE OBJECTION IN

25  PART.  HERE IS WHAT YOU MAY READ:  YOU MAY READ LINES 13

11:19:10  1  THROUGH 18 ON PAGE 21.  AND THEN YOU MAY GO TO PAGE 22 AND READ

2  LINE NINE ONLY.

3           MS. PRITIKIN:  YOUR HONOR, JUST FOR CLARIFICATION, DO

4  YOU MEAN 13 TO 16 BECAUSE 17 AND 18 IS THE OBJECTION ON

5  PAGE --

6           THE COURT:  YES, 13 THROUGH 16, THAT'S CORRECT.  THEN

7  ON PAGE 22, LINE NINE ONLY, THAT'S THE ANSWER.  I'M OVERRULING

8  THE OBJECTIONS MADE NOW AND AS WELL AS THOSE MADE DURING THE

9  DEPOSITION ON PRIVILEGE AND SPECULATION GROUNDS.

10          MR. BOHM:  MY ONLY RESPONSE IS THAT THE PLAINTIFF

11  BELIEVES IT'S FACTUALLY RELEVANT AND IMPORTANT THAT THE DEFENSE

12  HAS CLAIMED AN ATTORNEY-CLIENT PRIVILEGE WITH REGARD TO WHY

13  AUTOZONER RELATIONS GAVE THE RECOMMENDATIONS THAT THEY DID AND

14  THAT'S -- I MEAN, WHILE THE EXISTENCE OF A PRIVILEGE IS THEIR

11:20:13  15  RIGHT, IT'S NOT IMPROPER TO NOTE THAT THE REASON THEY WON'T SAY

16  IT IS BECAUSE OF THE CLAIM OF ATTORNEY-CLIENT PRIVILEGE.

17          THE COURT:  I DISAGREE WITH YOU.  THE WITNESS IN FACT

18  DID ANSWER THE QUESTION ULTIMATELY AFTER A GIVE-AND-TAKE IN

19  EXCHANGE.  SO YOUR COUNTER OBJECTION, MR. BOHM, TO READING THE

20  WHOLE COLLOQUY AS YOU HAVE REQUESTED IS OVERRULED.  SO YOU MAY

21  READ PAGE 21, LINES 13 TO 16, WHICH IS THE QUESTION, AND THEN

22  YOU MAY GO TO PAGE 22 AND READ THE WITNESS'S ANSWER WHICH IS

23  CONTAINED ON LINE NINE ONLY.

24          MR. BOHM:  OKAY.

25          THE COURT:  MOVING ON TO PAGE 22, FURTHER DOWN, LINES

11:21:00   1   11 THROUGH 14.

2          MS. PRITIKIN:  NO OBJECTION, YOUR HONOR.

3          THE COURT:  NO OBJECTION.  AND THEN ON PAGE 23, LINES

4   21 THROUGH 24.

5          MS. PRITIKIN:  YOUR HONOR, OUR OBJECTION IS THIS

6   CALLS FOR ATTORNEY-CLIENT PRIVILEGE COMMUNICATION BY SAYING, DO

7   YOU KNOW WHAT IT IS, AND THEN YOU CAN'T SAY WHAT IT IS BECAUSE

8   OF THE PRIVILEGE.

9          MR. BOHM:  I'LL WITHDRAW THAT PORTION, YOUR HONOR, IN

10   LIGHT OF YOUR RULING CONCERNING ATTORNEY-CLIENT PRIVILEGE.

11          THE COURT:  ALL RIGHT.  SO WE DEALT WITH MS.

12   SAUCIER.  THERE'S ANOTHER DEPOSITION I HAVE UP HERE.

13          MR. BOHM:  YES, MS. HOLMES.  NOW THIS IS THE

14   DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE ON BEHALF OF

11:21:49  15   AUTOZONE CONCERNING AUTOZONER RELATIONS.  ON PAGE 16, LINE 6 TO

16   9 IS THE PORTION.

17          THE COURT:  OKAY.

18          MR. BOHM:  WE CAN GO ONE AT A TIME.  THERE'S ONLY TWO

19   PORTIONS ON THIS ONE.

20          THE COURT:  ALL RIGHT.  IF YOU'RE GOING TO ASK THIS,

21   THEN IT SHOULD BE SIX THROUGH EIGHT, AND THEN LINE 12 ONLY.

22   NOT THE, I THINK IT'S PRIVILEGE, THEN MR. SINDICI SAYING, I

23   THINK YOU CAN ANSWER YES OR NO.

24          MR. BOHM:  THEN SHE SAYS, OKAY, I DON'T KNOW.

25          THE COURT:  YES.  SO LINES 12 AND 13; ACTUALLY, I

11:22:50   1   THINK YOU SHOULD JUST READ LINE 13.  OKAY, IS JUST

           2   ACKNOWLEDGING WHAT MR. SINDICI SAID, AND THEN NEXT LINE, LINE

           3   13, IS THE ANSWER TO THE QUESTION.

           4          MR. BOHM:  OKAY.

           5          THE COURT:  HANG ON FOR ONE SECOND.  I'M MAKING MY

           6   NOTES HERE.  OKAY.

           7          MR. BOHM:  I'M LOOKING FOR THE PART WHERE SHE

           8   INDICATES -- HOW ABOUT THIS?  HOW ABOUT A STIPULATION THAT MS.

           9   HOLMES WAS THE PERSON MOST KNOWLEDGEABLE ON BEHALF OF AUTOZONE

          10   CONCERNING AUTOZONER RELATIONS?

          11          MS. PRITIKIN:  WE'RE NOT WILLING TO ACCEPT THAT

          12   STIPULATION --

          13          THE COURT:  WELL, WAS SHE OR WASN'T SHE?  IF SHE

          14   WAS --

11:23:37  15          MS. PRITIKIN:  SHE WAS DESIGNATED AS THE -- I WANT TO

          16   GET IT ACCURATELY WHAT IT WAS.

          17          MR. BOHM:  OKAY.  I'LL JUST READ PAGE NINE -- I FOUND

          18   IT.  PAGE NINE, LINE 12 TO 16.

          19          THE COURT:  OKAY.

          20          MR. BOHM:  IN FACT, FOR COMPLETENESS, THEY PROBABLY

          21   WANT ME TO READ DOWN TO 21.

          22          MS. PRITIKIN:  YOUR HONOR, I THINK WHAT SHOULD BE

          23   READ IS LINE 12 THROUGH 21.

          24          THE COURT:  OKAY.  SO NO OBJECTION TO THAT.

          25          MS. PRITIKIN:  YOUR HONOR, I DON'T THINK LINE NINE

11:24:21  1    ABOUT THE NOTICE NEEDS TO GO IN.  I THINK JUST START AT LINE

2    12.

3              THE COURT:  I THINK THAT'S WHAT MR. BOHM SAID.

4              MR. BOHM:  YES.  AND THEN ON PAGE 27 -- AND WE'RE

5    DONE ON THIS LAST PAGE -- LINE ONE TO LINE FIVE, AND THEN LINE

6    TO 16.

7              THE COURT:  ANY OBJECTION?

8              MS. PRITIKIN:  NO, YOUR HONOR.

9              THE COURT:  OKAY.

10             MR. BOHM:  THEN THAT WOULD BE IT FOR MS. HOLMES.

11             THE COURT:  ANY OTHER REBUTTAL EVIDENCE?

12             MR. BOHM:  NOPE.

13             THE COURT:  ALL RIGHT.  AND IT'S NO, YOUR HONOR, NOT

14    NOPE.  WE'RE NOT ON THE STREET, MR. BOHM.

11:25:24  15             MR. BOHM:  I'M SORRY.  NO, YOUR HONOR.

16             THE COURT:  LET'S BRING THE JURY BACK IN.  I DON'T

17    IMAGINE THIS IS GOING TO TAKE MORE THAN 20 MINUTES OR SO.  IS

18    THERE A SURREBUTTAL CASE -- NOT THAT I'M GOING TO GIVE YOU ONE

19    OR ALLOW YOU TO DO IT -- BUT I'M JUST ASKING?

20             MS. PRITIKIN:  NO, YOUR HONOR.

21             THE COURT:  OKAY.  WE'LL FINISH AT ABOUT NOON-ISH, I

22    WOULD THINK, ROUGHLY.  I THINK WE'LL LET THE JURY GO FOR THE

23    DAY.  WE'LL STAY AND WORK ON JURY INSTRUCTIONS, WE'LL USE THAT

24    TIME, AND THE VERDICT FORM.  I STILL HAVE YET TO RULE ON THE

25    JMOL MOTION, RULE 50 MOTION.  HOW IS THAT FOR A PLAN?

11:26:14   1          MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.

           2          THE COURT:  LET'S ASK THE JURY TO RETURN.

           3          (JURY PRESENT.)

           4          THE COURT:  LET THE RECORD REFLECT THAT THE JURY IS

           5   ONCE AGAIN PRESENT.  COUNSEL AND CLIENTS ARE ALSO PRESENT, AND

           6   WE'LL RESUME WITH THE REBUTTAL CASE FOR THE PLAINTIFF.

           7          MR. BOHM:  THANK YOU VERY MUCH, YOUR HONOR.

           8   PLAINTIFF WOULD LIKE TO BEGIN BY READING FROM THE DEPOSITION OF

           9   TANYA HOLMES TAKEN ON JUNE 13TH, 2011.  SHALL I REPEAT THE PAGE

          10   NUMBER?

          11          THE COURT:  I THINK IT WILL ASSIST COUNSEL AND THE

          12   COURT.

          13          MR. BOHM:  BEGINNING PAGE NINE, LINE 12 THROUGH 21,

          14   AND I'M WAITING FOR A VISUAL CUE FROM YOUR HONOR IF I MAY

11:27:57  15   PROCEED.

          16          THE COURT:  YOU MAY PROCEED.

          17          MR. BOHM:  "QUESTION:  YOU HAVE BEEN DESIGNATED AS

          18      THE PERSON MOST KNOWLEDGEABLE REGARDING THE SCOPE OF

          19      AUTOZONER RELATIONS.  DO YOU UNDERSTAND THAT?

          20          ANSWER:  YES.

          21          MR. SINDICI:  SCOPE OF OPERATIONS.

          22          THE WITNESS:  OPERATIONS.

          23          BY MR. MOORE:  QUESTION:  SCOPE OF OPERATIONS AT

          24   AUTOZONE?

          25          ANSWER:  AUTOZONER RELATIONS OPERATIONS."

148

11:28:34   1          TURNING NOW TO PAGE 16, YOUR HONOR, LINE SIX TO EIGHT

2    AND THEN LINE 13.

3          THE COURT:  YOU MAY PROCEED.

4          MR. BOHM:  "QUESTION:  DO YOU KNOW IF AUTOZONER

5       RELATIONS MADE A SPECIFIC RECOMMENDATION WITH REGARD TO

6       ROSARIO JUAREZ'S EMPLOYMENT?

7          ANSWER:  I DON'T KNOW."

8          PAGE 27, LINE ONE TO FIVE.

9          THE COURT:  YOU MAY PROCEED.

10          MR. BOHM:  "QUESTION:  THAT THE EMPLOYEE CALLS IN TO

11       THE HOT LINE, IN FACT THEY'RE INSTRUCTED TO CALL IN TO THE

12       HOT LINE, RIGHT?

13          ANSWER:  THEY ARE INSTRUCTED TO CALL IN TO THE HOT

14       LINE IF THEY HAVE AN ISSUE."

11:29:32   15          QUESTION -- I'M SORRY.  THE NEXT READ BACK WOULD BE

16    13 TO 16, YOUR HONOR.

17          THE COURT:  YOU MAY PROCEED.

18          MR. BOHM:  "SO THE EMPLOYEE'S ARE TOLD TO CALL INTO

19       AUTOZONE'S LEGAL DEPARTMENT IF THEY HAVE A COMPLAINT,

20       RIGHT?

21          ANSWER:  AUTOZONER RELATIONS, YES, LEGAL DEPARTMENT."

22          MR. BOHM:  YOUR HONOR, I'D LIKE TO READ FROM EXHIBIT

23    322, I'M SORRY 222.  I'M GOING TO PROCEED.

24          THE COURT:  YOU MAY.

25          MR. BOHM:  YOU KNOW, YOUR HONOR, BECAUSE I DON'T WANT

149

11:30:19   1   TO DO ANYTHING THAT WE DIDN'T SAY, I HAD ALSO INDICATED I HAD

2   WANTED TO READ THE FIRST SENTENCE THAT SAYS "I".

3           THE COURT:  YES.

4           MR. BOHM:  I, STACI SAUCIER, DECLARE FOR THE PAST

5   EIGHT YEARS, I HAVE BEEN AN EMPLOYEE OF DEFENDANT AUTOZONE INC.

6   AUTOZONE AS A REGIONAL HUMAN RESOURCE MANAGER.  BEFORE THAT, I

7   WAS EMPLOYED BY AUTOZONE FROM 2003 THROUGH 2005 AS A DIVISIONAL

8   HUMAN RESOURCE MANAGER.  AS A RESULT OF BEING EMPLOYED IN THESE

9   POSITIONS, I HAVE PERSONAL KNOWLEDGE OF ROSARIO JUAREZ'S

10   EMPLOYMENT HISTORY WITH AUTOZONE.  AS SUCH, I HAVE PERSONAL

11   KNOWLEDGE OF THE FACTS SET FORTH HEREIN AND COULD AND WOULD

12   TESTIFY THERETO IN ANY COURT OF LAW.

13           IN FEBRUARY, 2006, I, ALONG WITH MS. GOODEN REVIEWED

14   MS. JUAREZ'S PIP AND THE INVESTIGATION INTO MS. JUAREZ

11:31:39   15   ENCOURAGING EMPLOYEES TO QUIT.  DAN MERCHANT AND I ALSO

16   REVIEWED THE PERFORMANCE OF MS. JUAREZ'S STORE IN COMPARISON TO

17   OTHER STORES WITHIN HER DISTRICT AND AGAINST HER YEAR OVER YEAR

18   SALES.  ATTACHED TO DEFENDANT'S NOTICE OF LODGEMENT AS EXHIBIT

19   12 -- AND YOUR HONOR, FOR THE RECORD, THAT REFERENCE IS

20   DEFENDANT'S 318 WHICH WE WOULD JOIN IN THE DEFENSE IN HAVING

21   ADMITTED INTO EVIDENCE AS ALREADY DISCUSSED.

22           THE COURT:  YES, 318 MAY BE ADMITTED.

23           (EXHIBIT 318 ADMITTED.)

24   BY MR. BOHM:

25   Q.  I'LL READ THAT AGAIN JUST FOR THE MOMENT.  ATTACHED TO

11:32:25   1   DEFENDANT'S NOTICE OF LODGEMENT AS EXHIBIT 12 ARE TRUE AND

         2   CORRECT COPIES OF SUMMARIES SHOWING MS. JUAREZ'S STORE

         3   PERFORMANCE AND THE PERFORMANCE OF OTHER STORES WITHIN HER

         4   DISTRICT.  THESE DATA CONTAINED IN THESE DOCUMENTS SHOW THAT

         5   NOT ONLY WAS MS. JUAREZ'S STORE SHOWING LOWER YEAR OVER YEAR

         6   SALES, BUT HER STORE WAS ALSO NOT MEETING ITS SALES TARGETS.

         7   MS. JUAREZ'S STORE WAS ALSO UNDERPERFORMING COMPARED TO OTHER

         8   STORES WITHIN HER DISTRICT.

         9           NEXT PARAGRAPH:  AFTER REVIEWING MS. JUAREZ'S PIP,

        10   THE RESULTS OF THE INVESTIGATION INTO MS. JUAREZ ENCOURAGING

        11   EMPLOYEES TO QUIT AND MS. JUAREZ'S STORE PERFORMANCE, I

        12   SUBMITTED THE INFORMATION REGARDING THESE TOPICS TO AUTOZONER

        13   RELATIONS.  I NOTICED -- I'M SORRY -- I NOTED MS. JUAREZ WAS

        14   NOT MEETING AUTOZONE'S PERFORMANCE EXPECTATIONS FOR A STORE

11:33:34  15   MANAGER.  AUTOZONER RELATIONS RECOMMEND THAT SHE BE DEMOTED TO

        16   PART SALES MANAGER AND OUR REGIONAL DAN MERCHANT AND I AGREED.

        17           I'M SORRY.  ONE MOMENT, YOUR HONOR.  I DECLARE UNDER

        18   PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF

        19   AMERICA AND THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE

        20   AND CORRECT, EXECUTED THIS 25TH DAY OF SEPTEMBER, 2009 AT SAN

        21   MARCOS, CALIFORNIA, SIGNED, STACI SAUCIER.

        22           YOUR HONOR, I'D LIKE TO NOW READ FROM EXHIBIT 223,

        23   SIGNED JUNE 23RD, 2011.

        24           THE COURT:  YOU MAY.

        25           MR. BOHM:  AND YOUR HONOR, I WOULD SUGGEST WE DON'T

11:34:39   1    NEED TO REPEAT THE FIRST PARAGRAPH; IS THAT OKAY?

2              THE COURT:  THAT'S UP TO YOU.  IT'S YOUR REBUTTAL

3    CASE.

4              MR. BOHM:  ALL RIGHT.  I, STACI SAUCIER, DECLARE, IN

5    FEBRUARY 2006, I, ALONG WITH MARC TORRES, REVIEWED THE

6    INVESTIGATION INTO JUAREZ ENCOURAGING EMPLOYEES TO QUIT AS WELL

7    AS JUAREZ'S EARLIER PIP.

8              I THINK THAT'S ALL I NEED TO READ FROM THE SECOND ONE

9    UNLESS YOUR HONOR NEEDS ME TO REPEAT.

10             MS. PRITIKIN:  YOUR HONOR.

11             THE COURT:  I THINK THE UNDERSTANDING IS THAT YOU

12   WOULD GO THROUGH PARAGRAPHS 13 AND 14.

13             MR. BOHM:  SURE.  YES, SIR.  ALL RIGHT.

14             IN FEBRUARY, 2006, I, ALONG WITH MARC TORRES REVIEWED

11:35:41  15   THE INVESTIGATION INTO JUAREZ ENCOURAGING EMPLOYEES TO QUIT AS

16   WELL AS JUAREZ'S EARLIER PIP.  DAN MERCHANT AND I ALSO REVIEWED

17   THE PERFORMANCE OF JUAREZ'S STORES IN COMPARISON TO OTHER

18   STORES WITHIN HER DISTRICT AND AGAINST HER YEAR OVER YEAR

19   SALES.  ATTACHED HERETO AS EXHIBIT I -- AGAIN, THAT WOULD BE

20   EXHIBIT 318 FOR THE RECORD -- ARE TRUE AND CORRECT COPIES OF

21   SUMMARIES SHOWING JUAREZ'S STORE PERFORMANCE AND THE

22   PERFORMANCE OF OTHER STORES WITHIN HER DISTRICT.  THE DATA

23   CONTAINED IN THESE DOCUMENTS SHOWS THAT NOT ONLY WAS JUAREZ'S

24   STORE SHOWING LOWER YEAR OVER YEAR SALES BUT HER STORE WAS ALSO

25   NOT MEETING ITS SALES TARGETS.  JUAREZ'S STORES WAS ALSO

11:36:22  1    UNDERPERFORMING COMPARED TO OTHER STORES WITHIN HER DISTRICT.

2              NEXT PARAGRAPH:  AFTER REVIEWING THE RESULTS OF THE

3    INVESTIGATION INTO JUAREZ'S ENCOURAGING EMPLOYEES TO QUIT,

4    JUAREZ EARLIER -- JUAREZ'S EARLIER PIP AND JUAREZ'S HISTORICAL

5    STORE PERFORMANCE, I SUBMITTED THE INFORMATION REGARDING THESE

6    TOPICS TO AUTOZONE'S LEGAL DEPARTMENT FOR ADVICE AND COUNSEL.

7    AFTER RECEIVING ADVICE FROM THE LEGAL DEPARTMENT, REGIONAL

8    MANAGER, DAN MERCHANT, AND I AGREED THAT JUAREZ SHOULD BE

9    DEMOTED TO PART SALES MANAGER DUE TO A LOSS OF CONFIDENCE IN

10   HER ABILITY TO PERFORM SATISFACTORILY IN THE ROLE OF A STORE

11   MANAGER.  I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF

12   THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA THAT

13   THE FOREGOING IS TRUE AND CORRECT.  EXECUTED THIS 23RD DAY OF

14   JUNE, 2011, AT SAN MARCOS, SIGNED, STACI SAUCIER.

11:37:28  15             LASTLY, YOUR HONOR, I'D LIKE TO READ FROM THE

16   DEPOSITION OF STACI SAUCIER, DATED JUNE 10TH, 2011.  BEGINNING

17   YOUR HONOR WITH PAGE EIGHT, LINE 25 TO PAGE 9, FOUR.

18             THE COURT:  YOU MAY PROCEED.

19             MR. BOHM:  "QUESTION:  ALL RIGHT.  DO YOU UNDERSTAND

20       THAT YOU ARE HERE TODAY FOR YOUR DEPOSITION AS THE PERSON

21       MOST KNOWLEDGEABLE ON BEHALF OF AUTOZONE CONCERNING TWO

22       SUBJECTS?

23             ANSWER:  YES."

24             PAGE 21, LINE 13 TO 16.  "QUESTION:  AS YOU SIT HERE

25       TODAY, AS THE PERSON MOST KNOWLEDGEABLE ON BEHALF OF

11:38:26  1    AUTOZONE, DO YOU KNOW WHY AUTOZONER RELATIONS MADE A

        2    RECOMMENDATION FOR THE DEMOTION OF ROSARIO JUAREZ?"

        3    ANSWER -- PAGE 22 LINE 9 -- "NO."

        4         PAGE 22, LINE 11 TO 14.

        5         "QUESTION:  YOU -- STILL TODAY, YOU DON'T KNOW WHY

        6    AUTOZONER RELATIONS MADE A RECOMMENDATION TO DEMOTE

        7    ROSARIO JUAREZ?

        8         ANSWER:  CORRECT."

        9         THE PLAINTIFF RESTS.  OH, THERE'S A STIPULATION I

       10    FORGOT TO READ.  SORRY, YOUR HONOR.  ONE MORE THING.

       11    STIPULATION BETWEEN THE PARTIES:  AUTOZONE STIPULATES AND

       12    AGREES THAT DURING THE COURSE OF -- I'M SORRY.

       13         AUTOZONE STIPULATES AND AGREES THAT THEY DID NOT

       14    SPEAK TO ALEJANDRA PEREZ DURING THE COURSE OF THE DFEH OR

11:39:32 15    DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING INVESTIGATION.

       16         NOW THE PLAINTIFF RESTS.

       17         THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, YOU

       18    JUST HEARD A STIPULATION ENTERED INTO BETWEEN THE PARTIES.  YOU

       19    SHOULD CONSIDER THE STIPULATION AS A FACT AS BEING PROVEN AND

       20    THAT THE PARTIES DON'T ACTUALLY HAVE TO PRESENT EVIDENCE TO

       21    PROVE IT.  NOW YOU'VE HEARD THAT PLAINTIFF HAS RESTED.  AND

       22    LADIES AND GENTLEMEN, THAT DOES CONCLUDE THE EVIDENCE PORTION

       23    OF THIS TRIAL.  IT IS 11:40, AND YOU'RE GOING TO GET A BREAK

       24    TODAY.  YOU'RE GOING TO BE ABLE TO LEAVE EARLY TODAY.  WE HAVE

       25    SOME IMPORTANT BUSINESS WE NEED TO CLEAN UP AND TAKE CARE OF

11:40:16   1   BEFORE THE CASE GETS PRESENTED TO YOU, AND THAT'S WHAT WE'RE

2   GOING TO DO RIGHT NOW.  IT'S PROBABLY MORE IMPORTANT THAN EVER

3   THAT YOU DO NOT DISCUSS THIS CASE.  I KNOW YOU HAVEN'T

4   THROUGHOUT THE COURSE OF THIS TRIAL.  I BELIEVE YOU'VE BEEN

5   SCRUPULOUSLY HONORING THE ADMONITION.  BUT IT'S MORE IMPORTANT

6   THAN EVER THAT YOU KEEP AN OPEN MIND ABOUT THIS CASE, EVEN

7   THOUGH YOU'VE HEARD ALL THE EVIDENCE, UNTIL YOU GET BACK IN THE

8   DELIBERATION ROOM WITH FELLOW JURORS AND HAVE A FULL AND FRANK

9   OPEN DISCUSSION WITH EVERYONE PRESENT.

10          SO TOMORROW WE WILL RESUME AT 8:00 IN THE MORNING.

11   IT IS MY EXPECTATION AT THAT TIME THAT I WILL INSTRUCT YOU ON

12   THE LAW.  COUNSEL FOR BOTH SIDES WILL MAKE THEIR CLOSING

13   ARGUMENTS TO YOU.  I WILL THEN GIVE YOU SOME VERY BRIEF

14   CONCLUDING JURY INSTRUCTIONS.  THEN THE CASE WILL BE YOURS FOR

11:41:10  15   A DECISION, AND YOU'LL GO BACK INTO THAT JURY DELIBERATION ROOM

16   THAT YOU EACH FREQUENTED THROUGHOUT THE COURSE OF THE TRIAL AND

17   BEGIN YOUR DELIBERATION.

18          SO LADIES AND GENTLEMEN, ENJOY THE REST OF YOUR DAY.

19   YOU'RE GETTING AN EARLY BREAK TODAY.  AGAIN, PLEASE DO NOT

20   DISCUSS THIS CASE AMONG YOURSELVES OR WITH ANYONE ELSE AND

21   PLEASE DO NOT DO ANY INDEPENDENT INVESTIGATION ON YOUR OWN.

22   ALL RIGHT.  YOU'RE EXCUSED FOR THE EVENING.  WE'LL SEE YOU

23   TOMORROW AT 8:00.

24          (JURY ABSENT.)

25          MAY THE RECORD REFLECT THE JURY HAS DEPARTED THE

11:42:16   1   COURTROOM AND COUNSEL AND CLIENTS ARE STILL PRESENT.  WHY DON'T

2   WE TAKE A BRIEF TEN-MINUTE RECESS.  GATHER YOUR THOUGHTS.  I'LL

3   GATHER MINE, MY JURY INSTRUCTIONS AND THE VERDICT FORMS, AND

4   WE'LL BEGIN THAT PROCESS.  WE'LL TAKE A TEN-MINUTE RECESS.

5   IT'S 11:40.  WE'LL COME BACK AT 11:50.

6           MR. BOHM:  I WAS GOING TO REQUEST IF POSSIBLE AN

7   EXTRA FIVE MINUTES.  I HAVE TO CALL MY WIFE ABOUT SOMETHING.

8           THE COURT:  EXTRA FIVE MINUTES.  WE'LL COME BACK AT

9   11:45 THEN, NO 11:50?

10           MR. BOHM:  THAT'S EIGHT MINUTES.

11           THE COURT:  11:55, WE'LL COME BACK AT 11:55 THEN.

12   HOW'S THAT?  ALL RIGHT.

13           (RECESS.)

14           THE COURT:  LET'S GET STARTED HERE WITH THE JURY

12:00:10  15   INSTRUCTION CONFERENCE.  COUNSEL WERE BOTH PROVIDED I BELIEVE

16   THE FRIDAY BEFORE THE TRIAL STARTED, IF I'M NOT MISTAKEN, A

17   COPY OF THE JURY INSTRUCTIONS THAT I'M PROPOSING.  IT'S

18   DOCUMENT NUMBER 244.  I PRESUME BY NOW COUNSEL HAVE HAD THE

19   OPPORTUNITY TO VIEW THOSE JURY INSTRUCTIONS AND HAVE EITHER

20   OBJECTIONS OR AGREE WITH THE INSTRUCTIONS.  THE ORDER THAT YOU

21   HAVE THEM IS THE ORDER I WOULD PROPOSE GIVING THEM.  SO LET'S

22   JUST GO THROUGH, AND WE'LL GO THROUGH THESE ONE BY ONE, AND AT

23   THE END, I'LL SEE IF THERE'S ANY ADDITIONAL INSTRUCTIONS THAT

24   PLAINTIFF WANTS, ANY ADDITIONAL INSTRUCTIONS THAT DEFENSE

25   WANTS, AND GIVE YOU EACH AN OPPORTUNITY TO MAKE YOUR CASE AND

12:01:12  1   OR OBJECT?

2           MS. PRITIKIN:  YOUR HONOR, IN MY ONGOING EFFORT TO

3   MAKE THINGS GO QUICKLY AS POSSIBLE WITHOUT DISCARDING JUSTICE,

4   I JUST WANT THE COURT TO KNOW THE DEFENDANT HAS NO OBJECTION AT

5   ALL TO THE COURT'S PROPOSED INSTRUCTIONS AND THE ORDER IN WHICH

6   THEY APPEAR.

7           THE COURT:  PERFECT.  MR. BOHM, ARE YOU GOING TO

8   FOLLOW SUIT?

9           MR. BOHM:  WE HAVE ISSUES.  BUT THEY'RE NOT

10   OBJECTIONS TO THE ACTUAL INSTRUCTIONS WHICH YOUR HONOR HAS

11   PROPOSED.  IT'S JUST SOME OF THEM HAVE BLANKS.  SOME OF THEM

12   ARE NOT NECESSARY.

13           THE COURT:  WE SHOULD GO THROUGH THOSE AND FILL IN

14   THOSE BLANKS, AND SOME OF THEM HAVE BRACKETS DEPENDING ON HOW

12:01:50  15   THE EVIDENCE CAME OUT.  SO FOR EXAMPLE, IF WE GO TO -- WELL,

16   THAT WAS THE PRELIMINARY INSTRUCTION.  LET'S GO TO --

17           MR. BOHM:  THE FIRST ONE I SAW AN ISSUE IS NUMBER

18   FIVE.

19           THE COURT:  COURT'S INSTRUCTION NUMBER FIVE?

20           MR. BOHM:  YES, YOUR HONOR.

21           THE COURT:  SO WITH RESPECT TO ONE THROUGH FOUR, NO

22   OBJECTION.

23           MR. BOHM:  YES, YOUR HONOR.

24           THE COURT:  SO WE'RE AT COURT'S INSTRUCTION NUMBER

25   FIVE.  IT'S THE RETALIATION INSTRUCTION?

12:02:22   1          MR. BOHM:  CORRECT.

        2          THE COURT:  YOUR OBJECTION IS?

        3          MR. BOHM:  I BELIEVE THIS INSTRUCTION IS CORRECT IF

        4   WE INCLUDE PREGNANCY.  IT'S, JUAREZ OPPOSED AND REPORTED

        5   UNLAWFUL DISCRIMINATION AND HARASSMENT BASED ON SEX AND

        6   PREGNANCY, NOT JUST SEX ALONE, AND IT'S THE SAME FOR,

        7   THROUGHOUT THE INSTRUCTION.

        8          MS. PRITIKIN:  YOUR HONOR, COURT'S INSTRUCTION SIX

        9   ADDRESS EXACTLY THAT, RIGHT?

       10          MR. BOHM:  INSTRUCTION SIX IS ON FAILURE TO PREVENT

       11   WHICH IS A DIFFERENT CLAIM.

       12          THE COURT:  SO WITH RESPECT TO NUMBER FIVE, MR. BOHM,

       13   YOU WOULD PROPOSE THAT, ROSARIO JUAREZ CLAIMS THAT AUTOZONE

       14   RETALIATED AGAINST HER BECAUSE SHE OPPOSED AND REPORTED

12:03:16  15   UNLAWFUL DISCRIMINATION AND HARASSMENT BASED ON SEX AND

       16   PREGNANCY?

       17          MR. BOHM:  CORRECT.

       18          THE COURT:  THAT SEEMS TO BE ACCURATE.

       19          MS. PRITIKIN:  NO OBJECTION, YOUR HONOR.

       20          THE COURT:  AND THEN TO ESTABLISH THIS CLAIM,

       21   PARAGRAPH NUMBER ONE, OPPOSED AND REPORTED UNLAWFUL

       22   DISCRIMINATION AND HARASSMENT BASED ON SEX AND PREGNANCY.

       23          MR. BOHM:  YOUR HONOR, TO THE EXTENT IT'S EASIER AND

       24   CONSISTENT, IT LOOKS LIKE IN ALL THE OTHER ONES IF YOU JUST PUT

       25   PREGNANCY SLASH SEX, THAT'S FINE WITH ME TO KEEP IT CONSISTENT.

```
12:03:46   1              MS. PRITIKIN:  WELL, I THINK THAT MAKES FOR AWKWARD

           2    READING, YOUR HONOR.  SO I THINK "AND" MAKES MORE SENSE.

           3              THE COURT:  SO IN PARAGRAPH ONE, SEX AND PREGNANCY,

           4    AND THEN IN PARAGRAPH THREE, HARASSMENT BASED ON SEX AND

           5    PREGNANCY; RIGHT?

           6              MR. BOHM:  WELL, ACTUALLY, ONCE WE GET TO THE

           7    NUMBERED ITEMS, YOUR HONOR, IT HAS TO BE AN "AND OR" BECAUSE

           8    TECHNICALLY MS.JUAREZ HAS PREVAILED IN HER CASE IF SHE

           9    PROVES --

          10              THE COURT:  EITHER NOT BOTH.

          11              MR. BOHM:  I'M SORRY?

          12              THE COURT:  EITHER OF THEM BUT NOT BOTH.

          13              MR. BOHM:  CORRECT.  IT COULD BE BOTH, BUT IT DOESN'T

          14    HAVE TO BE.  IT COULD BE EITHER.

12:04:24  15              THE COURT:  DO YOU AGREE?  IF SHE PROVES

          16    DISCRIMINATION BASED ON SEX BUT NOT PREGNANCY SHE WINS OR VICE

          17    VERSA.  I THINK HE'S CORRECT.

          18              MS. PRITIKIN:  I THINK "AND OR," YOUR HONOR.

          19              THE COURT:  "AND OR" OR JUST "OR"?  I THINK "OR"

          20    BECAUSE "AND" WOULD SUGGEST THAT PERHAPS IT HAS TO BE BOTH.

          21              MR. BOHM:  AGREED.

          22              THE COURT:  SO "OR" PREGNANCY, CORRECT, "OR"

          23    PREGNANCY FOR PARAGRAPH THREE.  AND THAT WOULD BE THE ONLY

          24    CHANGES TO THAT INSTRUCTION NUMBER FIVE THEN.

          25              MR. BOHM:  CORRECT, YOUR HONOR.
```

12:05:02  1                 THE COURT:  ANY OTHER OBJECTIONS TO THE

          2   INSTRUCTIONS?

          3                 MS. PRITIKIN:  NO, YOUR HONOR.

          4                 MR. BOHM:  THE NEXT INSTRUCTION THAT WOULD NEED TO BE

          5   ADDRESSED WOULD BE NUMBER SEVEN, YOUR HONOR.

          6                 THE COURT:  SO NO OBJECTION TO SIX THEN?

          7                 MR. BOHM:  NO OBJECTION TO SIX.

          8                 THE COURT:  NUMBER SEVEN, JUAREZ PROTECTED

          9   ACTIVITIES, AND THEN WE NEED TO INDICATE WHAT PROTECTED

         10   ACTIVITIES ARE.

         11                 MR. BOHM:  CORRECT.

         12                 THE COURT:  HOW DID I MISS THAT?  I EVEN SPELLED

         13   SOMETHING WRONG.  SO THE PROTECTED ACTIVITIES WOULD BE -- WHAT

         14   ARE YOU SUGGESTING THAT LANGUAGE BE IN THAT SLOT?

12:05:46 15                 MR. BOHM:  WELL --

         16                 THE COURT:  REPORTING DISCRIMINATION?

         17                 MR. BOHM:  REPORTING, HARASSMENT, DISCRIMINATION, TO

         18   HER EMPLOYER, AND THAT WOULD BE AN, "OR," HARASSMENT OR

         19   DISCRIMINATION.

         20                 MS. PRITIKIN:  YOUR HONOR, I THINK THE WORDS

         21   PROTECTED ACTIVITIES COME OUT, AND IT IS THAT JUAREZ'S

         22   REPORTING HARASSMENT DISCRIMINATION TO HER EMPLOYER WAS A

         23   SUBSTANTIAL MOTIVATING REASON.

         24                 THE COURT:  I AGREE WITH YOU ON THAT.

         25                 MR. BOHM:  THE NEXT PROTECTED ACTIVITY WOULD BE

                                                                         160

```
12:06:27   1   FILING OR, I'M SORRY, SUBMITTING A CHARGE OF DISCRIMINATION.

           2              THE COURT:  TO DFEH?

           3              MR. BOHM:  TO A GOVERNMENT ENTITY BECAUSE TECHNICALLY

           4   ON THE DFEH SHE DUEL FILED WITH THE EOC AND THAT INDICATES THAT

           5   ON THERE.

           6              THE COURT:  MS. PRITIKIN, ANY OBJECTION TO THAT

           7   INCLUSION LANGUAGE?

           8              MS. PRITIKIN:  NO, YOUR HONOR.  BUT I DO NOTE THAT IN

           9   THE VIOLATION OF PUBLIC POLICY DESCRIPTION, IT INCLUDES

          10   CHILDBIRTH AND FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS OR

          11   ENGAGE IN THE INTERACTIVE PROCESS WHICH I THINK SHOULD BE

          12   STRICKEN BECAUSE THEY'RE NOT PART OF THE ALLEGATION IN THIS

          13   CASE.

          14              THE COURT:  CHILDBIRTH AND INTERACTIVE PROCESS?

12:07:12  15              MS. PRITIKIN:  THAT'S CORRECT, AND IT'S FAILURE TO

          16   PROVIDE REASONABLE ACCOMMODATIONS.

          17              THE COURT:  THAT'S TRUE TOO.  THERE'S BEEN NO

          18   DISCUSSION THAT THERE'S BEEN A FAILURE TO PROVIDE REASONABLE

          19   ACCOMMODATIONS.  IT'S JUST GENDER AND PREGNANCY.  SO WE SHOULD

          20   STRIKE CHILDBIRTH, FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS

          21   OR ENGAGE IN INTERACTIVE PROCESS.  DO YOU AGREE MR. BOHM?

          22              MR. BOHM:  I DO.  IT'S JUST THAT ANOTHER ISSUE WOULD

          23   BE RETALIATION IS ALSO AS A MATTER OF LAW A VIOLATION OF --

          24   THAT'S THE THIRD PROTECTIVE CATEGORY, HER GENDER, HER

          25   PREGNANCY, AND THE FACT SHE ENGAGED IN PROTECTED ACTIVITIES.
```

```
12:07:49    1    SO I WOULD SUGGEST, IT IS A VIOLATION OF PUBLIC POLICY TO

            2    DISCHARGE SOMEONE -- OH, AND IT SHOULD BE -- TECHNICALLY, THIS

            3    SAYS WRONGFUL DISCHARGE.  BUT UNDER THE LAW, DEMOTION IS ALSO A

            4    BASIS FOR A PUBLIC POLICY ISSUE.  SO THIS TECHNICALLY SHOULD BE

            5    WRONGFUL DEMOTION, SLASH, DISCHARGE IN VIOLATION OF PUBLIC

            6    POLICY, AND THEN IT SHOULD BE ROSARIO JUAREZ CLAIMS SHE WAS

            7    DEMOTED OR DISCHARGED FROM EMPLOYMENT FOR REASONS THAT VIOLATE

            8    A PUBLIC POLICY.  IT IS A VIOLATION OF PUBLIC POLICY TO

            9    DISCHARGE SOMEONE -- I'M SORRY -- TO DEMOTE OR DISCHARGE

           10    SOMEONE FROM EMPLOYMENT BECAUSE OF HER GENDER, PREGNANCY OR

           11    PROTECTED ACTIVITIES, WHICH I GUESS WE'LL EXPLAIN BELOW.  TO

           12    ESTABLISH THIS CLAIM, ROSARIO, BLAH, BLAH, BLAH.

           13            MS. PRITIKIN:  YOUR HONOR, I HAVE TO SAY, I DON'T

           14    HAVE THE CASES IN FRONT OF ME, AND THE FIFTH CAUSE OF ACTION,

12:08:51   15    WRONGFUL TERMINATION AND VIOLATION OF PUBLIC POLICY IS ONLY

           16    TERMINATION.  THERE'S NO REFERENCE TO DEMOTION, FIRST OF ALL.

           17    AND SECOND OF ALL, I HAVE TO LOOK AT THE CASE BECAUSE I THOUGHT

           18    THERE'S NO PUBLIC POLICY VIOLATION FOR RETALIATION, THAT THAT'S

           19    SOMETHING THAT'S A STATUTORY CLAIM ONLY.  AND IT'S NOT,

           20    RETALIATION IS NOT ALLEGED IN THE FIFTH CAUSE OF ACTION,

           21    EITHER.  IT SAYS, PLAINTIFF'S EMPLOYMENT, TERMINATION WAS BASED

           22    ON HER GENDER, PREGNANCY, CHILDBIRTH, FAILURE TO PROVIDE

           23    REASONABLE ACCOMMODATION AND THE NEED FOR THE INTERACTIVE

           24    PROCESS VIOLATED AN IMPORTANT PUBLIC POLICY.

           25            THE COURT:  THAT'S IN THE FIFTH CAUSE OF ACTION?
```

162

12:09:33  1          MS. PRITIKIN:  THAT'S CORRECT, YOUR HONOR.  IT'S

      2  LIMITED TO THAT.

      3          THE COURT:  SHE'S CORRECT.

      4          MR. BOHM:  I WAS JUST GOING TO SAY, WHICH VERSION OF

      5  THE COMPLAINT WAS SHE LOOKING AT.

      6          THE COURT:  IT'S THE SECOND AMENDED COMPLAINT.

      7          MR. BOHM:  FOR THE RECORD, WE WOULD SUBMIT THAT IT IS

      8  A LEGAL CLAIM, ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC

      9  POLICY, AND WE WOULD AMEND TO CONFORM TO PROOF VIS-A-VIS THAT

     10  CLAIM IN AS MUCH AS THAT CLAIM ECHOES THE PREGNANCY

     11  DISCRIMINATION, DEMOTION CLAIM.  IT ENDS UP BEING DUPLICATIVE

     12  IF WE HIT ON ALL CAUSES OF ACTION, BUT TECHNICALLY,  WE COULD

     13  AMEND TO CONFORM TO PROOF.  SO I WOULD MAKE THAT REQUEST AS TO

     14  AN ADVERSE EMPLOYMENT ACTION IN VIOLATION OF PUBLIC POLICY.

12:10:43 15          THE COURT:  I'M GOING TO DENY THE REQUEST TO CONFORM

     16  THE SECOND AMENDED COMPLAINT TO THE PROOF.  WITH RESPECT TO

     17  INSTRUCTION NUMBER SEVEN IT WILL READ, ROSARIO JUAREZ CLAIMS

     18  SHE WAS DEMOTED OR DISCHARGED FROM EMPLOYMENT FOR REASONS THAT

     19  VIOLATE A PUBLIC POLICY.  IT IS A VIOLATION OF PUBLIC POLICY TO

     20  DEMOTE OR DISCHARGE SOMEONE FROM EMPLOYMENT BECAUSE OF HER

     21  GENDER OR PREGNANCY.  PERIOD.

     22          MS. PRITIKIN:  YOUR HONOR, WITH ALL DUE RESPECT, I

     23  BELIEVE THE DEMOTION SHOULD BE DELETED FROM THIS E-MAIL, THIS

     24  INSTRUCTION, BECAUSE NUMBER ONE, IT'S NOT ALLEGED IN THE FIFTH

     25  CAUSE OF ACTION WHICH IS WRONGFUL TERMINATION.  THAT'S THE NAME

```
12:11:29   1   OF THE CAUSE OF ACTION NOT WRONGFUL DEMOTION.

           2            THE COURT:  YOU'RE RIGHT.  MS. PRITIKIN IS CORRECT.

           3   SO MR. BOHM, I THINK YOUR OBJECTIONS ARE NOTED FOR THE RECORD,

           4   BUT WE'LL LEAVE OUT THE DEMOTION.  AND THEN ON PARAGRAPH THREE,

           5   THAT JUAREZ'S REPORTING HARASSMENT OR DISCHARGE --

           6            MS. PRITIKIN:  I THINK THAT'S DISCRIMINATION, YOUR

           7   HONOR.

           8            THE COURT:  DISCRIMINATION. I CAN'T EVEN READ MY OWN

           9   WRITING ANYMORE.  DISCRIMINATION TO HER EMPLOYER -- I THINK

          10   I'LL PUT AUTOZONE.  TO AUTOZONE.  OR HOW WOULD YOU LIKE,

          11   SUBMITTING A CLAIM TO A GOVERNMENT AGENCY?  A CLAIM OF

          12   DISCRIMINATION?

          13            MR. BOHM:  JUST SO WE'RE CLEAR BECAUSE NOW WE'RE

          14   CHANGING THIS, IF WE PUT IN THE LIST I ALREADY STARTED, THOSE

12:12:37  15   PROTECTED ACTIVITIES ARE FOR A RETALIATION CLAIM.  YOUR HONOR'S

          16   RULING HERE SEEMS TO BE THAT THIS IS VIOLATION OF PUBLIC POLICY

          17   AS TO DISCRIMINATION ONLY.  SO I'M NOT -- I'M HAPPY TO GIVE YOU

          18   THE LIST, BUT IT SEEMS LIKE WE'RE CHANGING THIS -- I THOUGHT

          19   THE PROTECTED ACTIVITIES WOULD MATCH UP TO GENDER OR PREGNANCY.

          20            THE COURT:  THAT'S CORRECT.

          21            MR. BOHM:  THEN NUMBER THREE WOULD READ THAT JUAREZ'S

          22   GENDER OR PREGNANCY WERE A SUBSTANTIAL MOTIVATING REASON FOR

          23   HER DISCHARGE BECAUSE WE'RE GOING TO GET INTO SPECIFICS OF

          24   PROTECTED ACTIVITIES IN THE RETALIATION CLAIM.

          25            THE COURT:  WHICH WE'VE ALREADY GONE OVER THE
```

164

12:13:14   1   RETALIATION CLAIM, AND WE MADE THOSE CHANGES YOU REQUESTED.

2   THAT WAS NUMBER FIVE.

3          MR. BOHM:  YES, I AGREE, YOUR HONOR.  THAT'S NOT

4   ASKING FOR A DESCRIPTION FOR EACH AND EVERY PROTECTED ACTIVITY.

5   I SEE NUMBER SEVEN, PROBABLY NUMBER THREE, TO BE CONSISTENT

6   WITH YOUR HONOR'S RULING AND UNDERSTANDING THE INSTRUCTION

7   WOULD BE GENDER OR PREGNANCY.

8          MS. PRITIKIN:  I THINK IT SHOULD BE SEX OR PREGNANCY

9   SINCE THAT'S WHAT WE USED IN THE OTHERS, AND I AGREE.

10          THE COURT:  OKAY.

11          MR. BOHM:  SO ARE WE THEN GOING TO CHANGE ALL THE

12   INSTRUCTIONS TO SAY SEX VERSUS GENDER OR GENDER VERSUS SEX?

13          THE COURT:  WE DO HAVE GENDER UP IN THE PARAGRAPH,

14   DON'T WE?

12:13:59   15          MR. BOHM:  I AGREE WITH COUNSEL.  I THINK GENDER IS

16   THE MORE APPROPRIATE WORD TO BE USED ONLY BECAUSE TO A

17   LAYPERSON SOMETIMES THEY THINK SEX MEANS SEXUAL.

18          MS. PRITIKIN:  COUNSEL, CERTAINLY HAS TRIED TO GET A

19   LOT OF SEX INTO THIS CASE.  SO I DON'T KNOW THAT IT SHOULDN'T

20   BE, BUT I'LL WITHDRAW IT.  I JUST THINK WE SHOULD BE

21   CONSISTENT, YOUR HONOR.

22          THE COURT:  I COULD MAKE A COMMENT, BUT I'M GOING TO

23   LET DISCRETION BE THE BETTER PART OF VALID.  I TEND TO AGREE

24   WITH MR. BOHM ON THIS.  I THINK WE SHOULD SAY GENDER THROUGHOUT

25   INSTEAD OF SEX.  HOW ABOUT THAT?  SO WHEREVER SEX APPEARS,

12:14:38  1    WE'RE NOT GOING TO HAVE SEX ANYMORE IN THIS COURT, IN THIS

2    CASE.  SO IT WILL BE GENDER.  OKAY?

3         MR. BOHM:  CAN I GET THAT MARKED?

4         THE COURT:  IT'S AN EDICT.  NO MORE SEX.  SO WE MADE

5    THAT CORRECTION IN NUMBER SEVEN.  HOW ABOUT NUMBER EIGHT?

6         MR. BOHM:  NUMBER EIGHT IS FINE FOR THE PLAINTIFF.

7         THE COURT:  NINE?

8         MR. BOHM:  ALL RIGHT.  FOR NUMBER NINE, WHAT IS IT IN

9    TERMS OF HARASSMENT WHEN YOU MAKE SOMEBODY REDO SOMETHING THAT

10   THEY DON'T HAVE TO DO?  IS IT OBSCENE LANGUAGE?  NO.  DEMEANING

11   COMMENTS, WE COULD KEEP.  SLURS, I DON'T BELIEVE THERE'S ANY

12   EVIDENCE WITH REGARD TO SLURS.  THREATS, YES.  BUT COMMENTS

13   ABOUT HER PREGNANCY CONDITION, I GUESS THAT COULD BE CONSIDERED

14   A THREAT, YOU CAN'T HANDLE IT.  BUT THIS INSTRUCTION DOESN'T

12:15:48  15   SEEM TO INCLUDE THE MANIPULATION OF SOMEONE'S TERMS AND

16   CONDITIONS OF EMPLOYMENT.  IT WASN'T A SELECTABLE OPTION.  I'M

17   NOT SURE WHAT TO PUT HERE, BUT I AT LEAST KNOW THAT SLURS

18   SHOULDN'T BE THERE.  AND I GUESS IT'S JUST GIVING EXAMPLES; IT

19   SAYS VERBAL HARASSMENT SUCH AS.  SO I GUESS WE COULD KEEP THE

20   REST OF IT BUT TAKE OUT SLURS.

21        MS. PRITIKIN:  YOUR HONOR, THIS IS THE STANDARD

22   CALIFORNIA JURY INSTRUCTION EXPLAINING TO A JURY WHAT

23   HARASSMENT MEANS.  IT MEANS THIS KIND OF BEHAVIOR.  IT'S NOT

24   SUPPOSED TO BE TAILORED OR THE INSTRUCTION WOULD BE WRITTEN

25   THAT WAY TO BE TAILORED TO THE SPECIFIC CLAIMS IN A PARTICULAR

12:16:35   1   CASE.  IT SAYS, THIS IS WHAT THE LAW CONSIDERS TO BE HARASSING

2   CONDUCT.  I DON'T THINK THERE'S ANY REASON TO CHANGE WHAT THE

3   STANDARD JURY INSTRUCTION SAYS.

4        THE COURT:  THERE'S ALSO PARAGRAPH B AND C, AS I

5   RECALL.  IT TALKS ABOUT PHYSICAL AND EMOTIONAL AND SO FORTH,

6   WELL, PHYSICAL AT LEAST.  BUT I DON'T RECALL THERE BEING ANY

7   SLURS THAT WERE MENTIONED DURING THE TESTIMONY.

8        MS. PRITIKIN:  YOUR HONOR, THE WAY THE EVIDENCE HAD

9   COME IN IN THIS CASE, I THINK THE JURY NEEDS TO UNDERSTAND WHAT

10   HARASSMENT IS.  HARASSMENT IS OBSCENE LANGUAGE.  IT CAN BE

11   SLURS, DEMEANING COMMENTS, AND IT CAN BE THREATS.  THAT'S WHAT

12   THE LAW SAYS IT CAN BE.  SO IT'S NOT A QUESTION OF IS IT PART

13   OF THIS CASE.  IT'S GIVING THE JURY EXAMPLES AND UNDERSTANDING

14   WHAT WE'RE TALKING ABOUT.  WE'RE NOT TALKING ABOUT TRIVIAL

12:17:25   15   CONDUCT.  WE'RE TALKING ABOUT CONDUCT THAT IS OFFENSIVE, AND

16   IT'S EXPLAINED IN THE NEXT INSTRUCTION.  SO I DON'T SEE ANY

17   REASON TO CHANGE THE STANDARD INSTRUCTION FROM THE CACI BOOK ON

18   WHAT IS HARASSING CONDUCT BECAUSE BY COUNSEL TRYING TO MINIMIZE

19   THE SERIOUSNESS OF WHAT HARASSING CONDUCT IS BY TAKING OUT

20   SLURS ISN'T INFORMING THE JURY WHAT THE LAW IS THAT THEY'RE

21   SUPPOSED TO FOLLOW IN EVALUATING WHETHER OR NOT HARASSMENT

22   OCCURRED.

23        MR. BOHM:  YOUR HONOR, IF I MAY?

24        THE COURT:  YES, GO AHEAD.

25        MR. BOHM:  I'M LOOKING AT THE CACI INSTRUCTION, AND

12:18:44   1     THERE IS A LETTER E THAT SAYS, DESCRIBE OTHER FORM OF

2     HARASSMENT IF APPROPRIATE.

3             THE COURT:  I SEE THAT TOO.  AND IF YOU GO INTO THE

4     SOURCE AND AUTHORITY, GETTING TO THE CONDUCT THAT YOU WERE

5     REFERRING TO MR. BOHM, AT LEAST ON MY, IN MY BOOK -- AND I HAVE

6     THE FALL 2014, MOST CURRENT VERSION -- IT'S ON PAGE 172.  IT

7     SAYS, HARASSMENT CONSISTS OF A TYPE OF CONDUCT NOT NECESSARY

8     FOR PERFORMANCE OF A SUPERVISORY JOB.  HARASSMENT CONSISTS OF

9     CONDUCT OUTSIDE THE SCOPE OF NECESSARY JOB PERFORMANCE.  THAT

10    COULD INCLUDE WHAT YOU'RE TALKING ABOUT WHERE MCFALL WAS JUST

11    MAKING, MAKE DO WORK ON THE FIX-IT LIST.

12            MS. PRITIKIN:  YOUR HONOR, THE EXACT LANGUAGE YOU

13    READ, CAN YOU READ THAT AGAIN.  ARE YOU SUGGESTING THAT GET

14    ADDED TO THE INSTRUCTION?

12:19:50   15            THE COURT:  I'M CONTEMPLATING IT, YES.  IT SAYS,

16    HARASSMENT CONSISTS OF CONDUCT OUTSIDE THE SCOPE OF NECESSARY

17    JOB PERFORMANCE.  CONDUCT PRESUMABLY ENGAGED IN FOR PERSONAL

18    GRATIFICATION BECAUSE OF MEANNESS OR BIGOTRY OR OTHER PERSONAL

19    MOTIVES.

20            MS. PRITIKIN:  IF THAT EXACT LANGUAGE IS USED, YOUR

21    HONOR, WE HAVE NO OBJECTION BECAUSE I THINK YOU NEED TO HAVE

22    THAT IT'S FOR PERSONAL REASONS AND BIGOTRY OR OTHERWISE THAT

23    LANGUAGE HAS TO GO IN TO EXPLAIN WHAT THAT MEANS BECAUSE IT'S

24    NOT JUST A QUESTION OF SOMEBODY GIVES YOU BUSY WORK.  THAT'S

25    NOT ILLEGAL UNLESS IT'S DONE BECAUSE OF A SEVERE AND PERVASIVE

12:20:28   1   CONDUCT.

2   THE COURT:  SO MR. BOHM, DO YOU HAVE ANY OBJECTION TO

3   THAT OF ADDING THAT TO, THAT SENTENCE THAT I JUST READ?  IT

4   CONSISTS OF CONDUCT, IT MAY CONSIST -- HARASSING CONDUCT MAY

5   INCLUDE VERBAL HARASSMENT SUCH AS OBSCENE LANGUAGE DEMEANING

6   COMMENTS OR THREATS CONDUCT OUTSIDE THE SCOPE OF NECESSARY JOB

7   PERFORMANCE, PRESUMABLY ENGAGED IN FOR PERSONAL GRATIFICATION

8   BECAUSE OF MEANNESS OR BIGOTRY OR OTHER PERSONAL MOTIVES.

9   MR. BOHM:  AGREED.

10   THE COURT:  OKAY.  SO THAT WILL BE ADDED TO NUMBER

11   NINE.  NUMBER TEN, SO THE NAME OF THE ALLEGED SUPERVISOR, IN

12   THIS CASE IT'S ONLY GOING TO BE MCFALL; CORRECT?  NUMBER TEN,

13   NAME OF ALLEGED SUPERVISOR THAT I PUT IN BRACKETS.

14   MR. BOHM:  YES, THAT'S ONLY FOR THE HARASSMENT, YES.

12:21:28 15   THE COURT:  JUST MCFALL.

16   MR. BOHM:  YES.  NOTHING FROM THE PLAINTIFF FOR 11,

17   12, 13, 14, 15, 16, 17 OR 18?

18   THE COURT:  NUMBER 19?

19   MS. PRITIKIN:  MAY I RAISE AN ISSUE ABOUT NUMBER 18.

20   I DON'T THINK THERE'S BEEN ANY EVIDENCE BROUGHT IN ABOUT

21   INSURANCE SO I DON'T KNOW WE NEED 18.

22   THE COURT:  THAT'S TRUE.  I DON'T RECALL ANY EVIDENCE

23   OF INSURANCE ONE WAY OR THE OTHER.

24   MR. BOHM:  18 WOULD BE FIRST OF ALL NECESSARY TO

25   PROHIBITIVELY TO PREVENT THE JURY OF THINKING ABOUT IT.  ALSO,

12:22:19   1   THERE WAS TESTIMONY CONCERNING THE UNEMPLOYMENT, ALTHOUGH

2   PEOPLE DON'T KNOW IT, IT'S CALLED UNEMPLOYMENT INSURANCE

3   APPEALS BOARD, UAIB.  SO TECHNICALLY, UNEMPLOYMENT IS A TYPE OF

4   INSURANCE WHICH BY THE WAY IS NOT APPROPRIATE FOR THE JURY TO

5   CONSIDER WITH REGARD TO THIS CASE.

6           THE COURT:  OKAY.  I'LL LEAVE IT IN.  NUMBER 19?

7           MS. PRITIKIN:  YOUR HONOR, 19 APPEARS TO BE

8   UNNECESSARY.  THERE WAS NO VIDEO OF A WITNESS WHO WASN'T IN THE

9   COURTROOM.

10          THE COURT:  THERE WAS SOME IN THE REBUTTAL CASE.

11   THERE WASN'T A VIDEO, BUT THERE WAS SNIPPETS OF THE LIVE

12   TESTIMONY OF MS. HOLMES AND MS. SAUCIER.

13          MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.  AGAIN, I

14   DON'T OBJECT TO ANY OF THESE INSTRUCTIONS OR ANY OF THE COURT'S

12:23:06   15   PROPOSED INSTRUCTIONS?

16          MR. BOHM:  I THINK THE COURT STILL HAS THOSE

17   TRANSCRIPTS IF YOU NEED SPECIFIC DATES.

18          THE COURT:  I DO.  SO I'LL INSERT MS. HOLMES AND MS.

19   SAUCIER AND THE DATES INTO THOSE BLANKS.  OTHER THAN THAT, ANY

20   OBJECTION?

21          MR. BOHM:  NOT FOR 20, I'M SORRY FOR 19.

22          THE COURT:  I DON'T THINK 20 IS NECESSARY.

23          MR. BOHM:  CORRECT.  I DON'T THINK 20 IS NECESSARY.

24   OKAY.  STATEMENT OF A PARTY OPPONENT, THAT WAS USED FREQUENTLY

25   IN THE TRIAL.

170

12:23:46   1          MR. BOHM:  I DON'T HAVE ANY OBJECTION UNTIL WE GET TO

2    29, JUST TO SAVE TIME.

3           THE COURT:  SO NO OBJECTION UP TO 29 THEN?

4           MR. BOHM:  YES, YOUR HONOR.

5           THE COURT:  OKAY.  29.

6           MR. BOHM:  SO 29 STILL HAS BRACKETS.

7           THE COURT:  I'M THINKING WE ELIMINATE THE BRACKETS

8    AND LEAVE THE LAST PARAGRAPH JUST THAT ONE SENTENCE THAT IS NOT

9    IN BRACKETS.

10           MR. BOHM:  I'M SORRY.  YOU'RE SAYING GET RID OF THE

11    BRACKETS?

12           THE COURT:  YES.  FORGET ABOUT THE BRACKETS.  THE

13    INTEREST RATE, THAT WAS NEVER EVEN REALLY DISCUSSED OTHER THAN

14    TANGENTIALLY.  THERE'S NO STIPULATED TESTIMONY OR FACTS, AND

12:24:32  15    SO I THINK THE LAST PARAGRAPH SHOULD JUST BE THAT ONE SENTENCE:

16    YOU MAY CONSIDER EXPERT TESTIMONY IN DETERMINING THE PRESENT

17    CASH VALUE OF FUTURE ECONOMIC DAMAGES.

18           MR. BOHM:  SO ARE YOU SAYING THAT ONLY THE LAST

19    SENTENCE WOULD BE THERE AND GET RID OF EVERYTHING ELSE?

20           THE COURT:  NO, NO.  THE FIRST TWO PARAGRAPH WOULD

21    ALSO REMAIN AND JUST REMOVE THE BRACKETED INFORMATION FROM THE

22    LAST PARAGRAPH AND ONLY LEAVE THAT ONE SENTENCE.

23           MR. BOHM:  THAT WOULD REMOVE MY OBJECTION.

24           THE COURT:  OKAY.  ANY OBJECTION.

25           MS. PRITIKIN:  NO, YOUR HONOR.  I DO WANT TO RAISE AN

12:25:09   1    ISSUE ABOUT INSTRUCTION NUMBER 30.

           2            THE COURT:  OKAY.  30?

           3            MS. PRITIKIN:  I THINK THIS MAY NEED SOME

           4    MODIFICATION WITH RESPECT TO THEIR NOT BEING A CLAIM FOR ANY

           5    ONGOING OR SEVERE EMOTIONAL DISTRESS IN THIS CASE.

           6            THE COURT:  SO HOW WOULD YOU CHANGE NUMBER 30?

           7            MS. PRITIKIN:  I THINK WE JUST ADD A SENTENCE THAT

           8    SAYS JUAREZ IS NOT MAKING ANY CLAIM FOR ANY CURRENT OR ONGOING

           9    EMOTIONAL DISTRESS.

          10            MR. BOHM:  FIRST, THAT ISSUE IS ALREADY TAKEN UP IN

          11    THE JURY INSTRUCTIONS IN THAT THERE IS NO CLAIM FOR FUTURE

          12    EMOTIONAL DISTRESS.  THAT'S JUST NOT HAPPENING.

          13            THE COURT:  AND WHERE IS THAT?

          14            MR. BOHM:  WHEN WE GET -- WELL, NORMALLY THERE WOULD

12:26:04  15    BE AN INSTRUCTION FOR EMOTIONAL DISTRESS AS TO FUTURE EMOTIONAL

          16    DISTRESS, AND THERE IS OBVIOUSLY NONE BECAUSE WE'RE NOT SEEKING

          17    IT.  IN FACT, IN THE TYPES OF DAMAGES, IT LISTS PAST EMOTIONAL

          18    DISTRESS.  I'LL FIND THAT INSTRUCTION FOR YOUR HONOR.

          19            THE COURT:  THERE'S PAST LOST EARNINGS.

          20            MR. BOHM:  COURT'S INSTRUCTION 25.

          21            MS. PRITIKIN:  32 IS THE ONLY PLACE IN WHICH THERE'S

          22    A REFERENCE TO PAST EMOTIONAL DISTRESS, YOUR HONOR, BUT I THINK

          23    THE JURY NEEDS TO BE TOLD THEY'RE NOT MAKING A CLAIM FOR

          24    CURRENT OR ONGOING EMOTIONAL DISTRESS?

          25            MR. BOHM:  32 IS NOT THE ONLY PLACE THAT IT SAYS PAST

12:26:55  1   EMOTIONAL DISTRESS.

2           THE COURT:  COURT'S INSTRUCTION NUMBER 25 -- LET'S

3   NOT BICKER, COUNSEL -- COURT'S INSTRUCTION NUMBER 25, THE

4   FOLLOWING ARE SPECIFIC ITEMS OF DAMAGES CLAIMED BY JUAREZ, ONE,

5   PAST AND FUTURE ECONOMIC DAMAGES, AND TWO, PAST EMOTIONAL

6   DISTRESS DAMAGES.  AND THEN THE ITEMS OF NON-ECONOMIC DAMAGE I

7   THINK IS FINE.  NUMBER 30, I THINK 30 IS FINE.  SO 31, ANY

8   OBJECTION?

9           MR. BOHM:  IF YOUR HONOR GIVES ME A MOMENT, I'LL SCAN

10   AND SEE IF I HAVE ANYTHING ELSE.  WITH THE EXCEPTION OBVIOUSLY

11   OF PUNITIVE DAMAGE INSTRUCTION WHICH YOUR HONOR IS NOT YET TO

12   RULE ON, THERE IS NOTHING ELSE THAT I FIND.

13           THE COURT:  NUMBER 32, DAMAGES ON MULTIPLE LEGAL

14   THEORIES?

12:28:01  15           MR. BOHM:  I HAVE NO OBJECTIONS TO THE BALANCE OF

16   YOUR HONOR'S PROPOSED INSTRUCTIONS.

17           THE COURT:  ALL RIGHT.  SO WITH RESPECT TO WHETHER

18   WE'RE GOING TO GIVE INSTRUCTIONS ON PUNITIVE DAMAGE, THAT'S

19   SOMETHING I'M GOING TO HAVE TO DECIDE TONIGHT AND THEN RULE

20   UPON TOMORROW BEFORE WE GET STARTED OBVIOUSLY.  SO, AND THEN

21   THAT WILL DICTATE WHETHER SOME OF THESE INSTRUCTIONS STAY IN OR

22   GO OUT.

23           MS. PRITIKIN:  THAT'S FINE, YOUR HONOR.

24           THE COURT:  AND I HAVE YET TO READ YOUR MOST RECENT

25   SUBMISSIONS.

12:28:31   1          MR. BOHM:  YES, AND THEN THERE'S THE ISSUE ABOUT THE

2    VERDICT FORM.

3          THE COURT:  YES.  BEFORE WE MOVE ON TO THE VERDICT

4    FORM, ARE THERE ANY OTHER INSTRUCTIONS THAT THE PLAINTIFF CARES

5    TO HAVE READ TO THE JURY THAT WE HAVE NOT DISCUSSED?

6          MR. BOHM:  NO, YOUR HONOR?

7          THE COURT:  MS. PRITIKIN?  ANY ADDITIONAL

8    INSTRUCTIONS THAT THE DEFENDANT, WHICH THE DEFENDANT AS

9    PROPOSED, THAT YOU WOULD LIKE TO HAVE READ TO THE JURY?

10          MS. PRITIKIN:  YOUR HONOR, I THINK GIVEN THE EVIDENCE

11    IN THE CASE, WE HAVE A FEW INSTRUCTIONS THAT WE WOULD REQUEST.

12          THE COURT:  ALL RIGHT.

13          MS. PRITIKIN:  NUMBER ONE IS 2526 OF THE CACI

14    INSTRUCTIONS.

12:29:10   15          THE COURT:  OKAY.  HANG ON ONE SECOND.

16          MS. PRITIKIN:  WHICH IS THE AVOIDABLE CONSEQUENCES

17    DOCTRINE AND ONE OF OUR AFFIRMATIVE DEFENSES THAT WITH RESPECT

18    TO HARASSMENT THE PLAINTIFF DIDN'T MAKE USE OF THE AVENUES

19    AVAILABLE TO HER TO MAKE INTERNAL COMPLAINTS AND STOP WHAT SHE

20    CONSIDERED TO BE HARASSMENT.

21          THE COURT:  MR. BOHM?

22          MR. BOHM:  ACCEPTING THAT THEY HAVE THIS PROPERLY

23    PLEAD AS AN AFFIRMATIVE DEFENSE, IT WOULD BE AN APPROPRIATE

24    INSTRUCTION TO GIVE IN A HARASSMENT CASE; IT'S A STATEMENT OF

25    CALIFORNIA'S LAW.

12:30:25  1          MS. PRITIKIN:  AND YOUR HONOR, WE'D BE HAPPY TO TAKE

2    THE INSTRUCTION, INSERT THE CHANGES, SEND IT TO PLAINTIFF'S

3    COUNSEL AND HAVE IT E-MAILED TO YOUR HONOR SO YOU'LL HAVE THE

4    LANGUAGE FROM THE CACI INSTRUCTION BEFORE THE END OF TODAY.

5          THE COURT:  I DON'T THINK THAT'S A PROBLEM.  MR. BOHM

6    HAD MENTIONED THAT IF -- I DON'T RECALL.  I'D HAVE TO GET OUT

7    THE --

8          MS. PRITIKIN:  I CAN POINT YOUR HONOR TO THE ANSWER.

9          THE COURT:  YES, THE ANSWER.  IS THERE AN AFFIRMATIVE

10   DEFENSE BASED UPON THIS?

11         MS. PRITIKIN:  THERE IS, YOUR HONOR.

12         THE COURT:  AND THERE WAS SOME EVIDENCE DURING THE

13   TRIAL THAT MS. JUAREZ DIDN'T COMPLAIN TO ANYONE.

14         MS. PRITIKIN:  AND IT'S THE 14TH AFFIRMATIVE DEFENSE,

12:31:07  15  YOUR HONOR, IN THE ANSWER TO THE SECOND AMENDED COMPLAINT.

16         THE COURT:  ALL RIGHT.  SO LET'S BRIEFLY GO THROUGH

17   THE BRACKETS HERE.  SO IF ROSARIO JUAREZ PROVES THAT KEN MCFALL

18   SEXUALLY HARASSED HER, AUTOZONE IS RESPONSIBLE FOR JUAREZ'S

19   HARM CAUSED BY THE HARASSMENT.  HOWEVER, AUTOZONE CLAIMS THAT

20   ROSARIO JUAREZ COULD HAVE AVOIDED SOME OR ALL THE HARM WITH

21   REASONABLE EFFORTS.  TO SUCCEED, AUTOZONE MUST PROVE ALL OF THE

22   FOLLOWING: THAT AUTOZONE TOOK REASONABLE STEPS, EXCUSE ME, THAT

23   AUTOZONE TOOK REASONABLE STEPS TO CORRECT WORKPLACE SEXUAL

24   HARASSMENT, THAT JUAREZ UNREASONABLY FAILED TO USE PREVENTATIVE

25   AND CORRECTIVE MEASURES OF SEXUAL HARASSMENT AT AUTOZONE, THAT

12:31:55    1   REASONABLE USE OF AUTOZONE PROCEDURE WOULD HAVE PREVENTED SOME

            2   OR ALL OF JUAREZ'S HARM.  YOU SHOULD CONSIDER THE

            3   REASONABLENESS OF JUAREZ'S -- YEAH.  OKAY.  SO IT'S JUST

            4   INSERTING EITHER PLAINTIFF OR DEFENDANT'S NAME IN THE BRACKETS.

            5   IT'S NOTHING MORE DIFFICULT THAN THAT.  ALL RIGHT SO 2526 WILL

            6   BE GIVEN, AND I'LL INSERT THAT AT WHAT I CONSIDER TO BE THE

            7   APPROPRIATE SPOT.  ANYTHING ELSE?

            8           MS. PRITIKIN:  NOTHING FROM DEFENDANT, YOUR HONOR.

            9           THE COURT:  ALL RIGHT.  SO WE'LL MAKE THE CHANGES TO

           10   THE JURY INSTRUCTIONS THAT WE TALKED ABOUT.  WE'LL TAKE OUT THE

           11   NUMBER 20 WHICH IS A REQUEST FOR ADMISSION.  I WILL INSERT 2526

           12   IN THE APPROPRIATE SPOT.  WE WILL DO THIS TODAY.  WE WILL FILE

           13   IT. SO YOU'LL HAVE IT ON YOUR CMECF THIS AFTERNOON OR EVENING.

           14           MS. PRITIKIN:  THANK YOU, YOUR HONOR.

12:32:53   15           THE COURT:  WITH THE EXCEPTION OF THE PUNITIVE DAMAGE

           16   INSTRUCTION.  THAT WILL STILL BE IN THERE UNTIL I RULE ON IT.

           17           MS. PRITIKIN:  YOUR HONOR, JUST FOR THE RECORD, I

           18   DON'T WANT MY ACCEPTANCE OF THE COURT'S INSTRUCTIONS AND THE

           19   ORDER THEY'RE GIVEN TO BE WAIVER OF THE SPECIAL INSTRUCTIONS

           20   THAT WE OFFERED AND WERE REJECTED.  I JUST WANT TO SAY THAT FOR

           21   THE RECORD. BUT GIVEN THE RULINGS BEFORE, WE HAVE NO PROBLEM

           22   WITH THE INSTRUCTIONS AS THE COURT HAS PUT THEM TOGETHER.

           23           THE COURT:  IN OTHER WORDS, WHAT YOU'RE SAYING IS YOU

           24   WOULD STILL LIKE THOSE SPECIAL INSTRUCTIONS TO BE GIVEN, AND

           25   I'M SAYING NO, AND SO YOU'RE LODGING YOUR OBJECTION TO MY

12:33:26   1   REJECTION, YOUR OBJECTING TO MY REJECTION.  OKAY.  WELL NOTED.

2          MR. BOHM:  I JUST HAD A THOUGHT POP IN MY MIND.  ONE

3   THING I SAW MISSING, MAYBE IT'S INTENTIONAL OR NOT, WAS THE

4   INSTRUCTION REGARDING PERSON MOST KNOWLEDGEABLE.  IT WAS

5   ACTUALLY OFFERED BY BOTH DEFENSE AND PLAINTIFF IN THIS CASE TO

6   HAVE AN INSTRUCTION CONCERNING WHAT A PERSON MOST KNOWLEDGEABLE

7   DEPOSITION IS AND I THINK WHEN WE WENT OVER THIS INITIALLY IT

8   WASN'T CLEAR WE WERE EVEN GOING TO HAVE ANY PERSON MOST

9   KNOWLEDGEABLE TESTIMONY.  NOW THAT THAT'S HAPPENED, WE BELIEVE

10   IT WOULD BE APPROPRIATE TO INCLUDE A INSTRUCTION CONCERNING A

11   PERSON MOST KNOWLEDGEABLE DEPOSITION.

12          THE COURT:  ALL RIGHT.  LET ME TAKE A QUICK LOOK.

13          MS. PRITIKIN:  AND YOUR HONOR, IF I COULD BE HEARD ON

14   THIS.

12:35:31   15          THE COURT:  I CAN'T FIND A PERSON MOST KNOWLEDGEABLE

16   INSTRUCTION SUBMITTED BY EITHER SIDE.  MAYBE YOU CAN POINT ME

17   IN THE RIGHT DIRECTION.

18          MS. PRITIKIN:  220-8, PAGE TWO OF EIGHT IS A PERSON

19   MOST KNOWLEDGEABLE INSTRUCTION THAT DEFENDANT PROPOSED THAT WAS

20   REJECTED.  BUT YOUR HONOR, AND I'LL GIVE YOU A MOMENT TO FIND

21   THAT, OR HERE, I CAN JUST GIVE YOU MY COPY.

22          THE COURT:  OKAY.  I DON'T KNOW WHAT THE HECK I DID

23   WITH MY COPY OF THAT.  ANYWAY, I SEE YOURS.

24          MS. PRITIKIN:  YOUR HONOR, I'M NOT ACTUALLY PROPOSING

25   IT.  I THINK THAT BECAUSE COUNSEL NEVER USED THE TERM 30B6 OR

177

12:36:42   1   ANY OTHER TERM OF ART ABOUT THE 30B6 DEPOSITIONS IN THIS CASE

2   AND USED THE TERM PERSON MOST KNOWLEDGEABLE, THAT THAT THERE'S

3   A LAY DEFINITION OF THAT TERM.  COUNSEL HAS EMPHASIZED IT AGAIN

4   AND AGAIN AND AGAIN IN HIS CASE.  I THINK THE INSTRUCTION

5   BRINGS UNDUE ATTENTION TO THE CATEGORY OF PERSON MOST

6   KNOWLEDGEABLE, AND IF IT IS GOING TO BE READ, THEN WE REQUEST

7   THAT ALL OF THE BACKGROUND BE EXPLAINED AS WELL IN THE WAY WE

8   PROPOSED IT.  BUT WE DON'T THINK THERE IS ANY NEED IN THIS CASE

9   BECAUSE PEOPLE ARE ASKED, ARE YOU THE PERSON MOST

10   KNOWLEDGEABLE, THEY SAID YES, AND THEN THEY READ THE TESTIMONY.

11   THE COURT:  LET ME GIVE THIS SOME ADDITIONAL THOUGHT

12   OVER THE AFTERNOON AND EVENING AS TO WHETHER THIS IS AN

13   APPROPRIATE INSTRUCTION OR NOT, AND THEN I'LL MAKE THAT

14   DECISION.  SO THIS ONE WILL BE TAKEN UNDER ADVISEMENT.  MY

12:37:43   15   INCLINATION IS TO NOT GIVE IT, AND JUST A WITNESS IS A WITNESS

16   IS A WITNESS WHETHER THEY'RE AN EXPERT OR PERSON MOST

17   KNOWLEDGEABLE.  I THINK THE JURY IS SMART ENOUGH TO FIGURE OUT

18   WHAT THAT MEANS WITHOUT A SPECIAL INSTRUCTION DEFINING WHAT

19   THAT MEANS.  I THINK IT WAS IN THE CONTEXT OF HOW THE

20   QUESTIONING OCCURRED.  IT WAS APPARENT THAT THESE ARE PEOPLE

21   WHO HAVE SPECIALIZED KNOWLEDGE ABOUT THE SPECIFIC AREA OF THE

22   COMPANY.  SO THAT'S MY GUT FEELING WHICH IS WHAT IT WAS AT THE

23   BEGINNING OF THE CASE WHEN WE REVIEWED THIS, BUT I DON'T THINK

24   IT CHANGED ANY.

25   MR. BOHM:  I UNDERSTAND WHAT YOUR HONOR IS SAYING.  I

178

12:38:27  1   ALSO PUT A REMINDER TO MYSELF, YOUR HONOR MENTIONED SANITIZED

          2   COMPLAINT.

          3           THE COURT:  I'M NOT GOING TO DO THAT.

          4           MR. BOHM:  THAT'S OFF THE TABLE.

          5           THE COURT:  I DECIDED NOT TO DO THAT.  THANK YOU FOR

          6   REMINDING ME OF THAT.  I DECIDED NOT TO PUT THE COMPLAINT BACK

          7   WITH THE JURY.

          8           MR. BOHM:  THE STIPULATIONS, I BELIEVE THOSE ARE

          9   GOING BACK TO THE JURY?

         10           THE COURT:  THE ONE THROUGH 30, WHATEVER THE NUMBER

         11   WAS, 30, YES.

         12           MR. BOHM:  OKAY.  I JUST HAD A LIST OF HOUSEKEEPING

         13   ISSUES THAT I'M MAKING SURE I ADDRESSED.

         14           THE COURT:  YES.  ALL RIGHT.  BEFORE WE MOVE ON TO

12:39:02 15   THE VERDICT FORM, LET ME ADDRESS ANOTHER HOUSEKEEPING ISSUE.

         16   TYPICALLY, WHEN THE JURY GOES IN THE DELIBERATION, THERE'S A

         17   COUPLE WAYS WE CAN HANDLE THIS.  ONE IS, THEY COME IN IN THE

         18   MORNING, I'M HERE, I SAY WELCOME, BEGIN YOUR DELIBERATION;

         19   WE'LL BREAK AT, OR I MIGHT EVEN ASK THEM WHEN THEY'D LIKE TO

         20   TAKE A BREAK; OKAY, YOU WANT TO TAKE A BREAK IN TWO HOURS; COME

         21   BACK OUT, I'LL DISMISS THEM FOR THE BREAK, BRING THEM BACK OUT

         22   AND GET STARTED AGAIN.  SAME THING FOR LUNCH AND END OF THE

         23   DAY.  DOES EITHER SIDE DESIRE TO BE PRESENT DURING THOSE

         24   RECESSES AND LUNCH BREAKS WHEN THEY BEGIN AND WHEN THEY COME

         25   BACK TO RESUME AND AT THE END OF THE DAY IF THEY HAVEN'T

```
12:39:46   1   REACHED A VERDICT THEY'RE DISMISSED FOR THE EVENING?

           2            MR. BOHM:  ON BEHALF OF PLAINTIFF, NO.

           3            MS. PRITIKIN:  I DON'T THINK THERE'S ANY NEED FOR THE

           4   PARTIES TO BE PRESENT, YOUR HONOR.

           5            THE COURT:  OKAY.  BEFORE YOU ALL LEAVE TODAY, LET US

           6   GET A GOOD CONTACT NUMBER FOR ALL OF YOU IN THE EVENT THERE'S A

           7   QUESTION THAT COMES UP OR IN THE EVENT THERE'S A VERDICT AND WE

           8   NEED TO GET YOU HERE.  I KNOW YOUR OFFICE IS RIGHT DOWN THE

           9   STREET.  I'M NOT SURE WHERE YOU ALL ARE LOCATED, BUT I'D LIKE

          10   FOR YOU TO BE WITHIN 15 MINUTE STANDBY SO YOU CAN GET HERE

          11   PRETTY QUICKLY ONCE A VERDICT OR QUESTION IS ADDRESSED.

          12            MR. BOHM:  YEAH.  I BELIEVE OUR TEAM WILL BE LOCATED

          13   AT THE WESTIN KITTY-CORNER TO THE COURT SO THAT SHOULD BE FINE.

          14   AND THEN YOUR HONOR, IN FULL DISCLOSURE, I HAVE ANOTHER MATTER

12:40:39  15   I NEED TO ATTEND TO.  SO MR. MOORE, MORE LIKELY THAN NOT, WILL

          16   BE HANDLING ANY QUESTIONS.  HE CAN CALL ME FOR ANY INPUT.  I

          17   MEAN NO DISRESPECT.  IF THE COURT WANTS ME TO BE HERE, I CAN

          18   CANCEL OTHER CASES I HAVE WORK TO DO ON, OR I CAN GO AND COME

          19   BACK AS APPROPRIATE.

          20            THE COURT:  THAT'S YOUR CALL TO MAKE.  I DON'T KNOW,

          21   IN TERMS OF THE OPTICS TO THE JURY, IF THEY'RE BROUGHT OUT TO

          22   HAVE A QUESTION ADDRESSED TO THEM, AND THEY DON'T SEE YOU HERE.

          23   THAT'S YOUR CALL TO MAKE.  I'M NOT GOING TO INTERFERE WITH

          24   THAT.  MR. MOORE IS COUNSEL OF RECORD AS WELL AND IS PERFECTLY

          25   CAPABLE OF REPRESENTING MS. JUAREZ.
```

12:41:18   1          MR. BOHM:  I JUST WANT TO CLARIFY IF YOU HAD AN

          2   ORDER, AND IT SOUNDS LIKE YOU DON'T.  THANK YOU.

          3          THE COURT:  I DON'T.  ALL RIGHT.  LET'S REVIEW THE

          4   VERDICT FORMS.  SO WE RESOLVED 99 PERCENT OF THE JURY

          5   INSTRUCTION ISSUES, AND WE'LL CLEAN THOSE UP THIS EVENING.

          6   WHAT I HAVE RECEIVED, AND I CAN'T FIND A COPY IF PLAINTIFF

          7   SUBMITTED A PROPOSED JURY VERDICT FORM, BUT I HAVE THE DEFENSE

          8   SPECIAL VERDICT FORM.  THIS IS 180 PAGE 55 THROUGH SOMETHING.

          9          MR. BOHM:  I BELIEVE THAT IS PLAINTIFF'S VERDICT

         10   FORM.

         11          THE COURT:  I HAVE NOT LOOKED AT YOURS BECAUSE,

         12   FRANKLY, I COULDN'T FIND IT.

         13          MS. PRITIKIN:  YOUR HONOR, THE PLAINTIFF HAS PROPOSED

         14   A COMPLETE VERDICT FORM FOR EACH CAUSE OF ACTION INSTEAD OF A

12:42:34  15   VERDICT FORM THAT TALKS ABOUT EACH CAUSE OF ACTION AND THEN

         16   GETS TO DAMAGES.  I THINK THAT'S PART OF THE CONFUSION BECAUSE

         17   THERE'S VERDICT ONE THEN YOU'LL SEE VERDICT TWO STARTS OFF WITH

         18   THE VERY SAME QUESTION.

         19          MR. BOHM:  THAT IS A CORRECT CHARACTERIZATION OF HOW

         20   WE DID THIS WAY BACK WHEN TRYING TO FIGURE OUT HOW TO DO IT,

         21   AND WE'RE TOTALLY OPEN WITH REGARD TO HOW YOUR HONOR WANTS TO

         22   PROCEED.

         23          THE COURT:  AS I PERUSE THE PLAINTIFF'S PROPOSED

         24   VERDICT FORMS, I'M MORE INCLINED TO GO ALONG WITH THE DEFENSE

         25   PROPOSAL ON HOW THEY SHOULD LOOK.  BUT I HAVE TO SAY, I HAVEN'T

181

12:43:26  1    STUDIED YOURS BECAUSE I JUST HADN'T FOUND THEM UNTIL A FEW

2    MINUTES AGO.

3              MR. BOHM:  I DON'T HAVE POWERFUL FEELINGS ABOUT OUR

4    VERDICT FORM AS PROPOSED, YOUR HONOR.  IT WAS BACK IN NOVEMBER

5    OF '13.  I HAVE DONE IT BOTH WAYS, AND IF THE COURT IS LEANING

6    TOWARDS THE DEFENSE FORMAT SO TO SPEAK, I HAVE NO PROBLEM WITH

7    THAT.  WE CAN GO THROUGH THE SUBSTANCE OF THEIR VERDICT FORM.

8    THAT WOULD BE OKAY BY THE PLAINTIFF.

9              THE COURT:  OKAY.  LET'S GO THROUGH THE DEFENDANT'S

10   PROPOSED VERDICT FORM.

11             MS. PRITIKIN:  YOUR HONOR, WITH RESPECT TO THE

12   VERDICT FORM, WE NOTE THAT A NUMBER OF THE QUESTIONS ARE

13   ALREADY STIPULATED FACTS, ARE NOT REALLY IN CONTROVERSY, AND

14   THOSE QUESTIONS I BELIEVE CAN COME OUT, LIKE, WAS AUTOZONE AN

12:44:15  15   EMPLOYER IS NOT A CONTESTED FACT.

16             THE COURT:  DO WE EVEN NEED TO HAVE A JURY DECIDE

17   THAT GIVEN THAT?

18             MR. BOHM:  I AGREE WITH THE DEFENSE.  WE SHOULD NEVER

19   GIVE THE JURY A QUESTION THAT'S --

20             THE COURT:  YEAH, UNNECESSARILY COMPLICATES IT IS

21   PERHAPS CONFUSING ALTHOUGH IT MAY BE VERY EASY FOR THEM TO

22   ANSWER.

23             MR. BOHM:  FOR THE RECORD, JUST SO I'M CLEAR WE'RE

24   ALL ON THE SAME VERSION.

25             THE COURT:  I HAVE DOCKET 220-5 FILED OCTOBER THE

```
12:44:42   1    15TH OF THIS YEAR.  WITH RESPECT TO PAGE ONE, QUESTION NUMBER

           2    ONE, WE CAN ELIMINATE QUESTION NUMBER ONE.

           3              MS. PRITIKIN:  AGREED, YOUR HONOR.

           4              MR. BOHM:  AGREED.

           5              THE COURT:  AS WELL AS NUMBER TWO?

           6              MS. PRITIKIN:  AGREED, YOUR HONOR.

           7              MR. BOHM:  AGREED.

           8              MS. PRITIKIN:  AND THREE.

           9              THE COURT:  THREE SEEMS TO BE SELF-EVIDENT AS WELL.

          10              MS. PRITIKIN:  WE STIPULATED TO HER DEMOTION.

          11              THE COURT:  THEN QUESTION NUMBER FOUR SHOULD BECOME

          12    QUESTION NUMBER ONE.

          13              MS. PRITIKIN:  CORRECT.

          14              MR. BOHM:  AGREED.

12:45:22  15              THE COURT:  NUMBER FIVE, LET'S -- I'LL RENUMBER THEM

          16    JUST SO THE RECORD IS KEPT FAIRLY CLEAR.  LET'S JUST REFER TO

          17    THEM AS THE NUMBERS THAT APPEAR HERE.  ANY OBJECTION WITH THE

          18    WAY QUESTION NUMBER FOUR READS?

          19              MR. BOHM:  NO SEX IN COURT IS OUR OBJECTION.

          20              THE COURT:  SO WE'LL REFER TO IT AS GENDER.

          21              MR. BOHM:  THANK YOU, YOUR HONOR.

          22              THE COURT:  ANY OBJECTION TO THAT?

          23              MS. PRITIKIN:  NO, YOUR HONOR.

          24              THE COURT:  QUESTION NUMBER FIVE?

          25              MR. BOHM:  NO OBJECTION.
```

183

```
12:46:00   1              THE COURT:  THEN WE'RE ON TO CLAIM NUMBER TWO,

           2    DISCRIMINATION.  AND WE CAN ELIMINATE QUESTION SIX, SEVEN, AND

           3    EIGHT I BELIEVE.

           4              MS. PRITIKIN:  THAT'S CORRECT, YOUR HONOR.  AND WE

           5    AGREE THAT THROUGHOUT THIS DOCUMENT WHERE IT SAYS SEX WE HAVE

           6    NO PROBLEM SUBSTITUTING GENDER.

           7              THE COURT:  SO WITH RESPECT TO QUESTION NUMBER NINE,

           8    AS MODIFIED TO REFLECT GENDER INSTEAD OF SEX, MR. BOHM, ANY

           9    OBJECTIONS TO QUESTION NUMBER NINE?

          10              MR. BOHM:  NO.  I JUST WANT THE COURT TO NOTE I'M

          11    TRYING TO JOG AHEAD.  SO RIGHT NOW I DON'T SEE IT BECAUSE IT

          12    SEEMS LIKE OTHER ISSUES WILL BE ADDRESSED IN FUTURE QUESTIONS.

          13    SO AS PHRASED, I HAVE NO OBJECTION TO NUMBER NINE.

          14              THE COURT:  NUMBER TEN?

12:46:51  15              MR. BOHM:  LIKEWISE, YOUR HONOR.

          16              THE COURT:  NOW WE'RE DOWN TO CLAIM NUMBER TWO,

          17    RETALIATORY TERMINATION.  THAT SHOULD BE, I THINK, CLAIM NUMBER

          18    THREE IF I'M NOT MISTAKEN.

          19              MS. PRITIKIN:  I THINK SO, YOUR HONOR, AND WE THINK

          20    11 AND 12 CAN BE DELETED BECAUSE THERE'S NO DISPUTE THAT SHE

          21    FILED A CHARGE AS IN THE RECORD.  IT'S PART OF THE STIPULATED

          22    FACTS, AND THERE'S NO DISPUTE THAT SHE WAS TERMINATED.

          23              MR. BOHM:  IF I MAY?

          24              THE COURT:  YES.

          25              MR. BOHM:  SO I HATE TO BACKTRACK FOR A MOMENT, BUT
```

12:47:25   1    THE ONE BEFORE THAT TALKS ABOUT THE TERMINATION BEING A

2    SUBSTANTIAL FACTOR IN CAUSING HARM, TECHNICALLY THAT QUESTION

3    SHOULD FOLLOW ALL TERMINATION RELATED LIABILITY QUESTIONS.

4              THE COURT:  YOU'RE REFERRING TO QUESTION NUMBER

5    NINE?

6              MR. BOHM:  I'M REFERRING TO WHAT IS CURRENTLY

7    IDENTIFIED AS QUESTION NUMBER TEN: WAS AUTOZONE'S TERMINATION

8    OF JUAREZ A SUBSTANTIAL FACTOR IN CAUSING HARM TO JUAREZ.  THAT

9    CAUSATION QUESTION SHOULD FOLLOW THE LIABILITY BASIS FOR

10   TERMINATION INSTEAD OF REASKING THEM OVER AND OVER WAS

11   TERMINATION A SUBSTANTIAL FACTOR IN CAUSING HARM BECAUSE THE

12   RETALIATION ALSO RELATES TO A TERMINATION.  SO I'M JUST MAKING

13   THE POINT THAT THAT TERMINATION CAUSATION QUESTION WHICH IS

14   NUMBER TEN SHOULD COME AFTER, FOR INSTANCE, IN THIS PARTICULAR

12:48:13   15   ONE, AFTER QUESTION 13, WHICH WAS, WERE JUAREZ'S COMPLAINTS

16   ABOUT PREGNANCY OR GENDER DISCRIMINATION A SUBSTANTIAL

17   MOTIVATING REASON FOR AUTOZONE'S DECISION TO TERMINATE

18   JUAREZ?

19             MS. PRITIKIN:  SO IS COUNSEL PROPOSING DELETING

20   QUESTION TEN AND JUST HAVING IT GO TO 14?

21             MR. BOHM:  I'M SUGGESTING THAT THE VERBIAGE THAT IS

22   IN QUESTION TEN AND QUESTION 14 THAT IT BE STATED ONLY ONCE.

23             THE COURT:  WHAT ABOUT FIVE?

24             MR. BOHM:  FIVE IS DIFFERENT BECAUSE THAT'S THE

25   DEMOTION.

12:48:49   1          THE COURT:  SO YOU'RE SAYING ANYTHING DEALING WITH

2    TERMINATION, JUST ONCE?

3          MR. BOHM:  CORRECT.

4          THE COURT:  IF I UNDERSTAND YOU CORRECTLY.

5          MR. BOHM:  YES.  ALSO, THE PROBLEM UNDER THE

6    TERMINATION, RETALIATORY TERMINATION, IS THAT WE LEFT OFF HER

7    HARASSMENT.  IT SAYS, DID JUAREZ COMPLAIN ABOUT DISCRIMINATION.

8    IT SHOULD SAY, DID JUAREZ COMPLAIN ABOUT DISCRIMINATION OR

9    HARASSMENT?

10          MS. PRITIKIN:  WHAT QUESTION ARE WE TALKING ABOUT?

11          MR. BOHM:  I'M SORRY.  QUESTION 11.

12          MS. PRITIKIN:  WE'RE TAKING IT OUT BECAUSE WE ALREADY

13    STIPULATED SHE MADE A COMPLAINT.  IT'S PART OF THE STIPULATED

14    FACTS.

12:49:26   15          MR. BOHM:  I'M SORRY.  I APPARENTLY AM NOT MOVING

16    FAST ENOUGH.  LET ME TAKE THE STIPULATION OR IF COUNSEL WANTS

17    TO READ THE STIPULATED FACT WHILE I'M FINDING IT, THAT WOULD BE

18    OKAY.

19          MS. PRITIKIN:  I BELIEVE, YOUR HONOR, WE HAVE AS A

20    STIPULATED FACT, THE DATE OF THE DEPARTMENT OF FAIR EMPLOYMENT

21    AND HOUSING CHARGE, THE DATE OF THE INITIAL COMPLAINT AND WHEN

22    SHE SAT FOR HER DEPOSITION.  THOSE ARE ALL STIPULATED FACTS.

23          THE COURT:  SO ONE THING AT A TIME.  LET'S ADDRESS

24    WHETHER QUESTION NUMBER TEN AND THEN NUMBER 14 OUGHT TO BE

25    JUST -- JUST ELIMINATE NUMBER 10?

12:51:14  1          MR. BOHM:  APPARENTLY, IF WE'RE RUNNING IN THAT

2    ORDER, WE WOULD ELIMINATE TEN BECAUSE IT WILL BE ASKED AGAIN IN

3    QUESTION 14.

4          THE COURT:  I THINK IT'S CLEAR FOR THE JURY BECAUSE

5    IF THIS WAS A, IF THERE WASN'T THE OTHER CLAIM, THEN THEY WOULD

6    HAVE TO MAKE THAT DETERMINATION OF SUBSTANTIAL FACTOR WITH

7    RESPECT TO THE TERMINATION EACH TIME.  DOES THAT MAKE SENSE?

8    AND SO THEY HAVE TO MAKE IT, THEN THEY HAVE TO MAKE IT AGAIN,

9    AND I ASSUME THEY'LL BE CONSISTENT.  IF THEY'RE NOT CONSISTENT,

10   THEN?

11         MR. BOHM:  WELL, ONE OF MY MENTORS TOLD ME THAT A

12   GOOD TRIAL LAWYER MAKES SURE THAT THERE'S NO POSSIBILITY OF

13   INCONSISTENCY ON A VERDICT FORM.  THE QUESTION OF WHETHER OR

14   NOT A TERMINATION WAS A SUBSTANTIAL FACTOR IN CAUSING HARM IS A

12:52:12 15  CAUSATION RELATED QUESTION.  IT'S NOT HAVING ANYTHING TO DO

16   WITH THE LIABILITY OR THE SEVERITY OF THE HARM.  IT'S JUST

17   MAKING SURE THAT THAT'S WHAT WE'RE TALKING ABOUT.

18         THE COURT:  BUT THAT'S ONE OF THE ELEMENTS OF THE

19   OFFENSE.  AND SO IT SEEMS TO ME THAT, IT'S POSSIBLE -- IF WE

20   REMOVED IT FROM CLAIM TWO, QUESTION NUMBER TEN, BUT ONLY DID IT

21   ONCE WITH RESPECT TO ANOTHER TERMINATION CAUSE OF ACTION, AND

22   THEY FOUND THAT FOR THE PLAINTIFF IN ONE AND NOT THE PLAINTIFF

23   IN THE OTHER, THEN THERE MAY BE A LACK OF FINDING ALL THE

24   ELEMENTS.  SO I THINK WE SHOULD, UNLESS THERE'S A STIPULATION

25   THAT IT'S A SUBSTANTIAL FACTOR, AND WE'RE NOT STIPULATING TO

187

12:52:54   1   THAT.

2   MS. PRITIKIN:  AND YOUR HONOR, THERE'S A LEGAL

3   IMPACT.  IF THEY SAY YES ON ONE AND NO ON ANOTHER, IT MAY

4   AFFECT WHETHER OR NOT THE PLAINTIFF GETS ATTORNEY FEES AND

5   OTHER KIND OF DAMAGES.  SO I THINK WE SHOULD HAVE THE QUESTION

6   UNDER EACH CAUSE OF ACTION.

7   THE COURT:  I TEND TO AGREE WITH THAT.  IT'S AN

8   ELEMENT OF THE OFFENSE AND WHILE IT MAY BE ONE OF THOSE

9   ELEMENTS THAT'S REDUNDANT OR REPETITIVE OR CUMULATIVE FROM ONE

10   CLAIM TO ANOTHER, IT IS AN ELEMENT.  I THINK WE NEED TO FIND

11   THOSE ELEMENTS THAT ARE IN DISPUTE AND HAVEN'T BEEN STIPULATED

12   TO.

13   MR. BOHM:  WELL, MY COROLLARY WOULD BE TO PERSONAL

14   INJURY UNIVERSE WHERE SOMETIMES YOU HAVE, FOR INSTANCE,

12:53:36   15   MULTIPLE TORTFEASORS THAT RESULTED IN ONE DAMAGE TO A

16   PLAINTIFF.  SO AFTER YOU SAID WHETHER TORTFEASOR NUMBER ONE DID

17   IT OR TORTFEASOR NUMBER TWO, THEN THERE'S JUST ONE QUESTION

18   BECAUSE PLAINTIFF CAN'T RECOVER FOR DAMAGE IF THE COLLISION

19   INCIDENT, NEGLIGENCE, WHATEVER IT IS, WAS NOT A SUBSTANTIAL

20   FACTOR IN CAUSING THAT HARM AS OPPOSED TO SOME OTHER ACCIDENT

21   IN SOME OTHER CASE.  SO I UNDERSTAND THE COURT'S RULING.  I

22   JUST WANT TO MAKE SURE THAT IT'S VERY CLEAR THAT, YOU KNOW, TO

23   THE PLAINTIFF IT IS CONFUSING BECAUSE THERE'S ONLY ONE

24   TERMINATION AND THE QUESTION IS JUST WHETHER OR NOT THE

25   TERMINATION CAUSED MS. JUAREZ HARM.  THE AMOUNT OF HARM THAT'S

12:54:18   1   CAUSED TO MS. JUAREZ BY VIRTUE OF THE TERMINATION ISN'T GOING

2   TO BE DIFFERENT FOR EACH CAUSE OF ACTION OTHERWISE WE WOULD

3   ALSO HAVE TO PUT DAMAGE FIGURES UNDERNEATH EACH ONE.  SO THAT'S

4   MY CONCERN.

5           THE COURT:  HYPOTHETICALLY, LET'S ASSUME THAT THE

6   JURY FOUND THAT SHE WAS TERMINATED FOR A DISCRIMINATORY

7   PURPOSE, AND THEY WERE NOT ASKED AS TO WHETHER QUESTION NUMBER

8   TEN WAS MET OR NOT, AND WE ONLY DID IT ONCE WITH RESPECT TO HER

9   TERMINATION FOR RETALIATION, FOR EXAMPLE, AND THEY CAME BACK

10   AND SAID THAT SHE WASN'T TERMINATED WRONGFULLY ON RETALIATION

11   PURPOSES; BUT THEN WE WOULDN'T KNOW IF THEY ACTUALLY FOUND THE

12   ELEMENT THAT WAS NECESSARY FOR A DISCRIMINATORY TERMINATION.

13           MR. BOHM:  I SEE WHAT YOUR HONOR IS SAYING.

14   NORMALLY, WE FIX THAT WITH A, IF YOU ANSWER YES TO THIS

12:55:17  15   QUESTION, PROCEED TO THIS.  SO WHEN THEY GOT TO THE RETALIATION

16   IN THE HYPOTHETICAL YOU WERE WORKING, IT WOULD SAY, IF YOU

17   ANSWERED YES TO QUESTION X ABOVE, PROCEED TO THE NEXT QUESTION.

18   IF YOU ANSWERED NO TO THE QUESTION ABOVE AND TO THIS QUESTION,

19   ANSWER NO MORE QUESTIONS.  WE WOULD LOSE IN THAT CASE BECAUSE

20   THE JURY WOULD DECIDE THE TERMINATION DIDN'T HURT HER.  SO IT'S

21   TWO DIFFERENT WAYS OF DOING THE SAME THING.

22           THE COURT:  LET'S LEAVE QUESTION TEN IN AS WELL AS

23   NUMBER, IT'S 14.

24           MR. BOHM:  OKAY.

25           MS. PRITIKIN:  YOUR HONOR, I NOTICE THERE'S A TYPO IN

12:55:50  1   14.   14 SHOULD MIRROR TEN, IT SAYS THE CONDUCT INSTEAD OF

2   TERMINATION OF JUAREZ, AND THAT'S JUST MISTAKE.

3            MR. BOHM:  ALL RIGHT.  AND I AGREE WITH COUNSEL AS TO

4   THAT CHANGE IN THE VERBIAGE FOR 14.

5            THE COURT:  GOT IT.  OKAY.

6            MR. BOHM:  NOW THE OTHER ISSUE WE WERE BRIEFLY

7   DISCUSSING WITH REGARD TO THIS, QUESTION 11, DID JUAREZ

8   COMPLAIN ABOUT DISCRIMINATION BASED ON HER PREGNANCY OR SEX.

9   OBVIOUSLY, IT WOULD BE GENDER.  BUT DID JUAREZ COMPLAIN ABOUT

10   DISCRIMINATION OR HARASSMENT BASED ON HER PREGNANCY OR GENDER.

11   I HAVE REVIEWED THE STIPULATIONS BUT THE STIPULATIONS ARE NOT

12   AS FINAL AND ENCOMPASSING AS IT COULD BE.  NOW I WOULD BE HAPPY

13   TO ACCEPT A STIPULATION FROM THE DEFENSE THAT SAYS THAT MS.

14   JUAREZ COMPLAINED ABOUT DISCRIMINATION AND HARASSMENT BASED

12:56:55  15   UPON HER PREGNANCY OR GENDER.

16            MS. PRITIKIN:  THE DFEH CHARGE IS IN EVIDENCE.  THE

17   DFEH CHARGE IS SHE MADE A COMPLAINT.  THERE'S NO DISPUTE ABOUT

18   THAT.  WE'RE NOT ASKING FOR A SPECIAL FINDING ON WHETHER OR NOT

19   SHE COMPLAINED.

20            THE COURT:  IT'S IN EVIDENCE, BUT THERE ISN'T A

21   STIPULATION THAT THAT, YOU KNOW, IS --

22            MS. PRITIKIN:  WE'RE NOT CONTESTING THAT SHE MADE A

23   COMPLAINT AND THAT SHE MADE NOT ONLY HER DFEH COMPLAINT BUT

24   LETTER LAWSUIT CLAIMS EVERYTHING.  NOBODY IS DISPUTING THAT SO

25   THERE'S NO REASON TO ASK THE JURY THEIR OPINION ABOUT THAT AND

12:57:36   1   THE CHARGE THAT'S IN EVIDENCE WHICH IS THERE --

           2        THE COURT:  MR. BOHM IS CORRECT, THAT THE FACTUAL

           3   STIPULATIONS, THE 31 OF THEM THAT WE HAVE, DO NOT SPECIFICALLY

           4   ADDRESS WHETHER THERE IS AN AGREEMENT BETWEEN THE PARTIES THAT

           5   MS. JUAREZ COMPLAINED ABOUT DISCRIMINATION AND HARASSMENT.  I

           6   THINK THE EVIDENCE HAS DEMONSTRATED THAT SHE DID, BUT THIS IS

           7   ONE OF THOSE ELEMENTS.

           8        MS. PRITIKIN:  WELL, THERE'S NO DISPUTE THAT SHE

           9   COMPLAINED ABOUT DISCRIMINATION.  THERE'S NO DISPUTES THAT SHE

          10   COMPLAINED ABOUT GENDER AND RETALIATION IN HER LAWSUITS.  SO WE

          11   HAVE ALL OF THAT.  THE QUESTION IS, DID SHE COMPLAIN ABOUT

          12   HARASSMENT TO AUTOZONE AND THEY WANT THAT QUESTION; IS THAT THE

          13   QUESTION THEY'RE ASKING FOR?

          14        MR. BOHM:  I'M ASKING THAT QUESTION 11 READ, DID

12:58:39  15   JUAREZ COMPLAIN ABOUT DISCRIMINATION OR HARASSMENT BASED ON HER

          16   PREGNANCY OR SEX?

          17        MS. PRITIKIN:  SO I THINK THE DISCRIMINATION PART, WE

          18   AGREED THAT SHE COMPLAINED.  THE HARASSMENT PART, THERE MAY BE

          19   A FACTUAL ISSUE ABOUT THAT.

          20        THE COURT:  RIGHT.  SO I'LL GIVE 11 AS MODIFIED AND

          21   TO INCLUDE THE WORD, OR HARASSMENT.  JUST BECAUSE SOMETHING HAS

          22   COME INTO EVIDENCE, AND THERE'S NO REAL CONTEST ABOUT IT

          23   DOESN'T MEAN THAT IT'S A PROVEN FACT, AND THIS IS AN ELEMENT

          24   THAT THE JURY MUST DECIDE.  SO NUMBER 12, I DON'T KNOW IF WE

          25   NEED TO, NUMBER 12 DOESN'T NEED TO BE GIVEN, I DON'T THINK.

12:59:28   1   THERE'S A STIPULATION TO THAT CORRECT, MR. BOHM?

2              MR. BOHM:  YEAH, THAT'S CORRECT.  YES.

3              THE COURT:  YES, THANK YOU.  AND THEN NUMBER 13?

4              MR. BOHM:  PLAINTIFF WOULD SUGGEST THE SAME CHANGE.

5   WERE JUAREZ'S COMPLAINTS ABOUT PREGNANCY -- PROBABLY SHOULD BE

6   COMPLAINTS ABOUT HARASSMENT, PREGNANCY OR GENDER DISCRIMINATION

7   A SUBSTANTIAL MOTIVATING REASON.

8              MS. PRITIKIN:  YOUR HONOR, WHY CAN'T IT JUST SAY

9   JUAREZ COMPLAINTS A SUBSTANTIAL MOTIVATING REASON?

10             THE COURT:  I THINK IT OUGHT TO BE COMPLAINTS ABOUT

11  HARASSMENT.  WELL, LET'S TAKE A LOOK AT THE -- GOING BACK TO

12  11, DID JUAREZ COMPLAIN ABOUT DISCRIMINATION OR HARASSMENT

13  BASED ON PREGNANCY OR GENDER IS CORRECT.  WERE JUAREZ'S

14  COMPLAINTS ABOUT DISCRIMINATION OR HARASSMENT BASED UPON

13:00:54  15  PREGNANCY OR GENDER A SUBSTANTIAL MOTIVATING REASON?  I THINK

16  THAT'S THE WAY IT SHOULD READ.  I THINK THOSE SORT OF MIRROR

17  ONE ANOTHER.  OKAY.  QUESTION NUMBER 13 SHOULD MIRROR QUESTION

18  NUMBER 11, THAT IT SHOULD READ: WERE JUAREZ'S COMPLAINTS ABOUT

19  DISCRIMINATION OR HARASSMENT BASED ON HER PREGNANCY OR GENDER A

20  SUBSTANTIAL MOTIVATING REASON FOR AUTOZONE'S DECISION TO

21  TERMINATE JUAREZ?  THEN NUMBER 14 AS MODIFIED TO BE CONSISTENT

22  WITH NUMBER 10 I BELIEVE, YES, NUMBER 10.  SO CLAIM NUMBER

23  THREE SHOULD REALLY BE CLAIM NUMBER FOUR.  BUT CLAIM NUMBER

24  THREE, HARASSMENT, AGAIN, I DON'T THINK WE NEED TO ASK THE JURY

25  TO DO NUMBER 15, QUESTION 15; CORRECT?

13:02:07   1         MS. PRITIKIN:  CORRECT, YOUR HONOR.

2         THE COURT:  THEN NUMBER 16, WAS JUAREZ SUBJECTED TO

3    NARRATE HARASSING CONDUCT BETWEEN AUGUST '05 AND FEBRUARY '06

4    BECAUSE SHE WAS A WOMAN OR SHOULD WE SAY BECAUSE OF HER

5    GENDER?

6         MR. BOHM:  I BELIEVE IT SHOULD BE BECAUSE OF HER

7    GENDER OR PREGNANCY?

8         MS. PRITIKIN:  I'LL HAVE TO CHECK JUDGE BENCIVENGO'S

9    ORDER IN TERMS OF WHAT THE HARASSMENT CLAIM IS BECAUSE -- IF

10   YOU JUST GIVE ME A MOMENT.

11        MS. PRITIKIN:  I WAS TRYING TO SEE WHETHER THE COURT

12   WAS SPECIFIC.  IT DIDN'T SAY PREGNANCY HARASSMENT.  IT SAYS SEX

13   HARASSMENT. THAT WAS MY ONLY QUESTION IS WHETHER WE REALLY HAVE

14   PREGNANCY HARASSMENT IN THAT WAY BECAUSE I DON'T THINK THAT WAS

13:03:18   15   PART OF THE SUMMARY JUDGMENT, BUT THE COURT WAS CLEAR IT WAS

16   THAT LIMITED TIME PERIOD WAS ONLY THE PERIOD EXHAUSTED, AND

17   IT'S SEX DISCRIMINATION AND SEXUAL HARASSMENT.

18        THE COURT:  THIS WAS IN JUDGE BENCIVENGO'S SUMMARY

19   JUDGMENT ORDER?

20        MS. PRITIKIN:  THAT'S CORRECT, YOUR HONOR, AND PAGE

21   SEVEN OF 16, DOCUMENT 129.  I DON'T KNOW IF IT'S SPECIFIC ABOUT

22   WHETHER IT'S PREGNANCY HARASSMENT.  LET ME CHECK THE COMPLAINT

23   ALSO.

24        MR. BOHM:  MAY I RESPOND, YOUR HONOR?

25        THE COURT:  ONE SECOND.

13:04:14   1               MS. PRITIKIN:  ACTUALLY, YOUR HONOR, THEY DO ALLEGE

2   IT AS PREGNANCY SLASH SEX HARASSMENT.  SO I DON'T HAVE A

3   PROBLEM WITH US MAKING REFERENCE TO PREGNANCY IN THE HARASSMENT

4   SECTION?

5              THE COURT:  ALL RIGHT.

6              MR. BOHM:  MR. BOHM, ANY PROBLEM WITH THAT THEN?

7              MR. BOHM:  IT SOUNDED LIKE WE'RE --

8              THE COURT:  YOU'RE GETTING WHAT YOU WANT.  OKAY.

9   QUESTION 17, WAS JUAREZ SUBJECTED TO UNWANTED HARASSING CONDUCT

10  BECAUSE SHE WAS PREGNANT AND OR GENDER?

11           MS. PRITIKIN:  I THINK, YOUR HONOR, WE SHOULD EITHER

12  ASK QUESTION 16 AND 17, AND WE NEED TO PUT THE TIME PERIOD IN

13  OR WE SHOULD JUT ASK IT ONCE BECAUSE THE FIRST IS GENDER, THE

14  SECOND IS PREGNANCY.  SO IF WE'RE ASKING IT GENDER OR PREGNANCY

13:05:01  15  THEN WE SHOULD JUST ASK IT ONCE, AND THE TIME PERIOD SHOULD BE

16  REFERENCED AUGUST 2005 TO FEBRUARY 2006.

17           THE COURT:  I SEE, YES.

18           MR. BOHM:  I AGREE WE SHOULD ASK IT ONCE BY PUTTING

19  THE WORD "OR," AND I HAVE NO OBJECTION TO -- WE COULD ALSO PUT

20  WHILE SHE WAS A STORE MANAGER.  IT'S A DISTINCTION WITHOUT A

21  DIFFERENCE.

22           MS. PRITIKIN:  NO, YOUR HONOR.  THERE IS A DIFFERENCE

23  BECAUSE SHE WAS STORE MANAGER FOR A LOT LONGER THAN AUGUST 2005

24  TO FEBRUARY 2006?

25           THE COURT:  JUDGE BENCIVENGO'S ORDER DID LIMIT IT TO

13:05:34    1   THAT TIME FRAME.   SO WE CAN ELIMINATE NUMBER 17 IF WE INCLUDE

           2   IN 16, GENDER OR PREGNANCY; IS THAT CORRECT?

           3          MS. PRITIKIN:  CORRECT, YOUR HONOR.

           4          MR. BOHM:  FOR THE HARASSMENT, THAT IS CORRECT.

           5          THE COURT:  YES.  OKAY.  SO NUMBER 18, WAS THE

           6   UNWARRANTED HARASSING CONDUCTED WHICH JUAREZ WAS SUBJECTED

           7   COMMITTED BY A SUPERVISOR I THINK WE NEED TO LEAVE IN THERE.

           8   WAS HARASSMENT SEVERE OR PERVASIVE? YES.  I'M NOT ANSWERING

           9   YES, IT WAS, BUT WE NEED TO LEAVE THAT IN THERE.  ANY OBJECTION

          10   TO 18 OR 19?

          11          MR. BOHM:  NO, YOUR HONOR.

          12          THE COURT:  20?

          13          MR. BOHM:  IT WOULD BE -- IT'S HARD TO PHRASE 20 WITH

          14   REGARD TO PREGNANCY VERSUS GENDER, BUT I THINK OBVIOUSLY SINCE,

13:06:21   15   EXCEPT IN THE MOVIE TWINS, ONLY WOMEN GET PREGNANT.  SO I THINK

          16   THE PREGNANCY IS SORT OF INCLUDED IN THE REFERENCE TO A WOMAN.

          17   SO NO OBJECTION.

          18          THE COURT:  NUMBER 21?

          19          MR. BOHM:  NO OBJECTION.

          20          THE COURT:  AND 22?

          21          MR. BOHM:  NO OBJECTION.

          22          THE COURT:  OKAY. SO NOW WE'RE ON TO CLAIM NUMBER

          23   FOUR WHICH IS REALLY FIVE.  FAILURE TO PREVENT.  IF YOU ANSWER

          24   YES TO QUESTIONS -- AND WE'LL HAVE TO GO BACK BECAUSE THEY'LL

          25   BE RENUMBERED -- BUT DID AUTOZONE FAIL TO TAKE ALL REASONABLE

13:06:53   1   STEPS.  ANY OBJECTION TO THAT?

2             MR. BOHM:  I'M THINKING FOR A MOMENT, YOUR HONOR.  I

3   APOLOGIZE.  I HAVE NO OBJECTIONS.

4             THE COURT:  NUMBER 24.

5             MR. BOHM:  YOUR HONOR, UPON CONSULTATION WITH

6   COUNSEL, THE PLAINTIFF, WOULD FOR THE EASE OF THIS PROCESS AS

7   WELL, WITHDRAW THE WRONGFUL TERMINATION IN VIOLATION OF PUBLIC

8   POLICY CLAIM.  IT'S OBVIOUSLY DUPLICATIVE OF ALL THE OTHER

9   CLAIMS THAT WE HAVE.  I DO APOLOGIZE TO THE COURT THAT ONLY

10   UNTIL THIS MOMENT AM I REALIZING THAT IT'S JUST DUPLICATIVE.

11   SO THAT WOULD OBVIOUSLY IMPACT THE ONE JURY INSTRUCTION THAT

12   YOUR HONOR AND I AND COUNSEL DISCUSSED EARLIER TODAY.  BUT AT

13   THIS JUNCTURE, PLAINTIFF WOULD ABANDON HER CLAIM FOR WRONGFUL

14   DISCHARGE IN VIOLATION OF PUBLIC POLICY.

13:08:51   15            THE COURT:  I SUPPOSE AUTOZONE DOESN'T HAVE ANY

16   PROBLEM WITH THAT?

17            MS. PRITIKIN:  NO OBJECTION, YOUR HONOR.

18            THE COURT:  ALL RIGHT.  SO MOVING ON THEN TO QUESTION

19   NUMBER 23 THEN, ANY OBJECTION TO QUESTION 23?  THE NUMBERS WILL

20   HAVE TO CHANGE A LITTLE BIT.

21            MR. BOHM:  I'M SORRY, 23.  I THOUGHT WE WERE DONE

22   WITH THE FAILURE TO PREVENT.

23            THE COURT:  I'M SORRY.  THAT'S WHAT WE WERE ON.

24            MR. BOHM:  I THOUGHT WE WERE DONE WITH FAILURE TO

25   PREVENT.  WE HAVE NO OBJECTION TO 23.  AND THEN 25 THROUGH 28

13:09:30  1   ARE ALL RELATED TO THE WRONGFUL TERMINATION IN VIOLATION OF

2   PUBLIC POLICY CLAIM WHICH IS NOW ABANDONED.

3            THE COURT:  YOU'RE ABANDONING THAT ONE.

4            MR. BOHM:  YES, YOUR HONOR.

5            MS. PRITIKIN:  YOUR HONOR, COURT INSTRUCTION SEVEN IS

6   THE INSTRUCTION RELATING TO WRONGFUL DISCHARGE IN VIOLATION OF

7   PUBLIC POLICY.

8            THE COURT:  OKAY.  SO WE'LL NEED TO TAKE THAT OUT.

9            MR. BOHM:  AND LIKEWISE, I CAN'T REMEMBER THE EXACT

10   PAGE NUMBER, MAYBE IT WAS FIVE, WHICH LISTED THE VARIOUS

11   CLAIMS, WE WOULD ALSO ELIMINATE THE WRONGFUL TERMINATION IN

12   VIOLATION OF PUBLIC POLICY FROM THE LISTING OF THE VARIOUS

13   CLAIMS BEING BROUGHT BY PLAINTIFF.

14            THE COURT:  WE'LL DO AWAY WITH THAT ONE.  AND YOU SAY

13:10:12  15   IT WAS NUMBER FIVE?

16            MR. BOHM:  THAT WAS MY STAB IN THE DARK.  IT COULD BE

17   PAGE ONE OR COURT INSTRUCTION NUMBER ONE.

18            THE COURT:  YES.  NUMBER ONE.  OKAY.  SO QUESTION

19   NUMBER 25, WE DON'T NEED TO READ, NOR 26 OR NONE OF THOSE.

20            MR. BOHM:  TAKE US TO QUESTION 29.

21            THE COURT:  NOW WE'RE UP TO 29.  SO IF YOU ANSWERED

22   YET TO QUESTIONS -- WE'LL HAVE TO ADJUST THE NUMBERS -- WHAT

23   ARE JUAREZ'S DAMAGES?

24            MR. BOHM:  I HAVE NO OBJECTION TO THOSE QUESTIONS.

25            THE COURT:  THEN OF COURSE, QUESTION NUMBER 30, I

13:10:54   1    STILL HAVE TO DECIDE UPON.

2              MR. BOHM:  CORRECT, YOUR HONOR.

3              THE COURT:  THAT'S THE JMOL RULE 50.  OKAY.  ALL

4    RIGHT.  WE WILL -- SO ANY OTHER ADDITIONS, MODIFICATIONS TO THE

5    PROPOSED VERDICT FORM THAT EITHER SIDE WANTS TO MAKE BEFORE WE

6    ADJOURN FOR THIS EVENING?

7              MS. PRITIKIN:  NO, YOUR HONOR, FROM DEFENDANT.

8              MR. BOHM:  NO, YOUR HONOR.

9              THE COURT:  ALL RIGHT.  WE WILL MAKE THESE

10   CORRECTIONS HOPEFULLY WITHIN THE NEXT SEVERAL HOURS TO THE

11   PROPOSED INSTRUCTIONS, THE VERDICT FORMS.  DO NOT GO HIGH AND

12   TO THE RIGHT ON ME.  IF YOU SEE THE PUNITIVE DAMAGES

13   INSTRUCTIONS IN THE VERDICT FORM IN THERE BECAUSE I MAY NOT

14   HAVE DECIDED THAT YET, I'M PROVIDING THAT TO YOU BECAUSE I

13:11:47   15   HAVEN'T READ YOUR BRIEF YET, AND I HAVE A CRIMINAL CALENDAR

16   STARTING HERE AT 2:00.  SO I MAY NOT MAKE A DECISION UNTIL THIS

17   EVENING.  SO AT THE LATEST, YOU'LL KNOW IN THE MORNING.

18             MR. BOHM:  AND YOUR HONOR, JUST IN CASE THERE'S ANY

19   ISSUES WITH TYPOS OR WHATEVER WITH WHAT COMES BACK TO US AS THE

20   FINAL SET, MAY I REQUEST MAYBE AN EARLIER SHOW-UP TIME FOR

21   US?

22             THE COURT:  WE'LL BEGIN TOMORROW AT 7:30 AGAIN SO

23   WE'LL HAVE THE OPPORTUNITY TO DO THAT.  ALSO, MR. BROWN HAD

24   SOME EXHIBITS, THE MANUALS, THERE WERE SEVERAL EXHIBITS THAT

25   DEALT WITH THE MANUALS.  THERE WERE MULTIPLE PAGES, AND IF YOU

13:12:33   1    RECALL, I SAID WE ONLY NEEDED TO INTRODUCE THOSE PAGES THAT ARE

2    RELEVANT NOT THE ENTIRE MANUAL SO.

3         MS. PRITIKIN:  ACTUALLY, YOUR HONOR, I THINK THAT

4    COUNSEL STARTED USING THEM AS AN ENTIRE DOCUMENT.  I THINK THE

5    ENTIRE DOCUMENTS SHOULD COME IN, ALL OF THEM.  THEY'RE NOT THAT

6    LENGTHY.  THERE AREN'T THAT MANY DOCUMENTS IN THIS CASE, AND

7    HE'S RAISED IN HIS CROSS-EXAMINATION OF MR. MCFALL, FOR

8    EXAMPLE, HE RAISED THE PROBLEM SOLVING PROCEDURE, AND SOME OF

9    THE OTHER PROCEDURES THAT WOULDN'T HAVE BEEN ONES THAT WE

10   SPECIFICALLY POINTED OUT.  SO I THINK THAT THE HANDBOOK SHOULD

11   JUST GO INTO EVIDENCE.

12        MR. BOHM:  I WANT AUTOZONE TO HAVE WHAT IT WANTS IN

13   THAT REGARD, YOUR HONOR.  SO I HAVE NO OBJECTION.

14        THE COURT:  SO THE WHOLE DOCUMENT CAN GO BACK.  I

13:13:19  15   THINK THERE WAS THREE ISSUES, THREE SEPARATE ITERATIONS OF THE

16   POLICY MANUAL AS I RECALL.

17        MS. PRITIKIN:  THAT'S CORRECT, YOUR HONOR.  WITH

18   RESPECT TO CLOSING ARGUMENT, I JUST WOULD LIKE THE COURT TO

19   HAVE THE PARTIES SHOW THE OTHER SIDE ANYTHING THAT'S NOT AN

20   EXHIBIT OR ACTUAL TESTIMONY, IF THAT'S GOING TO BE DISPLAYED TO

21   THE JURY.  SO IF THERE ARE SOME PHOTOGRAPHS OR PAINTINGS OR

22   ANYTHING LIKE THAT THAT WE GET SHOWN THEM FIRST SO YOUR HONOR

23   CAN RULE ON THOSE IN THE EVENT THERE'S GOING TO BE AN ISSUE

24   BEFORE CLOSING ARGUMENT BEGINS.

25        MR. BOHM:  IF I MAY RESPOND.  AUTOZONE HAS TWICE BEEN

13:14:01   1   OPPOSED ME IN THE CLOSING ARGUMENT CONTEXT WHICH IS PRESUMABLY

2   WHY MS. PRITIKIN IS BRINGING UP THE USE OF ART.  WHEN I DO MY

3   CLOSING ARGUMENT, ONE OF THE THINGS THAT I ENJOY DOING IS USING

4   VISUAL AIDS TO ARGUE MY CASE PERSUASIVELY.  AND PROBABLY IN A

5   LOT OF RESPECTS, THEY'RE GOING TO BE THE EXACT SAME VISUAL AIDS

6   I'VE ALREADY USED TWICE AGAINST AUTOZONE.  I USUALLY GO TO THE

7   INTERNET AND TRY TO FIND ART OR POETRY, THINGS THAT I THINK

8   REALLY CREATIVELY EXPRESS THE CASE.  AND I HAVE NO OBJECTION,

9   FOR INSTANCE, TO SHOWING IT TO YOUR HONOR.  THE JURY IS

10   ADMONISHED REPEATEDLY THAT WHAT THE LAWYERS SAY IN THEIR

11   CLOSING ARGUMENT IS NOT EVIDENCE.  BUT I CERTAINLY HAVE NO

12   INTENTION OF SHOWING MY WORK PRODUCT TO MS. PRITIKIN.  I'M

13   HAPPY TO SHOW IT TO YOUR HONOR IF THAT'S WHAT YOU WANT.  LAST

14   TIME THIS HAPPENED, THE JUDGE DIDN'T EVEN EXERCISE THE DESIRE

13:15:02   15   TO LOOK AT IT NOTING THAT IT'S CLOSING ARGUMENT.

16         MS. PRITIKIN:  I DON'T KNOW WHAT IT IS THAT COUNSEL'S

17   PLANING TO SHOW, BUT IF IT'S NOT PART OF THE EVIDENCE IN THIS

18   CASE, AND GIVEN THE MISCONDUCT THAT'S OCCURRED DURING THIS

19   TRIAL, BECAUSE I HAVE NEVER SEEN HIS ARTWORK OR ANYTHING ELSE

20   THAT HE'S DONE IN HIS CLOSING ARGUMENT, I JUST THINK WE'RE

21   ENTITLED TO SEE THAT SO THAT WE CAN MAKE AN OBJECTION IF IT

22   SHOULDN'T BE DISPLAYED TO THE JURY.  WHEN HE'S GIVING HIS

23   CLOSING ARGUMENT, HE'S GIVING HIS CLOSING ARGUMENT.  IT'S NOT A

24   QUESTION OF WORK PRODUCT.  IT'S JUST THAT WE'RE ENTITLED TO SEE

25   WHAT'S HE'S GOING TO DISPLAY THAT HASN'T ALREADY BEEN VETTED BY

13:15:42  1    YOUR HONOR AS BEING APPROPRIATELY SHOWN TO THE JURY.

2              THE COURT:  I'M OF THE SCHOOL WHERE COUNSEL SHOULD

3    HAVE SOME POETIC LICENSE IF YOU WILL WITH CLOSING ARGUMENT.

4    AND AS LONG AS IT DOESN'T GO OVER THE LINE, AND I THINK IT'S

5    VERY MUCH APPROPRIATE TO USE DEMONSTRATIVE AIDS TO MAKE THE

6    POINT, I DON'T BELIEVE THAT COUNSEL NEED TO OR MUST, UNLESS

7    THERE'S AN AGREEMENT BETWEEN COUNSEL, AND IT APPEARS THAT THERE

8    WON'T BE, SHOW WHAT THEY'RE GOING TO USE BEFORE THEY GIVE THEIR

9    CLOSING ARGUMENT.  THERE IS SOME ELEMENT OF SURPRISE IF YOU

10   WILL.  THIS IS AN ADVERSARIAL CONTEST, AND I THINK THE

11   ATTORNEYS SHOULD BE GIVEN THE LIBERTY TO GIVE THEIR CLOSING

12   ARGUMENTS AS THEY SEE FIT, PROVIDING IT DOESN'T GO OVER THE

13   LINE AS I, WHATEVER THAT LINE IS, AND THAT LINE MAY MOVE, AND I

14   MAY DRAW A DIFFERENT LINE AS TIME GOES ON, THAT IT DOESN'T

13:16:55  15   UNFAIRLY CHARACTERIZE THE EVIDENCE, DOESN'T DRAW IMPROPER

16   CONCLUSIONS OR INFERENCES FROM THE EVIDENCE, DOESN'T MISSTATE

17   THE EVIDENCE, THOSE SORTS OF PERIMETERS.  AND THAT'S A

18   NON-EXHAUSTIVE LIST, BUT I THINK THE ATTORNEYS SHOULD HAVE THAT

19   FREEDOM, AND I TRUST THE ATTORNEYS TO WORK WITHIN THOSE

20   BOUNDARIES.  IF EITHER SIDE, MS. BOHM OR MS. PRITIKIN STEPS OUT

21   OF THE LINE, I WILL ADMONISH YOU IN FRONT OF THE JURY AND

22   INSTRUCT THE JURY THAT WHAT COUNSEL SAY IS NOT EVIDENCE.  THEY

23   HAVE BEEN TOLD THAT SEVERAL TIMES ALREADY.  THEY'LL BE TOLD

24   THAT AGAIN, AND SO I'M COMFORTABLE WITH THAT.  DESPITE THE

25   CHARACTERIZATION THAT MR. BOHM HAS COMITTED MISCONDUCT

13:17:53  1    THROUGHOUT THE TRIAL.  ALL RIGHT.  ANYTHING ELSE WE NEED TO

2    ADDRESS AT THIS TIME?

3              MR. BOHM:  I WANT TO REMIND YOUR HONOR THAT -- AGAIN,

4    I APOLOGIZE FOR REPEATING MYSELF, BUT IT WAS EARLIER THIS

5    MORNING -- OUR BRIEF OMITTED REFERENCE TO MS. SAUCIER, AND I

6    WOULD LIKE THE COURT TO CONSIDER MS. SAUCIER AS A MANAGING

7    AGENT?

8              THE COURT:  RIGHT.  I HAVEN'T FORGOTTEN THAT.

9              MR. BOHM:  MAY I HAVE A TIME COUNT FROM MR. BROWN?

10             THE CLERK:  PLAINTIFF, 17 HOURS 58 MINUTES.  DEFENSE,

11   8 HOURS 10 MINUTES.

12             THE COURT:  SO DON'T USE ALL TWO HOURS AND TWO

13   MINUTES.  YOU'LL BORE THE JURY TO DEATH.

14             MR. BOHM:  I ABSOLUTELY UNDERSTAND AND AGREE OF WHAT

13:18:54  15   NOT TO DO WITH A JURY IN CLOSING ARGUMENT.  I DID WANT TO MAKE

16   SURE I WAS CLEAR ABOUT THE PROCESS.  PLAINTIFF FIRST, THEN

17   DEFENSE, THEN BRIEF REBUTTAL ARGUMENT?

18             THE COURT:  YES.  YOU'LL HAVE AN OPPORTUNITY TO

19   REBUT.

20             MR. BOHM:  THERE'S NOT GOING TO BE A SECOND?

21             THE COURT:  NO, NO, NO.

22             MR. BOHM:  JUST CLARIFYING.  THANK YOU, YOUR HONOR.

23             THE COURT:  WE'LL MEET TOMORROW AT 7:30 TO TAKE UP

24   ANY LAST-MINUTE ISSUES, JURY INSTRUCTIONS OR VERDICT FORM OR

25   ANYTHING ELSE THAT MAY COME UP IN THE MIDDLE OF THE NIGHT.  ALL

```
13:19:26   1    RIGHT.   GOOD LUCK.

           2                MS. PRITIKIN:   THANK YOU, YOUR HONOR.

           3                MR. BOHM:   THANK YOU, YOUR HONOR.

           4                (CONCLUSION OF TRIAL-DAY 7.)

           5

           6                    C-E-R-T-I-F-I-C-A-T-I-O-N

           7            I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
                AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
           8    DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
                TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
           9    THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
                STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
          10    WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
                CONFERENCE.
          11            DATED: NOVEMBER 12, 2014, AT SAN DIEGO, CALIFORNIA.

          12                          /S/ JULIET Y. EICHENLAUB
                                      JULIET Y. EICHENLAUB, RPR, CSR
          13                          OFFICIAL COURT REPORTER
                                      CERTIFIED SHORTHAND REPORTER NO. 12084

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25
```